VINOD NICHANI|SBN 277607
NICHANI LAW FIRM
111 North Market Street, Suite 300
San Jose, California 95113
Phone: 408-800-6174
Fax: 408-290-9802
Email: vinod@nichanilawfirm.com

(Proposed) Attorney for Debtor-in-Possession
EMPIRE INVESTMENTS LLC dba EMPIRE
INVESTMENTS TEAM LLC;

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVSION

| | |
|---|---|
| In re:<br><br>EMPIRE INVESTMENTS LLC dba EMPIRE INVESTMENTS TEAM LLC;<br><br>Debtor-in-Possession. | Case No.: 22-50645 SLJ<br><br>Chapter 11<br><br>DEBTOR'S OPPOSITION TO PAUL NGUYEN'S MOTION FOR RELIEF FROM STAY<br><br>Date: September 6, 2022<br>Time: 2:00 p.m.<br>Place: Via Video or Teleconference<br>      United States Bankruptcy Court<br>      280 South First Street<br>      Courtroom 9<br>      San Jose, California 95113 |

**TO: THE HONORABLE STEPHEN L. JOHNSON, UNITED STATES BANKRUPTCY JUDGE , THE UNITED STATES TRUSTEE, AND ALL INTERESTED PARTIES**

EMPIRE INVESTMENTS LLC, dba EMPIRE INVESTMENTS TEAM LLC, Debtor-in-Possession (hereinafter "Debtor"), hereby files its Opposition of Paul Nguyen's Motion for Relief from Stay.

1

Table of Contents

I. INTRODUCTION ................................................................................................... 5

II. FACTUAL BACKGROUND .................................................................................. 7

III. STANDARD ........................................................................................................... 12

IV. LEGAL ARGUMENT ............................................................................................ 13

    A. Movant is Barred by Unclean Hands ................................................................ 13

    B. Any Issue with Transfer to Debtor Barred by the Statute of Limitations ....... 13

    C. Property Equity Secures Any Purported Debt ................................................. 14

    D. Petition Filed in Good Faith .............................................................................. 15

V. CONCLUSION ...................................................................................................... 17

*AWL. Worden v. California Fig Syrup Co.*, 187 U.S. 516 (1903 ........................... 13

*Precision Instr. Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814, 65 S.Ct. 993, 89 L.Ed. 1381 (1945) .................................................................................... 13

*Adler v. Fed. Republic of Nigeria,* 219 F.3d 869, 877 (9th Cir. 2000) ................... 13

*Dollar Systems v. Avcar Leasing Systems*, 890 F.2d 165 (9th Cir. 1989) .............. 13

*In re Pettit*, 217 F.3d 1072 (9th Cir. 2000) ............................................................. 12

*In re St. Paul Self Storage Ltd. P'ship*, 185 B.R. 580, 582-83 (9th Cir. BAP 1995) ................................................................................................................................ 15

*In re Victory Construction, Inc.*, 37 B.R. 222 (9th Cir. BAP 1984) ....................... 14

*Sterling v. Harwood*, BAP No. NC-15-1055-DTaKu (B.A.P. 9th Cir. Apr. 8, 2016) ................................................................................................................................ 13

Cases

*Blain v. Doctor's Co.*, 222 Cal.App.3d 1048 (Cal. Ct. App. 1990) .......................... 5

*East West Bank v. Rio School District*, 235 Cal.App.4th 742 (Cal. Ct. App. 2015) . 5

*Giest v. Sequoia Ventures, Inc.*, 83 Cal.App.4th 300 (Cal. Ct. App. 2000) ............ 14

*In re Avila*, 311 B.R. 81, 83 (Bankr. N.D. Cal. 2004) ............................................ 15

*In re Beach Club*, 22 B.R. 597 (Bankr.N.D.Cal.1982) .......................................... 14

*Macedo v. Bosio Revocable Trust*, 86 Cal.App.4th 1044 (Cal. Ct. App. 2001) ..... 14

*Michaels v. Mulholland*, 115 Cal.App.2d 563 (Cal. Ct. App. 1953) ..................... 10

*Sousa v. Capital Co.*, 220 Cal.App.2d 744 (Cal. Ct. App. 1963) ........................... 10

*Vail Lake Rancho California, LLC v. Abreu*, D061892, at *12 (Cal. Ct. App. Mar. 7, 2014) ................................................................................................................ 14

*Ramirez v. Fuselier (In re Ramirez)*, 183 B.R. 583, 587 (9th Cir. BAP 1995) ....... 12

Statutes

11 U.S.C. § 361 .................................................................................................................. 14

11 U.S.C. § 362 .................................................................................................................. 12

11 U.S.C. § 362(a)(2). ........................................................................................................ 12

11 U.S.C. § 362(d)(1) ....................................................................................................... 5, 6

11 U.S.C. § 362(d)(4) ........................................................................................................... 5

11 U.S.C. § 541(a) ............................................................................................................. 12

11 U.SC § 362(a)(1) .......................................................................................................... 12

11 U.SC. § 362 ................................................................................................................... 14

11 U.SC. § 362(a)(3) ......................................................................................................... 12

Civil Code § 3909.04 ......................................................................................................... 14

Civil Code § 3439.09(c) ..................................................................................................... 14

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

"'The defense of unclean hands arises from the maxim: "He who comes into Equity must come with clean hands."'" *East West Bank v. Rio School District*, 235 Cal.App.4th 742 (Cal. Ct. App. 2015) citing to *Blain v. Doctor's Co.*, 222 Cal.App.3d 1048 (Cal. Ct. App. 1990) Whether the doctrine bars relief in any particular case "depends on [(1)] analogous case law, [(2)] the nature of the misconduct, and [(3)] the relationship of the misconduct to the claimed injuries." *Blain supra* p. 1060. In accord, see *Wells Fargo Co. v. Stagecoach Properties*, 685 F.2d 302 (9th Cir. 1982)[applying California law.]

This is part of a long con by Paul Kim Phong Nguyen ("Movant") in which he is seeking a double windfall from his mortgage scam. Paul *never paid a single penny to any entity* as he claimed. Instead, he induced the prior property owners into the disputed 2011 Note and Deed of Trust claiming he was advancing $215,000 of his own money, with $100,000 from the original borrower to pay off the 2003 Note from America's Wholesale Lender ("AWL"). /Bank of New York Mellon, as the assignee of AWL, claims the payment was not made. Movant has in fact been paid $315,000 for settling the AWL loan that Bank of New York Mellon now claims to own.

As detailed under the Factual Background, and as listed on the Debtor's schedules are *two liens.* Movant's lien is the result of Movant purportedly advancing payment on settlement of the *first lien* which clearly, was not done. At issue is whether either lien is a valid, legal lien.

In this motion Movant seeks relief from the stay under 11 U.S.C. §§ 362(d)(1) and 362(d)(4) which are:

> **(d)** On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> **(1)** for cause, including the lack of adequate protection of an interest in property of such party in interest.

5

DEBTOR'S OPPOSITION TO MOTION FOR RELIEF FROM STAY

There is adequate protection of the interest as required under § 362(d)(1) as to the two liens combined total $897,975.21 (Doc. # 36, Part 2) though only one of them is valid. The Subject Property, known as 12329 Kosich Place, Saratoga, CA 95070 has a current estimated value of $3,644,800 according to the latest Zillow estimates; see also Redfin estimating current value at $3,950,422. (RJN ## 12 and 13)

> **(4)** with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved either—
> **(A)** transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or
> **(B)** multiple bankruptcy filings affecting such real property.

Movant complains of transfer of ownership of the property that occurred in 2011 – that is *eleven years ago.* While he falsely claims he knew nothing of the transfer (he had his law firm author the assignment) any purported claim of fraudulent transfer *for any reason* is long past the statute of limitations whether under state or bankruptcy law.

Arguably Movant has no standing to ask anything of this Court as he comes into the court with unclean hands in which he has done no equity but rather has deceived and defrauded Debtor and the original borrowers- the assignees; Movant is without right to ask for relief; nor does he provide a factual basis for any such relief.

In a final argument, Movant claims Debtor has filed this petition in bad faith, for reasons as described below, Movant's argument must fail and this motion must be denied. Debtor requests the court *deny* Movant's motion.

## II. FACTUAL BACKGROUND

### A. Facts

Teri Ha-Nguyen (a/k/a Teri Ha) as an individual (hereinafter "Teri"), entered into a financial transaction with America's Wholesale Lender ("AWL,") on September 30, 2003 for a loan in the amount of $835,000.00. (RJN Exh. 1, Deed of Trust as recorded in the public records as Instrument Number 17404380.) On September 9, 2009, Teri transferred ownership interest in the property to the Ha-Nguyen Living Trust, dated December 10, 2004 in which Vince Nguyen (hereinafter "Vince) and are the trustees of the trust. (hereinafter "Trust.") (RJN Exh. 2, Assignment to Trust)

In 2011, Movant solicited Teri, telling her that he was a licensed attorney from New York, specializing in settling loans that had been securitized. (Movant *now* disclaims he owned Global Capital, but rather was the "Operations Manager." (RJN # 3, Dec. Paul Kim Phong Nguyen declaration claiming to be the Operations Manager.)) On the advice (and with the assistance) of Movant, Teri filed a lawsuit against AWL for TILA/RESPA violations. (Teri ("Teri") Decl., ¶¶ 5,6)

Upon filing of the lawsuit, Gary Harre, (hereinafter (Harre") as the principal attorney of Global Capital Law Firm substituted in as the attorney for Teri, then Harre had Brian Davies, a member of Chase Merritt Fund I, LLC (a LLC in which Mr. Harre, Movant and Mr. Davies were members), serve the complaint on AWL. Except he did not serve it on the actual AWL, but rather served it one Jan Van Eck a/k/a Maurice Van Eck (hereinafter "Van Eck") who was impersonating AWL by claiming he was representing AWL as an Executive Vice President with authority to settle AWL loans.

As detailed in the Petition to the Court of Appeals, which includes lawsuits from Bank of America who purchased Countrywide Home Loans, Inc., there are three "AWL" entities. (RJN # 10) The first is the dba of Countrywide Home Loans, Inc. in which Countrywide uses the dba and trademark "America's Wholesale Lender." (AWL1) Dennis Bell set up a second AWL, incorporating it in New York State, then set up a separate mailbox service to receive mail intended for the AWL and started fraudulently settling AWL loans with unsuspecting borrowers..

(AWL2) Van Eck set up an identical address to Bell, except his mailbox is 510, whereas Bell's was 105.

Mr. Van Eck used his own version of AWL stationary and used the mailbox service, listing the mailbox as a "suite" to which he received correspondence intended for the actual AWL or Bell's AWL2, and separate bank accounts. In reality Van Eck is an individual living in Connecticut that has no relationship to the actual AWL, or authority from the actual AWL to act on behalf of AWL, nor was he authorized by Dennis Bell to act on behalf of Bell's AWL2. (RJN # 4, Dennis Bell Declarations) Both Bell, and Van Eck were taking borrower's money saying they were settling the AWL loans and issuing fraudulent conveyances.

Unaware of the scam being ran by M. Harre, Movant and Van Eck[1], Teri entered into a settlement agreement, facilitated by Movant, in which $315,000 was to be paid to AWL within 30 days. (RJN 5, Settlement Agreement) This settlement agreement specially states the agreement is to clear the 2003 AWL loan, for the deed of trust recorded as Instrument Number 17404380. (RJN 5, Empire-Exh., p.4:15, p.5:16-20, p.6:15-27)

Teri then paid Movant $100,000 towards the settlement of $315,000 in two separate payments, one for $60,000 and a wire transfer of $40,000. On July 28, 2011 Movant emailed Teri the escrow instructions for finagling the settlement agreement payment, and in a second email, representing to Teri once she deposited the money, he would transfer the funds to AWL. He then attached the "wire transfer" showing $200,000 to be transferred to AWL. (Teri Decl., ¶¶ 8-12, Exh. 2 and 3) The address listed on the wire transfer is for the AWL3 impersonating AWL. (See Teri Decl. Exh. 3, address listed as 675 Avenue of the Americas, Suite 501, New York, New York, in contrast to the address listed on the 2003 DOT showing AWL address Post Office Box 10239, Van Nuys, California) Of note, this wire transfer shows no evidence of any actual transfer occurring; but based on Movant's claim to have advanced the funds to AWL, the trustees

---

[1] The fraudulent mortgage scam is the subject of two state litigations. At present, the two litigations are proceeding as to the original borrower (i.e., Ha-Nguyen Living Trust) and Movant's cross claims but is on stay as to any claims by Debtor, including the Petition for Writ of Mandate.

NICHANI LAW FIRM
111 N. Market Street, Suite 300
San Jose, California 95113

of the Trust, entered into "Note" with Paul for $215,000 with a maturity date of July 28, 2012. (Doc. # 12, p.3, and p.5-p.9) (Debtor does not know why the amounts are different.)

On July 29, 2011, Movant emailed the assignors the "escrow instructions." (Teri Decl., ¶ 9, Exh. 2), Bell signed a reconveyance, reconveying the 2003 AWL Deed of Trust, which was recorded on July 28, 2011. (RJN # 6, AWL Reconveyance of 2003 Deed of Trust)

At the *recommendation and with full knowledge of Movant,* the trustees of the Ha-Nguyen Trust worked with Beall (hereinafter "Beall"), a California attorney working for Global Capital Law Firm, for transfer of ownership interest in the Subject Property to debtor, including the liens. (RJN # 7, Assignment of Interest and Liens to Debtor) Movant admits the assignor asked for assistance from Global Capital Law to assist with estate planning, and one Diane Beall was assigned. Movant claims he had no knowledge of the transfer or if Ms. Beall had been retained. This is contradicted by a series of emails in which Movant acknowledges the engagement of Beall and further, Beall discloses discussions with Movant.

In December of 2011, Mortgage Electronic Registrations Systems, Inc. ("MERS") transferred interest in the AWL Deed of Trust to Bank of New York Mellon. (RJN # 8, AWL assignment to Bank of New York Mellon) MERS is identified as the nominee of AWL on the original DOT. (RJN # 1)

There are now two liens on the property; the original 2003 DOT from AWL now purportedly owned by Bank of New York Mellon as a result of the 2011 Assignment of Deed of Trust, and the deed of trust from Movant in which Movant claimed to have paid off the 2003 DOT with the $100,000 paid by Teri, and $215,000 of Movant's own funds he purportedly advanced to AWL and is the second lien on the Debtor's schedule, though the assignors as the original borrowers, paid the 2011 Note in full. (See below for graph of transactions.)

Teri paid $60,000 on the 2011 Note in which Movant asked Teri to pay his daughter Pauline Nguyen, on his behalf. Teri did as asked and paid Pauline $60,000, noting in the memo "AWL/Kosich." (Teri Decl., ¶ 12, Exh. 4, $60,000 payment)

There is a dispute over a refund of $187,070.40 that the assignors as the original borrowers claim Movant owes to the assignors. (Teri Decl., ¶¶ 13, 14, Exh. 5, 187,070.40

9
DEBTOR'S OPPOSITION TO MOTION FOR RELIEF FROM STAY

payment.) On behalf of the Debtor, the assignors agreed that Movant could apply the refund to the 2011 Note to clear the lien on the Subject Property. Movant admits he received the money, but denies he is required to refund the money. Because the money was specifically and intentionally earmarked to pay off the lien on behalf of the Debtor, Debtor is a 3rd party beneficiary of the refund, Debtor is listing this as a claim against Movant.

In 2017, Movant filed two bankruptcies with schedules. In each schedule he specifically states under penalty of perjury that he has no interest in any other property, or any monies due to him, listing that he had less than $50,000 in assets as to any property, or money owed to him. (RJN # 9, Exh. 9, a true and correct copy of the bankruptcy schedules.)

In 2021 the Debtor and the Ha-Nguyen Trust sued Movant, Parker Foreclosure Services and Chase Merritt Fund I, LLC known as Case Number 21CV379828 in the Santa Clara Superior Court. The matter is proceeding as to Parker Foreclosure Services and Chase Merritt Fund I, LLC but a demurrer as to Movant was sustained without leave to amend because it was *unopposed.* Debtor moved for relief under Code of Civil Proc., § 473, which was denied. In response, Debtor and the Ha-Nguyen Trust filed a Petition for Writ of Mandate with the Court of Appeals, which has been stayed due to this bankruptcy filing. (RJN # 10, a true and correct copy of the Petition. If the court wants the exhibits, Debtor will submit those.) Sustaining of a demurrer, without leave to amend, is an **<u>interlocutory order</u>** that is not appealable because it is not a *final judgment of dismissal. Sousa v. Capital Co*., 220 Cal.App.2d 744 (Cal. Ct. App. 1963); *see also Michaels v. Mulholland*, 115 Cal.App.2d 563 (Cal. Ct. App. 1953) [Formal judgment of dismissal required as court can change its mind before entry of dismissal.]

In response to the complaint, Movant filed a Cross Complaint, which he amended when Debtor and the Trustees of the Trust filed a Demurrer. Debtor demurred the First Amended Complaint, which the court granted with leave to amend. There is now a third demurrer pending as to the Second Amended Cross Complaint, due to be heard on September 22, 2022. (RJN # 11, Movant's Second Amended Cross Complaint.) This matter is proceeding except as to Debtor.

On July 6, 2022 Debtor and the Ha-Nguyen Trust filed a second lawsuit against Movant and Jan Van Eck a/k/a Herman Van Eck, a/k/a Maurice Van Eck a/k/a Mauritz Van Eck, a/k/a

Martiz Van Eck a/k/a George Thomas; Gary Harre; Global Capital Law Group, PC; Chase Merritt I; and DOES 1 through DOES 10 inclusive for fraud and conspiracy to commit fraud. This matter is known as Case Number 22CV398824. That matter is proceeding in the state court as to all parties except as to Debtor.

Debtor anticipates filing an adversary proceeding to avoid one of the liens as Debtor does not owe both.

B. **Graph of Transactions**

| LOAN | Purpose | CREDITOR/ Assignor | BORROWER/ Assignee | DOCUMENT |
|---|---|---|---|---|
| $835,000 | Finance | AWL | Teri Ha Nguyen | 2003 DOT and Note |
| N/A | Transfer of Ownership Interest in Property | Teri Ha Nguyen | Ha-Nguyen Trust | 2009 Grant Deed |
| $315,000 | Settle AWL 2003 Loan | AWL | Teri Ha-Nguyen | June 2011 Settlement Agreement |
| $100,000 | Cash Payment towards AWL Settlement paid to Paul Nguyen | AWL | Teri Ha-Nguyen | Check/wire transfer June and July 2011 |
| $215,000 | Funds Advanced for AWL for settlement | Paul Nguyen | AWL | July 2011 DOT and Note (no evidence of payment to AWL) |
| N/A | Reconveyance | Dennis Bell from AWL2 | Teri H. Nguyen | July 2011 Reconveyance of 2003 DOT |
| 60,000 | Payment on Nguyen Loan | Paul Nguyen | Teri H. Nguyen paid Pauline Nguyen at Paul's request | Check dated August 22, 2011 from Teri to Pauline. |
| N/A | Transfer of Ownership Interest and liability for liens | Ha-Nguyen Trust | Empire Investments | September 2011 Grant Deed |
| $835,000 | Transfer of ownership interest as the loan paid off | Bank of New York Mellon | Transfer from AWL via MERS | December 2011 Assignment |

| | | | | |
|---|---|---|---|---|
| | by Paul Nguyen was not paid off. | | | |
| $187,070.40 | Funds for settlement on Bruce Property Loan | Paul Nguyen via Chase Merritt Fund I, LLC to pay creditor | Vince and Teri Nguyen | Check dated May 21, 2012 |
| $187,070.40 | Refund Due | Vince and Teri Nguyen | Paul Nguyen owed a refund on Bruce Loan as creditor not paid | August 11, 2012- refund due |
| $187,070.40 | Refund Due | Empire Investments | Paul Nguyen agrees to apply refund to 2011 Note. | January 21, 2016 |

## III. STANDARD

"The automatic stay under § 362 is designed to give the bankruptcy court an opportunity to harmonize the interests of both debtor and creditors while preserving the debtor's assets for repayment and reorganization of his or her obligations." *In re Pettit*, 217 F.3d 1072 (9th Cir. 2000) at 1077 (citation omitted). The stay is self-executing, effective upon the filing of the bankruptcy petition, and sweeps broadly. *Id*. It stays the "commencement or continuation . . . or other action or proceeding against the debtor that was or could have been commenced before the [filing of the bankruptcy]," as well as the enforcement of a prepetition judgment against the debtor or property of the estate. § 362(a)(1) & (2).

It also stays actions to "obtain possession of property of the estate or property from the estate or to exercise control over property of the estate." § 362(a)(3). "Property of the estate" is also broadly defined to include all of the debtor's legal and equitable interests in property as of the commencement of the case, wherever located and by whomever held. § 541(a). See also *Ramirez v. Fuselier (In re Ramirez)*, 183 B.R. 583, 587 (9th Cir. BAP 1995) (automatic stay protects property of the estate in which the debtor has a legal, equitable or possessory interest) (citing *Interstate Commerce Comm'n v. Holmes Transp., Inc.*, 931 F.2d 984, 987 (1st Cir. 1991)). Bankruptcy courts must look to state law to determine whether and to what extent the

debtor has any legal or equitable interests in property as of the commencement of the case. *Butner v. United States*, 440 U.S. 48, 54-55 (1978).

## IV. LEGAL ARGUMENT

### A. Movant is Barred by Unclean Hands

This is the long con of Movant in which he had intentionally deceived and defrauded Debtor and the original borrowers by working with Dennis Bell and Jan Van Eck, who Movant knew were impersonating A*WL. Worden v. California Fig Syrup Co.*, 187 U.S. 516 (1903)[Essential trademark, advertisements and business should not make any false or misleading misrepresentations.]; *Dollar Systems v. Avcar Leasing Systems*, 890 F.2d 165 (9th Cir. 1989)[Use of trademark to deceive consumers inequitable conduct.] The unclean hands doctrine "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief." *Precision Instr. Mfg. Co. v. Auto. Maint. Mach. Co*., 324 U.S. 806, 814, 65 S.Ct. 993, 89 L.Ed. 1381 (1945). The party must have "acted fairly and without fraud or deceit as to the controversy in issue." *Adler v. Fed. Republic of Nigeria,* 219 F.3d 869, 877 (9th Cir. 2000) (internal quotation marks omitted). The unclean hands doctrine is applicable in bankruptcy cases because bankruptcy courts are courts of equity. *Sterling v. Harwood*, BAP No. NC-15-1055-DTaKu (B.A.P. 9th Cir. Apr. 8, 2016)

As described above in the Factual Background, Movant made numerous misrepresentations – that he was a licensed attorney, that he had advanced payment to the actual AWL when he knew the party he was dealing with was impersonating AWL and he fact he sent *no money.* (Teri Decl., ¶ 4) Ultimately, the original creditor entitled to loan payments and the Movant's coconspirators *were never paid* by Movant. Movant is barred by the doctrine of unclean hands from making any demands in this bankruptcy court.

### B. Any Issue with Transfer to Debtor Barred by the Statute of Limitations

Movant fails to provide any supporting case law or basis for his claim the transfer of interest to Debtor was anything he claims it to be. Notwithstanding that Movant referred the prior property owners to an attorney for the law firm that Movant claimed to own and be the

NICHANI LAW FIRM
111 N. Market Street, Suite 300
San Jose, California 95113

operations manager of, to create the assignment, any such claims for an improper transferred are barred by the statute of limitations.

Civil Code § 3909.04 requires any claim of a fraudulent transfer be brought within *seven* years of the transfer. Civil Code§ 3439.09(c); *Vail Lake Rancho California, LLC v. Abreu*, D061892, at *12 (Cal. Ct. App. Mar. 7, 2014) § 3909.4 is a statute of repose. *Id.* As a statute of repose, the statute limits the time in which a claim may be brought regardless to any purported harm or event, such that there is no basis for "accrual" of the claim. *Giest v. Sequoia Ventures, Inc.*, 83 Cal.App.4th 300 (Cal. Ct. App. 2000)

A claim of fraudulent transfer under California "common law" would only be allowed under Civil Code § 338(d) for fraud, which has a statute of limitations of three years; any claim of a fraudulent transfer was required to brought before September 13, 2015 *Macedo v. Bosio Revocable Trust*, 86 Cal.App.4th 1044 (Cal. Ct. App. 2001) (RJN # 7)

Under 11 U.S.C. § 548, a fraudulent transfer claim may be brought for any transfer that was made or incurred up to two years before the petition. In this matter, Movant complains of a transfer that occurred *eleven years* ago.

### C. Property Equity Secures Any Purported Debt

" single asset real estate" cases are permitted to reorganize through chapter 11 when there are sufficient funds available to make adequate protection payments. See *In re Beach Club*, 22 B.R. 597 (Bankr.N.D.Cal.1982)[Finding equity in property the objecting lender is not prejudiced and there is a reasonable chance of reorganization]; *In re Victory Construction, Inc.*, 37 B.R. 222 (9th Cir. BAP 1984) [Proposing a feasible confirmation plan shows plan not in bad faith.]

There is equity in the property to clear whichever lien, Bank of New York Mellon, or Movants, that is valid. The Subject Property, known as 12329 Kosich Place, Saratoga, CA 95070 has a current estimated value of $3,644,800 according to the latest Zillow estimates; see also Redfin estimating current value at $3,950,422. (RJN ## 12 and 13)

The Ninth Circuit in the 11 U.SC. § 362 context recognized in *In re Mellor*, 734 F.2d 1396 (9th Cir. 1984), that an "equity cushion" is an acceptable method of adequate protection even though the approach is not specifically mentioned in 11 U.S.C. § 361. 734 F.2d at 1400.

The court even held that an equity cushion may serve as the sole basis for adequate protection. *Id*. Here, a foreclosure would substantially harm the Debtor. "Where a creditor is adequately protected by a large equity cushion, the debtor would suffer a substantial loss in the event of foreclosure, and no economic harm to the creditor would result, relief from stay should not automatically follow a default in payment. " *In re Avila*, 311 B.R. 81, 83 (Bankr. N.D. Cal. 2004) With a 70% equity cushion, the purported "secured creditors" are protected whereas the Debtor would be substantially harmed in having to pay off the two liens, as at least one of them is invalid.

### D. Petition Filed in Good Faith

Movant claims Debtor filed this petition in bad faith. To determine whether a debtor has filed a petition in good faith, courts weigh a variety of circumstantial factors such as whether: (1) the debtor has only one asset; (2) the debtor has an ongoing business to reorganize; (3) there are any unsecured creditors; (4) the debtor has any cash flow or sources of income to sustain a plan of reorganization or to make adequate protection payments; and (5) the case is essentially a two-party dispute capable of prompt adjudication in state court. *In re St. Paul Self Storage Ltd. P'ship*, 185 B.R. 580, 582-83 (9th Cir. BAP 1995) ("St. Paul").

1. There is no dispute Debtor has one asset, the Subject Property.
2. Debtor does have an ongoing business, management of the Subject Property, which provides an income stream to the business.
3. The unsecured amount is unclear at this moment. The result of the adversary proceeding by Debtor will clarify whether Movant's lien is completely invalid due to his failure to pay for the 2003 Note as required in the settlement or is not a secured lien and/or partially an unsecured lien. Movant makes no mention of Bank of New York Mellon's lien which Movant claimed to advance $215,000 to pay off the lien. BNYM lien remains on title subject to payment.
4. Debtor has a cash flow of receipts of $9,000 per month, in which approximately $2,749.43 is used for management of the asset leaving $6,250.57 for payment towards any valid, secured creditor. (Vince Nguyen Decl. *generally*)

15
DEBTOR'S OPPOSITION TO MOTION FOR RELIEF FROM STAY

5. The dispute is a *four-party dispute* and has several parts.

    a.    The 2011 Settlement Agreement was to settle the deed of trust that AWL through MERS, assigned to Bank of New York Mellon six months after the settlement was filed and paid and "AWL" had reconveyed the deed of trust to the original borrower, Teri Ha. This shows the dispute involved the actual, original AWL, Bank of New York Mellon, Debtor as purchaser taking assignment of the lien, and the Trustees of the Trust as the seller of the property. That is four parties.

    b.    The 2011 Settlement Agreement was with a group of individuals, including Movant, who were impersonating AWL. Debtor believes the Settlement Agreement and reconveyance, which are signed by one Dennis Bell, and was facilitated by Movant, are fraudulent. This dispute is being litigated in State Court, and involves AWL, Global Capital, Gary Harre, Jan Van Eck, Movant, Debtor as purchaser taking assignment of the lien, and the Trustees of the Trust as the seller of the property. That is seven parties.

    c.    The original borrowers of the 2011 Note, paid Movant $247,000 on the 2011 Note such that no monies are due. This dispute, which is being litigated in state court, involves Movant, Chase Merritt Fund I, LLC, Debtor as purchaser taking assignment of the lien, and the Trustees of the Trust as the seller of the property. That is four parties.

    d.    Movant claims he "personally loaned" $215,000 but he did not provide those funds to original borrower; he in fact, intentionally fails to state *who he purportedly gave the actual funds to.* Did he provide them to the actual AWL? To Dennis Bell's AWL? Debtor disputes Movant provided *any funds* at all but rather worked with Jan Van Eck to create a series of documents falsely alleging money had been transferred when in fact, no money was advanced on behalf of the original borrowers. This dispute is being litigated in state court and involves Gary Harre, Jan Van Eck, Movant, Debtor as purchaser taking assignment of the lien, and the Trustees of the Trust as the seller of the property. That is five parties.

At issue in this bankruptcy is resolution of the two liens as they are both related to and specific to the original 2003 loan and DOT with AWL. Who does Debtor owe, Bank of New York Mellon who claims it purchased the debt from AWL and it was not settled; or Movant who claims he advanced the funds to pay off the AWL loan and DOT that Bank of New York Mellon says was not paid off. That makes this at minimum a four-party dispute – Bank of New York Mellon, Movant, Debtor as purchaser taking assignment of the lien, and the Trustees of the Trust as the seller of the property and original borrowers.

Movant appears to be asking this court to take a review of the state court proceedings, in which the majority of his arguments and skewed assessments are not relevant to this motion. The status of the preliminary injunction is before the Court of Appeals and is not relevant to the dispute between Bank of New York Mellon who claims to have a lien, that Movant claim he advanced $215,000 to clear. That is what is at issue in this bankruptcy.

## V. CONCLUSION

Movant is a con artist running a long con. There is a sufficient equity cushion to protect the valid creditors. Movant comes to this court with unclean hands including arguing he is the only creditor when in fact the 2003 DOT remains on title. Even if the court does not apply the uncleans hand doctrine, Debtor has a legal right to seek reorganization to determine which of the two liens on the property is valid.

Dated: August 23, 2022

/s/Vinod Nichani_____
Vinod Nichani,
(Proposed) Attorney for Debtor-in-Possession EMPIRE INVESTMENTS LLC dba EMPIRE INVESTMENTS TEAM LLC

17
DEBTOR'S OPPOSITION TO MOTION FOR RELIEF FROM STAY
Case: 22-50645    Doc# 45    Filed: 08/23/22    Entered: 08/23/22 22:09:31    Page 17 of 17