1  VINOD NICHANI|SBN 277607
   NICHANI LAW FIRM
2  111 North Market Street, Suite 300
   San Jose, California 95113
3  Phone: 408-800-6174
   Fax: 408-290-9802
4  Email: vinod@nichanilawfirm.com

5
   (Proposed) Attorney for Debtor-in-Possession
6  EMPIRE INVESTMENTS LLC dba EMPIRE
7  INVESTMENTS TEAM LLC;

8
9                  UNITED STATES BANKRUPTCY COURT

10       NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVSION

11 | In re:                                    | Case No.:  22-50645 SLJ

12 |                                           | Chapter 11

13 | EMPIRE INVESTMENTS LLC dba EMPIRE          |
   | INVESTMENTS TEAM LLC;                      | DEBTOR'S CONSOLIDATED REQUEST
14 |                                           | FOR JUDICIAL NOTICE IN SUPPORT OF
   |                                           | OPPOSITIONS TO PAUL NGUYEN'S
15 |           Debtor-in-Possession.           | MOTION FOR SEQUESTRATION;
   |                                           | MOTION TO DISMISS; MOTION FOR
16 |                                           | RELIEF FROM STAY
17 |
18 |                                           | Date:     September 6, 2022
19 |                                           | Time:     2:00 p.m.
   |                                           | Place:    Via Video or Teleconference
20 |                                           |           United States Bankruptcy Court
   |                                           |           280 South First Street
21 |                                           |           Courtroom 9
22 |                                           |           San Jose, California 95113

23 **TO:    THE HONORABLE STEPHEN L. JOHNSON, UNITED STATES BANKRUPTCY**
24        **JUDGE, THE UNITED STATES TRUSTEE, AND ALL INTERESTED PARTIES**

25        EMPIRE INVESTMENTS LLC, dba EMPIRE INVESTMENTS TEAM LLC, Debtor-in-
26 Possession (hereinafter "Debtor"), hereby requests this Court to take judicial notice of the
27 following court or public records pursuant to Federal Evid. Code §§  201(b); 201(c) and 201(d)
28

                                            1

NICHANI LAW FIRM
111 N. Market Street, Suite 300
San Jose, California 95113

**REQUEST FOR JUDICIAL NOTICE # 1:** Deed of Trust between Teri Ha-Nguyen and America's Wholesale Lender dated September 30, 2003 and recorded as Instrument Number 17404380. A true and correct copy is attached herein as Exhibit 1.

**REQUEST FOR JUDICIAL NOTICE # 2:** Transfer deed between Teri Ha-Nguyen to the Ha-Nguyen Living Trust, dated 12/11/2004, dated October 5, 2009 and recorded on October 9, 2009. A true and correct copy is attached herein as Exhibit 1.

**REQUEST FOR JUDICIAL NOTICE # 3:** Declaration of Paul Nguyen stating he was the Operations Manager of Global Capital Law firm at ¶ 2. A true and correct copy is attached herein as Exhibit 3.

**REQUEST FOR JUDICIAL NOTICE # 4:** Declarations of Dennis Bell, filed in federal court under penalty of perjury, denying Paul Nguyen or Jan Van Eck had authority to settle AWL loans. A true and correct copy is attached herein as Exhibit 4.

**REQUEST FOR JUDICIAL NOTICE # 5:** 2011 Judgement filed by Gary Harre for settlement between AWL and Teri Ha-Nguen for 2003 Note and DOT. A true and correct copy is attached herein as Exhibit 5.

**REQUEST FOR JUDICIAL NOTICE # 6:** Reconveyance signed by Dennis Bell as President of AWL, for the 2003 DOT. A true and correct copy is attached herein as Exhibit 6.

**REQUEST FOR JUDICIAL NOTICE # 7:** Grant Deed from Ha-Nguyen Living Trust to Empire Investments, including liens. A true and correct copy is attached herein as Exhibit 7.

**REQUEST FOR JUDICIAL NOTICE # 8:** AWL assignment of 2003 DOT to Bank of New Mellon. A true and correct copy is attached herein as Exhibit 8.

**REQUEST FOR JUDICIAL NOTICE # 9:** Paul Nguyen Bankruptcy Schedules signed under penalty of perjury, claiming no interest in property or monies due to him, filed in 2017. A true and correct copy is attached herein as Exhibit 9.

**REQUEST FOR JUDICIAL NOTICE # 10:** Petition of Writ of Mandate filed with Court of Appeals detailing mortgage scam by Movant Paul Nguyen. A true and correct copy is attached herein as Exhibit 10.

2

Case: 22-50016    Doc# 50    Filed: 08/23/22    Entered: 08/23/22 12:26:44    Page 2 of 199

REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF OPPOSITION TO CREDITOR'S SECOND MOTION TO DISMISS; MOTION FOR RELIEF FROM STAY

**REQUEST FOR JUDICIAL NOTICE # 11:** Movant's Second Amended Complaint. A true and correct copy is attached herein as Exhibit 11.

**REQUEST FOR JUDICIAL NOTICE # 12:** Zillow estimated value of Subject Property. A true and correct copy is attached herein as Exhibit 12.

**REQUEST FOR JUDICIAL NOTICE # 2:** Redfin estimated value of Subject Property. A true and correct copy is attached herein as Exhibit 13.

Dated: August 23, 2022         */s/Vinod Nichani*_____

Vinod Nichani,
(Proposed) Attorney for Debtor-in-Possession EMPIRE INVESTMENTS LLC dba EMPIRE INVESTMENTS TEAM LLC;

3

Case: 22-50648    Doc# 50    Filed: 08/23/22    Entered: 08/23/22 22:26:44    Page 3 of 199

REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF OPPOSITION TO REQUESTING PARTYS MOTION TO DISMISS; MOTION FOR RELIEF FROM STAY

# EXHIBIT 1

# EXHIBIT 1

Recording Requested By:
D. BRYSON

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
Prepared By:
FLORENCE AKERS

DOCUMENT: 17404380

Pages: 22

| Fees.... | 72.00 |
| Taxes... | |
| Copies.. | |
| AMT PAID | 72.00 |

BRENDA DAVIS
SANTA CLARA COUNTY RECORDER
Recorded at the request of
Chicago Title

RDE # 005
10/08/2003
8:00 AM

CHL

610 041459405 D2 001 001

989821                    00004145940509003
[Escrow/Closing #]           [Doc ID #]

[Space Above This Line For]

# DEED OF TRUST

MIN 1000157-0003033745-1

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated SEPTEMBER 30, 2003 , together with all Riders to this document.

(B) "Borrower" is.
TERI HA NGUYEN, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

Page 1 of 16                    Initials:

-6A(CA) (0207)    CHL (08/02)(d)    VMP MORTGAGE FORMS - (800)521-7291    Form 3005 1/01
CONV/VA

* 2 3 9 9 1 *        * 0 4 1 4 5 9 4 0 5 0 0 0 0 0 1 0 0 6 A *

Case: 22-50645    Doc# 50    Filed: 08/23/22    Entered: 08/23/22 22:20:44    Page 5 of 199

DOC ID #: 0000414594050903

Borrower's address is
12329 KOSICH PLACE, SARATOGA, CA 95070
Borrower is the trustor under this Security Instrument.
(C) "Lender" is
AMERICA'S WHOLESALE LENDER
Lender is a CORPORATION
organized and existing under the laws of NEW YORK
Lender's address is
P.O. Box 10219, Van Nuys, CA 91410-0219
(D) "Trustee" is
CTC REAL ESTATE SERVICES
400 COUNTRYWIDE WAY, MSN SV-88, SIMI VALLEY, CA 93065 ,
(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated SEPTEMBER 30, 2003 . The Note states that Borrower owes Lender
EIGHT HUNDRED THIRTY FIVE THOUSAND and 00/100

Dollars (U.S. $ 835,000.00      ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than  OCTOBER 01, 2033    .
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii)

@D -6A(CA) (0207)        CHL (08/02)              Page 2 of 16                    Initials: ____

Form 3005 1/01

DOC ID #: 0000414594 0509003

conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
COUNTY of SANTA CLARA :
[Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number: 38623072          which currently has the address of
12329 KOSICH PLACE, SARATOGA
[Street/City]

California     95070     ("Property Address"):
[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including,

-6A(CA) (0207)     CHL (08/02)     Page 3 of 16     Initials: _____     Form 3005 1/01

Case: 22-50645   Doc# 50   Filed: 08/23/22   Entered: 08/23/22 22:20:44   Page 7 of 199

DOC ID #: 0000414540509003

but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

-6A(CA) (0207)      CHL (08/02)                Page 4 of 16        Initials: _____        Form 3005 1/01

DOC ID #: 00004145940509003

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

Initials: _____

-6A(CA) (0207)          CHL (08/02)          Page 5 of 16          Form 3005 1/01

0000008-0000723  724151

DOC ID #: 0000414594050903

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of

Initials: _____

-6A(CA) (0207)    CHL (08/02)    Page 6 of 16    Form 3005 1/01

DOC ID #: 00004145940509003

paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Case: 22-50645    Doc# 50    Filed: 08/23/22    Entered: 08/23/22 22:20:44    Page 11 of 199

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower

Account No.: 041459405

Case: 22-50645   Doc# 50   Filed: 08/23/22   Entered: 08/23/22 22:20:44   Page 12 of 199

DOC ID #: 00004145940509003

shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security

Case: 22-50645     Doc# 50     Filed: 08/23/22     Entered: 08/23/22 22:20:44     Page 13 of 199

DOC ID #: 00004145940509003

Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

0000008-0000728  724151

DOC ID #: 0000414594050903

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

-6A(CA) (0207)        CHL (09/02)        Page 11 of 16        Initials: _JHN_        Form 3005 1/01

DOC ID #: 00004145940509003

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in

0000008-0000330  724151

DOC ID #: 00004145940509003

compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

Case: 22-50645    Doc# 50    Filed: 08/23/22    Entered: 08/23/22 22:20:44    Page 17 of 199

DOC ID #: 0000414594059003

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

Initials: _____

-6A(CA) (0207)     CHL (08/02)          Page 14 of 16          Form 3005 1/01

DOC ID #: 00004145940509003

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                        TERI HA NGUYEN                   -Borrower

_____          _____ (Seal)
                                                                         -Borrower

                                        _____ (Seal)
                                                                         -Borrower

                                        _____ (Seal)
                                                                         -Borrower

Case: 22-50645    Doc# 50    Filed: 08/23/22    Entered: 08/23/22 22:20:44    Page 19 of 199

DOC ID #: 00004145940509003

State of California
County of SANTA CLARA } ss.

On SEPTEMBER 30, 2003 before me, TRISHA HO

TERI HA NGUYEN

personally appeared

, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

TRISHA HO
Commission # 1281304
Notary Public - California
Santa Clara County
My Comm. Expires Oct 21, 2004

_____ (Seal)

-6A(CA) (0207)     CHL (09/02)     Page 16 of 16

Initials: ____

Form 3005 1/01

Prepared by: FLORENCE AKERS

**AMERICA'S WHOLESALE LENDER**

Branch #: 0000937
2440 W. SHAW AVENUE SUITE #209
FRESNO, CA 93711-3300
Phone: (559)448-1720
Br Fax No.: (559)353-3222

DATE:        09/30/2003
CASE #:
DOC ID #:    00004145940509003
BORROWER: TERI HA NGUYEN
PROPERTY ADDRESS: 12329 KOSICH PLACE
                  SARATOGA, CA 95070

## LEGAL DESCRIPTION EXHIBIT A

FHA/VA/CONV
• Legal Description Exhibit A
1C404-XX (04/03)(d)



* 2 3 9 9 1 *



* 0 4 1 4 5 9 4 0 5 0 0 0 0 0 1 0 0 6 A *

Case: 22-50645    Doc# 50    Filed: 08/23/22    Entered: 08/23/22 22:20:44    Page 21 of
199

989821

EXHIBIT "A"

All that certain Real Property in the City of Saratoga, County of Santa Clara,
State of California, described as follows:

All of Lot 10, a shown on that certain Map of Tract No. 8917, which Map was
filed for record in the Office of the Recorder of the County of Santa Clara,
State of California on June 10, 1997, in Book 688 of Maps, Page(s) 31, 32 and
33.

Excepting therefrom the underground water rights, without the right of surface
entry as granted to San Jose Water Company by Quitclaim Deed recorded August 25,
1999 as Instrument No. 14955253 Official Records of Santa Clara County.

0000008-0000736  724351

# EXHIBIT 2

# EXHIBIT 2

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO

Name    VINH D. NGUYEN
         TERI HA NGUYEN
Address   12329 Kosich Place
         Saratoga, CA 95070

MAIL TAX STATEMENTS TO
Name    Same as above

**DOCUMENT:**   20462722

Pages:    2

Fees....    18.00
Taxes...
Copies..
AMT PAID    18.00

REGINA ALCOMENDRAS
SANTA CLARA COUNTY RECORDER
Recorded at the request of
Grantor

RDE #   011
10/09/2009
9:19 AM

SPACE ABOVE THIS LINE FOR RECORDERS USE

# TRUST TRANSFER DEED

The undersigned Grantors declare under penalty of perjury that the following is true and correct:

**1. There is no consideration for this transfer.**
**2. There is no Documentary transfer tax due. This is a Trust Transfer under § 762 of the Revenue and Taxation Code: Transfer to a revocable trust.**
**3. This transfer is excluded from Reappraisal under Proposition 13, i.e., Calif. Const. Art 13A § 1 et.seq.**

GRANTOR **TERI HA NGUYEN** hereby grant to **VINH D. NGUYEN and/or TERI HA NGUYEN, trustees, or successor trustee of the NGUYEN-HA LIVING TRUST DATED DECEMBER 10, 2004**, (hereinafter referred to as "Assignees"), the following described real property in the County of Santa Clara, State of California

**Assessor Parcel Number: 386-23-072**
**Known as 12329 Kosich Place, Saratoga, CA 95070**
**See Exhibit "A-Kosich Place" for the Legal Description**

Dated this _5_ th day of October, 2009

**Grantor - Transferor**

TERI HA NGUYEN

State of California         )
                             )
County of Santa Clara    )

On _Oct 5_ 2009, before me, _Don Baker_ , the undersigned, a Notary Public in and for said County and State, personally appeared _Teri Ho Nguyen_ , and who proved to me on the basis of satisfactory evidence to be the person whose names is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed this instrument. **I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

Signature _Don Baker_

DON BAKER
Commission # 1798603
Notary Public - California
Santa Clara County
My Comm. Expires Apr 17, 2012

MAIL TAX STATEMENTS AS DIRECTED ABOVE

# EXHIBIT "A- KOSICH PLACE"

## LEGAL DESCRIPTION

All that certain Real Property in the City of Saratoga, County of Santa Clara, State of California, described as follows:

All of Lot 10, a shown on that certain Map of Tract No. 8917, which Map was filed for record in the Office of the Recorder of the County of Santa Clara, State of California on June 10, 1997, in Book 688 of Maps, Page(s) 31, 32 and 33.

Excepting therefrom the underground water rights, without the right of surface entry as granted to San Jose Water Company by Quitclaim Deed recorded August 25, 1999 as Instrument No. 14955253 Official Records of Santa Clara County.

# EXHIBIT 3

EXHIBIT 3

# DECLARATION OF PAUL NGUYEN

I, Paul Nguyen, declare as follows:

1.    I am a named defendant in this action. I have personal knowledge of the facts stated in this declaration and, if called upon to testify, I could and would competently and truthfully testify to the facts stated below.

2.    I never owned a law firm called Global Capital Law PC. Such law firm was formed and owned by Attorney Gary Harre. I was employed as operation manager handling various operations for the firm. Beside Mr. Harre, Global Capital Law employed between 6-8 attorneys, over 12 paralegals and secretaries. In addition, the Firm also maintained a separate finance and accounting department.

3.    On or about 07/28/2011, I personally lent $215,000.00 to Teri H. Nguyen and Vinh D. Nguyen aka Vince Nguyen as trustees of Nguyen-Ha Living Trust Dated 12/10/04 ("LOAN"). The LOAN was secured by a deed of trust ("DOT"), encumbering the Property located at 12329 Kosich Place, Saratoga, California 95070, APN: 386-23-072 ("PROPERTY" or "KOSICH") which was recorded on 08/25/2011 with the Santa Clara County Recorder as instrument number 21291910.

4.    Vince Nguyen and Teri Nguyen prepared the promissory note and DOT and executed those documents. Upon completion, Vince Nguyen emailed to me.

5.    In 2011, Vince Nguyen, Teri Nguyen and I involved in a business venture to develop a resort in Central Vietnam. Vince Nguyen setup a limited liability company in which we contributed capital to invest in such project.

6.    We made multiple trips to Vietnam to meet with developer, architect and designer. In 2012, Vince Nguyen and Teri Nguyen failed to contribute capital to the LLC. As the result, Vince Nguyen and Teri Nguyen withdrew their membership in the LLC.

7.    Chase Merritt Fund I, LLC was never a party to the LOAN or had any interest in the subject PROPERTY. Vince Nguyen and Teri Nguyen did not know about this entity until we became involved in the investment project in Vietnam.

8.    In 2011, Vince Nguyen asked Global Capital Law to assist him with estate planning. Mr. Harre assigned Attorney Diane Beall to assist Mr. Vince Nguyen. Attorney Beall maintained her own file.

---

DECLARATION OF PAUL NGUYEN IN SUPPORT OF MOTION FOR SANCTIONS.

2

9. I did not know if Vince Nguyen had retained legal services from Ms. Beall nor Ms. Beall represented Vince Nguyen in any capacity.

10. I was not aware or have any knowledge of the entity called Empire Investments LLC organized in Wyoming ("EMPIRE"). Furthermore, I had no connection whatsoever in the formation or organization of such entity. Based on information and belief, EMPIRE was organized by Mr. Vince Nguyen, who is an Attorney in California.

11. I was not advised by Vince Nguyen or Teri Nguyen of the transferred to title of the subject PROPERTY to EMPIRE and was not aware of such transaction.

12. I became aware of such transaction during foreclosure process wherein the substituted trustee under the DOT advised me of such transaction.

13. On or about March 2011, I lent Teri Nguyen $60,000.00 from my daughter college account. Teri Nguyen promised to pay-back within a month. She failed to do so and finally she paid back in August 22, 2011.

14. I never instructed Teri Nguyen or Vince Nguyen to make a check payable in my daughter name for the LOAN. In fact, Vince Nguyen and Teri Nguyen thanked me in their email for the short-term loan that is unrelated to the subject LOAN.

15. In May 2012, Chase Merritt Fund I, LLC involved in a transaction with an entity known as Rex Investment Group, LLC. Rex Investment Group was the owner of a property located at 17751 Bruce Ave, Monte Sereno, CA 95030 ("BRUCE"). Vince Nguyen was a Manager for such LLC and also its attorney.

16. BRUCE property was sold in 2012 and a distribution in the amount of $186,070.40 was distributed by Rex Investment Group LLC to Chase Merritt Fund I, LLC.

17. Transaction involved BRUCE property in 2012 was NOT related to the loan I personally extended to Vince Nguyen an Teri Nguyen in 2011.

18. I never agreed to "off-set" the unrelated BRUCE transaction with my personal LOAN to Teri Nguyen and Vince Nguyen. In fact, there is no reason for me to do so.

19. In 2010, PHI Group became involved in the investment project in Vietnam. I was invited to fill a board of director vacant seat. However, I declined due to potential conflict of interests. I never filed anything with the Security & Exchange Commission ("SEC") and have no knowledge of what was filed.

DECLARATION OF PAUL NGUYEN IN SUPPORT OF MOTION FOR SANCTIONS

3

20. I never lived oversea as alleged by Vince Nguyen and Teri Nguyen. However, I did travel for business.

21. I did not have any contact with Vince Nguyen in 2016 and did not tell Vince Nguyen that I did not have money to pay back the disputed $186,070.40 transaction but would agree to use the said sum to offset the remaining of the $215,000.00 lien balance. This is clearly a made up allegations.

22. In 2019, I was a co-defendant with Vince Nguyen and Teri Nguyen in a criminal case in Visalia. Attorney Richard Schonfeld represented me in such case. Both Vince Nguyen and Teri Nguyen were represented by their own attorneys. Mr. Schonfeld instructed me not to have any contact with Vince Nguyen or Teri Nguyen.

23. On number of occasions, Vince Nguyen approached and attempted to speak to me while in court. However, Mr. Schonfeld terminated Vince Nguyen's attempts and advised him to have his attorney to communicate with him.

24. I never spoke to Vince Nguyen or Teri Nguyen in Visalia as they attempted to speak to me.

25. I reviewed the Complaint and First Amended Complaint filed by Plaintiffs. Vince Nguyen and Teri Nguyen never made any payment on the LOAN as of today.

26. Mary Ng is a personal friend. We communicated from time to time with each other via telephone and email. I am not aware and not part of the communications between Mary Ng and Teri Nguyen or Vince Nguyen. I did not tell her my business and she was not involve in my business.

27. I did not and do not know Mary Ng relationship with Vince Nguyen or Teri Nguyen.

I declare under penalty of perjury under the laws of the State of California, the the foregoing is true and correct.

Dated: June 27, 2021

By: PAUL NGUYEN

---

DECLARATION OF PAUL NGUYEN IN SUPPORT OF MOTION FOR SANCTIONS.

4

# EXHIBIT 4

# EXHIBIT 4

1     THE LAW OFFICES OF STEVEN C. VONDRAN, ESQ.
        Steven C. Vondran (SBN# 232337)

2     620 Newport Center, Suite 1100
        Newport Beach, California 92660

3     Telephone: (949) 945-8700
        Facsimile: (888) 551-2252

4

5     Attorneys for Defendant(s):
        AMERICA'S WHOLESALE LENDER, INC., DENNIS L.

6     BELL AND CHERI B. ENGLISH

7               UNITED STATES DISTRICT COURT

8            CENTRAL DISTRICT OF CALIFORNIA

9                  WESTERN DIVISION

10     COUNTRYWIDE HOME LOANS, INC.;       Case No.: 8:12-cv-00242-CJC-AN
        BANK OF AMERICA CORPORATION;

11     BANK OF AMERICA, N.A.,

12               Plaintiffs,         **DECLARATION OF DENNIS L. BELL IN**
                                  **SUPPORT OF DEFENDANTS OPPOSITION**

13                v.             **TO PLAINTIFF'S EX PARTE**
                                  **APPLICATION FOR TRO AND**

14     AMERICA'S WHOLESALE LENDER, INC., a   **PRELIMINARY INJUNCTION.**

15     New York Corporation; DENNIS L. BELL, an
        individual; CHERI B. ENGLISH, an individual:

16     JAN VAN ECK (a/k/a HERMAN JAN VAN
        ECK a/k/a MAURITZ VAN ECK a/k/a

17     MAURICE VAN ECK a/k/a MARITZ VAN
        ECK a/k/a GEORGE TOMAS), an individual:

18     and DOES 1-10

19               Defendants.

20

21

22                   **DECLARATION OF DENNIS L. BELL**

23     I, Dennis L. Bell Declare:

24           1.   I have personal knowledge of the following, and if called to testify, I could and would
    testify as follows:

25           2.   I am a Defendant in the above-referenced civil action.

26           3.   On or around 12/16/08 I incorporated Americas Wholesale Lender, Inc. ("AWL") for the

27     purpose of preventing foreclosure actions maintained by Countrywide Home Loans, Inc. where the

28     mortgages were made in the name of America's Wholesale Lender, a Corporation organized and

                        DECLARATON OF DENNIS L. BELL

existing under the laws of New York. Never at any time did CHLI lawfully operate as America's Wholesale Lender, Inc., nor were they authorized to do so. According to the nation's most renowned forensic mortgage examiner, Marie McDonnell, the notes and mortgages made in the name of America'' Wholesale Lender, Inc. are either vested to the control of America'' Wholesale Lender, Inc., or they are void.

4.   As part of my role as an officer of AWL, I have had to deal with hundreds of lawsuits served on us where a note, mortgage or deed of trust made in the name of America's Wholesale Lender, Inc. was at issue. Initially we attempted to clarify our position to avoid litigation, but within weeks we were completely overwhelmed by lawsuits to the extent we could not even respond to all of them. In many cases, default judgments were issued against us for failure to respond, and thus the plaintiff's were granted judgments that voided their loans, and related liens were removed from their property. Many plaintiffs were able to obtain free and clear titles to their homes as a result of those lawsuits. In other cases, we agreed to settlement terms to limit our exposure to certain liability stemming from the serious claims made against my company, which was the named lender in each and every loan specified in the many lawsuits.

5.   AWL does not originate or service loans.

6.   AWL does not solicit any business and does not solicit lawsuits. AWL does not have direct contact with borrowers and we do not offer an intake address or phone number for such contact. Since being organized, AWL has been so overwhelmed with lawsuits that it has not been able to consider other forms of activities. AWL has never held itself out to be Countrywide Home Loans, Inc. or its dba Americas Wholesale Lender. Any document authorized by AWL clearly identifies the maker of that document as America's Wholesale Lender, Inc. a New York Corporation, which by its own description is a separate and distinct entity from CHL's dba.

7.   My association with Van Eck is non-existent. At some point after AWL was organized in New York, contact was made by Van Eck. At that time he represented himself to be a Harvard graduate, someone well versed in the mortgage meltdown, and someone who had access to current information related to proceedings involving the big lenders, including CHL. While Van Eck was not an employee of AWL, and derived no salary, he did from time-to-time pass on information that was useful. I believe I had no contact with Van Eck during the first half of 2011, and if I did, it was minimal. Around August or September of 2011 Van Eck called me to say that certain persons working for Global Capital Law had contacted him for the purpose of executing documents, securing

1    an address for AWL in New York, and concluding transactions. Van Eck also stated that these
2    persons provided him with computers, equipment, and corporate stamp made in the name of AWL to
3    assist with these transactions. He admitted that he did in fact assist the Global Law Firm and its
4    agents in concluding various transactions that are now the subject of the instant case. At that time,
5    AWL terminated its association with Van Eck and demanded copies of all documents falsely made in
     the name of AWL. Van Eck failed to produce any documents. Van Eck still appears to be operating a
6    phone answered in the name of AWL, and Van Eck appears to still maintain an address in New York
7    in the name of AWL. Van Eck was never authorized to conclude any transaction on behalf of AWL
8    and was never authorized to assist Global Capital Law, or it agents, with concluding litigation or
9    transactions involving AWL. With regard to the transaction(s) involving Van Eck and Global Capital
10   Law, I filed timely complaints to state and federal agencies to investigate all persons involved.

11       8.   The documents that make up our Request for Judicial Notice were taken from various
     governmental websites.

12       9.   I have no reason to believe that Plaintiff has suffered any damages or irreparable injury.
13           In fact plaintiffs continue to file lawsuits against AWL in Florida and New York where
14           they are required to show a complete chain of title on foreclosure suits. Because AWL is
15           the named lender on those mortgages, plaintiffs must necessarily allege that the related
16           note and mortgage was made to AWL, and thereafter AWL assigned its interest to
17           plaintiffs. In each case, the allegation of subsequent assignment is a fraud upon the court,
18           and the foreclosure actions are tainted with that same fraud. If plaintiffs were successful
19           in obtaining a TRO against AWL, it would leave plaintiffs with a full and unobstructed
20           means of unbridled fraud against unknowing homeowners. On behalf of AWL and the
21           many victims of plaintiffs ever increasing fraud, I respectfully urge the Court deny the
             TRO and request for injunctive relief.

22       10.  Plaintiff suggests that AWL is no longer a corporate entity however that is untrue.
23           Toward the latter part of 2011 the commissioner of taxation for New York sent a notice
24           to AWL that a shortage of tax payment existed for 2009. AWL never received that notice
25           because the tax commissioner sent it to the wrong address. As a result, the tax
26           commissioner took action against AWL. When AWL discovered the problem, it took
27           immediate action to correct the 2009 tax issue. The tax commissioner admitted that it
28           had sent notice to the wrong address and provided immediate assistance to reinstate
             AWL. Accordingly, the tax commissioner provided the letter, attached hereto as Exhibit

1   "A" which authorizes AWL to be reinstated. AWL has completed all of the required

2   forms, actions and payments, and is now waiting for the New York Department of State

3   to complete its administrative process to reinstate AWL. This should be complete within

4   72 hours of this declaration.

5         11.    I declare under penalty of perjury under the laws of the State of California that the

foregoing is true and correct.

6         Executed on March _12_, 2012 at New York, New York.

By                                             

                    Dennis L. Bell, Defendant

4

# Exhibit "A"

TR- 56 (1/06)

# To the honorable Secretary of State
## of the State of New York:

Please take notice that pursuant to the provisions of section 203-a of the Tax Law, as amended,

the Commissioner of Taxation and Finance of the State of New York does hereby certify that

AMERICA'S WHOLESALE LENDER, INC.

a corporation organized to do business under the laws of the State of New York on the

date of 12/16/2008, and heretofore dissolved by proclamation published on 10/26/2011, pursuant to the

provisions of section 203-a of the Tax Law, has paid all franchise taxes, penalties, and interest

charges accrued against it.

In witness whereof, the Commissioner of

Taxation and Finance has caused this certificate to be executed

and the official seal of the Department of Taxation and Finance

of the State of New York affixed hereto

this sixth day of March Two-thousand twelve.

Commissioner of

Taxation and Finance

by *Brottey Vnthns*

Deputy Commissioner

1  THE LAW OFFICES OF STEVEN C. VONDRAN, ESQ.
    Steven C. Vondran (SBN# 232337)
2  steve@vondranlaw.com
    620 Newport Center, Suite 1100
3  Newport Beach, California 92660
    Telephone: (949) 945-8700
4  Facsimile: (888) 551-2252

5  Attorneys for Defendant(s):
    AMERICA'S WHOLESALE LENDER, INC., DENNIS L.
6  BELL AND CHERI B. ENGLISH

7                    UNITED STATES DISTRICT COURT

8                   CENTRAL DISTRICT OF CALIFORNIA

9                          WESTERN DIVISION

10 COUNTRYWIDE HOME LOANS, INC.;          Case No.: 8:12-cv-00242-CJC-AN
    BANK OF AMERICA CORPORATION;
11 BANK OF AMERICA, N.A.,                 Hon. Judge Cormac J. Cartney

12                                        **DECLARATION OF DENNIS L. BELL IN**
                Plaintiffs,                **SUPPORT OF DEFENDANTS OPPOSITION**
13                                         **TO PLAINTIFF'S REQUEST FOR**
                                          **PRELIMINARY INJUNCTION.**
14              v.

15 AMERICA'S WHOLESALE LENDER, INC., a
    New York Corporation; DENNIS L. BELL, an   Hearing
16 individual; CHERI B. ENGLISH, an individual:  Date: March 30, 2012
    JAN VAN ECK (a/k/a HERMAN JAN VAN      Time: 9:00
17 ECK a/k/a MAURITZ VAN ECK a/k/a         Place: 9B
    MAURICE VAN ECK a/k/a MARITZ VAN
18 ECK a/k/a GEORGE TOMAS), an individual:
    and DOES 1-10
19
                Defendants.
20

21

22
                    **DECLARATION OF DENNIS L. BELL**
23
    I, Dennis L. Bell Declare:
24
        1.   I have personal knowledge of the following, and if called to testify, I could and would
25 testify as follows:

26      2.   I am a Defendant in the above-referenced civil action.

27      3.   On or around 12/16/08 I incorporated Americas Wholesale Lender, Inc. ("AWL") for the
    purpose of preventing myself from becoming a victim of foreclosure fraud committed by Plaintiff
28

                        DECLARATON OF DENNIS L. BELL

                                    1

herein. Although my mortgages were made to America's Wholesale Lender, a New York Corporation, I was being sued by Countrywide Home Loans, dba Americas Wholesale Lender. This standing issue was raised as a defense in the State Court where the actions were filed, however the State Court seemed oblivious to its implication. I thereafter filed suit on the U.S. District Court against the Plaintiff herein, and also named America's Wholesale Lender, Inc., a New York Corporation. Summons and Complaint against AWL, Inc. was served upon the New York Secretary of State. I was subsequently notified by the New York Secretary of State that there was no such New York Corporation. It became obvious to me that my mortgages were made to a non-existent entity, and that Plaintiff herein had no legal capacity or standing to file foreclosure on my mortgages. I thereafter filed Articles of Incorporation for America's Wholesale Lender, Inc., a New York Corporation which were lawfully and properly issued by the State of New York. I did so for the lawful purpose of protecting myself. America's Wholesale lender, Inc. a New York Corporation, continues to be a valid corporation, in good standing in the State of New York.

4. In regard to the claim that I solicited lawsuits from AWL borrowers, that claim is completely false. I have looked at the loans/borrowers found in Plaintiffs' complaint at paragraph 27. Each of those borrowers filed suit against America's Wholesale Lender, Inc. without any contact or communication from AWL, Inc. I was contacted by an individual named Paul Nguyen who represented himself to be a licensed attorney in California, Florida, New York, and Washington State, and who stated that he represented some or all of those borrowers against AWL, Inc. I have never met or spoken with any of those borrowers. With respect to Plaintiffs' claims that *"Neither AWLI, Bell nor any other defendant had any direct or indirect authority to take any of these actions with respect to the loan originated by CHL"*, these claims are false because all actions taken by AWLI and/or Bell were in accordance with a valid State Court Judgment which authorized and required such actions.

5. In regard to the statement that I am working in concert with Defendant Van Eck, this claim is patently false. Van Eck took his actions independently, without the authorization or knowledge of AWL, Inc., and did so in concert with Paul Nguyen. Upon discovering the actions taken by Van Eck and Nguyen in the name of AWL, Inc., AWL, Inc. immediately contacted state and federal authorities and made complaints against these, and other individuals.

6. Specific reasons for registering AWL, Inc. was primarily to establish to the courts where my foreclosure actions were pending that my mortgages were made in the name of a corporation that did not exist at the time the mortgages were made, and that the Plaintiffs in those actions never held any interest in the mortgages, or the corporation that the mortgages were made to. When the courts failed to recognize the capacity and standing issues plaguing Countrywide, I then filed a default/consent of judgment on behalf of AWL, Inc. to drive the point home that Countrywide was not a proper party to the foreclosure suits. Countrywide's response to the default/consent judgment was that Countrywide Home loans, Inc. and AWL, Inc. were "one and the same." Countrywide then embarked upon a confusion of name practice, which it now is attempts to use with this court. Any such confusion was created by Countrywide and Plaintiffs herein by improper name use.

7. Although Countrywide alleges it uses a trademark associated with its name and services, I have never seen a document issued by Countrywide that exhibited a trademark sign. Countrywide certainly never used a trademark insignia on documents it made in the name of my corporation, AWL, Inc.

8. Currently, my plan for the proper and legitimate use of my corporation will be to assist State Attorneys General to make the public at large WHOLE, by providing the necessary elements and information to establish that many foreclosures completed by the Plaintiffs herein, or their agents, were completed fraudulently where their alleged interest in the foreclosed property was derived from America's Wholesale Lender, Inc. a New York Corporation. Currently, at least one Attorney General is contemplating a class action suit against these Plaintiffs based upon information provided by AWL, Inc.

9. Plaintiffs' claim that either myself or AWL, Inc. had intent to "swindle" borrowers is patently false. Up to the present time, AWL, Inc. has only responded to lawsuits filed by borrowers against AWL, Inc. In every case filed against AWL, Inc., the borrowers are looking for relief from the "swindling" and loss they have suffered by the fraud and misrepresentation committed by the plaintiffs herein. AWL, Inc. only seeks to ease the burden affecting borrowers from Plaintiffs' wrongful use of our name if required to do so by operation of law.

10. I never met or spoke with any borrower, or induced them. Each of the borrowers identified in Plaintiffs complaint were represented by counsel prior to any time AWL, Inc. was served with their lawsuit. Accordingly, only their attorneys or attorneys agents had access to them. AWL, Inc. only communicated with those attorneys and those communications related strictly to the suits filed against AWL, Inc.

11. On December 28, 2011, a Consent Order was issued by this very Court against one or more of the Plaintiff's herein that prohibits Countrywide defendants, which necessarily includes the trade name at issue herein, from engaging in residential loans without the consent and approval of the United States. (See page 4, paragraph 2 of Consent Order attached hereto as Exhibit RJN 24) Accordingly, this trade name is abandoned in accordance with the Consent Order.

12. The documents that make up the bulk our Request for Judicial Notice were taken from various governmental websites.

13. I have no reason to believe that Plaintiff has suffered any damages or irreparable injury, nor is Plaintiff likely to suffer any such damage or injury based upon the fact that Plaintiff claims no ownership in the loans central to their claims, and that Plaintiff has abandoned its trademark name for failure to use it within the last 3 years, and voluntarily in the Consent Order. I respectfully urge the Court deny the request for injunctive relief.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

4
DECLARATION OF DENNIS L. BELL

1
2
3
4
5
6

14.    I declare under penalty of perjury under the laws of the State of California that the foregoing is
       true and correct.

7      Executed on March 2̲8̲, 2012 at _____NEW York_____, New York.

8
9                          By _____
10                                       Dennis L. Bell, Defendant
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

5
DECLARATION OF DENNIS L. BELL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21    14.    I declare under penalty of perjury under the laws of the State of California that the foregoing is
22            true and correct.
23
24            Executed on March 23, 2012 at _____ New York.
25
26                                    By _____
                                              Dennis L. Bell, Defendant
27
28

5
DECLARATION OF DENNIS L. BELL

## PROOF OF SERVICE OF DOCUMENT

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

I am employed by The Law Offices of Steven C. Vondran in the County of Orange, State of California. I am over the age of 18 and not a party to the above-captioned action. My business address is **620 Newport Center Drive, Suite 1100, Newport Beach, CA, 92660.** I also have an office at 2415 E. Camelback Road, Suite 700, Phoenix, Arizona 85016.

On *March 23rd, 2012*, I placed a copy of the attached documents entitled:

**DEFENDANT'S DECLARATON IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

On the interested parties in this action as follows:

SEE ATTACHED SERVICE LIST

[ ]     **BY MAIL:**     By placing a true and correct copy thereof enclosed in a sealed envelope addressed as above, with postage thereon fully prepared, in the U.S. Mail at Newport Beach, CA. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal service on the same day with postage thereon fully prepaid at Phoenix, Arizona, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing as stated in the affidavit.

[ ]     **BY OVERNIGHT COURIER:** I caused the above referenced document(s) to be delivered to _____ for deliver to the above addresses.

[ ]     **BY FAX:** I transmitted a true copy of the foregoing document(s) this date from telecopier number **Fax: (XXX) XXX-XXX**

[ ]     **BY PERSONAL SERVICE:** I caused such envelope to be delivered by hand to the offices of the addressee(s).

[X]     **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and LBR(s), the foregoing document will be served by the court via NEF and hyperlink to the document. On **March 23, 2012**, I checked the CM/ECF docket for this civil case, bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

Nafiz Cekirge          nafiz.cekirge@bryancave.com
Robert E. Boone III    reboone@bryancave.com
Robert G. Lancaster    rglancaster@bryancave.com

[ ] **(State)** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

[X] **(Federal)** I declare under penalty of perjury that the foregoing is true and correct, and that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on *March 23rd, 2012*, at Newport Beach, CA

_____
Steven C. Vondran, Esq.

**SERVICE LIST**

Robert E. Boone III, Esq.
Nafiz Cekirge, Esq.
Robert G. Lancaster, Esq.
Bryan Cave, LLP
120 Broadway, Suite 300
Santa Monica, CA  90401-2386

THE LAW OFFICES OF STEVEN C. VONDRAN, ESQ.
Steven C. Vondran (SBN# 232337)
steve@vondranlaw.com
620 Newport Center, Suite 1100
Newport Beach, California 92660
Telephone: (949) 945-8700
Facsimile: (888) 551-2252

Attorneys for Defendant(s):
AMERICA'S WHOLESALE LENDER, INC., DENNIS L.
BELL AND CHERI B. ENGLISH

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| COUNTRYWIDE HOME LOANS, INC.; BANK OF AMERICA CORPORATION; BANK OF AMERICA, N.A., <br><br> Plaintiffs, <br><br> v. <br><br> AMERICA'S WHOLESALE LENDER, INC., a New York Corporation;  DENNIS L. BELL, an individual;  CHERI B. ENGLISH, an individual: JAN VAN ECK (a/k/a HERMAN JAN VAN ECK a/k/a MAURITZ VAN ECK a/k/a MAURICE VAN ECK a/k/a MARITZ VAN ECK a/k/a GEORGE TOMAS), an individual: and DOES 1-10 <br><br> Defendants. | Case No.: 8:12-cv-00242-CJC-AN <br><br> Hon. Judge Cormac J. Cartney <br><br> **SUPPLEMENTAL DECLARATION OF DENNIS L. BELL IN SUPPORT OF DEFENDANTS OPPOSITION TO PLAINTIFF'S REQUEST FOR PRELIMINARY INJUNCTION.** <br><br> Hearing <br> Date: March 30, 2012 <br> Time: 9:00 <br> Place: 9B |

## DECLARATION OF DENNIS L. BELL

I, Dennis L. Bell Declare:

1. I have personal knowledge of the following, and if called to testify, I could and would testify as follows:

2. I am a Defendant in the above-referenced civil action.

3. I have read the declarations of Dennis Burk and Linda Burk related to this action. Neither myself, nor AWL, Inc., knew of, or authorized anyone to contact the Burks for any purpose.

DECLARATON OF DENNIS L. BELL

Specifically, no one named "Maria", "Tom Shriver", or "Bernardo Villapudua" ever worked for AWL, Inc., nor were they authorized to represent AWL, Inc. for any reason, nor were they paid by AWL, Inc. for any purpose. Any persons who contacted the Burks did so of their own accord and for their own purposes, and not on behalf of AWL, Inc.

4. I am familiar with the name Paul Nguyen, who represented himself as a licensed attorney and partner of Global Capital Law who stated he represented Dennis and Linda Burk. As their counsel, he negotiated a settlement agreement with AWL, Inc. and thereafter forwarded documents to be executed by AWL, Inc. to facilitate such settlement based upon a valid court order. In accordance with the court order I executed the required documents and forwarded those to Global Capital Law. Subsequent to those documents being executed by AWL, Inc., AWL, Inc. was informed that the settlement would not be concluded at which time AWL, Inc. demanded the return of such documents from Mr. Nguyen and Global Capital Law. Before those documents were returned to AWL, Inc., Global Capital Law disappeared, along with the documents.

5. Thereafter, Paul Nguyen altered and forged the stolen documents to facilitate the events stated by the Burks in their declarations. AWL, Inc. had no participation in the Burk transaction, nor did it communicate with the title or escrow companies to close that transaction, nor did AWL, Inc. receive any funds related to that transaction.

6. The participation in that transaction by Maurice Van Eck was not authorized by AWL, Inc. nor was it known by AWL, Inc. Mr. Van Eck's actions were done under a cloak of secrecy to avoid detection by AWL, Inc., and to facilitate this secrecy, he used an address located at UN Plaza in New York which was never an address used by AWL, Inc. nor was it known by AWL, Inc. The actions taken by Paul Nguyen and Maurice Van Eck related to the Burk transaction appear to have been done solely for their own personal gain.

7. When AWL, Inc. learned of the events stated in the Burk's declarations, AWL, Inc. investigated the matter to determine who may have been involved. Once that information was obtained, AWL, Inc. alerted California State and federal authorities and provided documents and evidence for a complete investigation by those agencies. During that investigation, the Burks were questioned by the state investigator. I was informed personally by the state investigator that he questioned the Burks, and he stated the Burks were not forthcoming and he believed they knew much more than they would tell him. His belief was that the Burks were complicit in the fraud involving Paul Nguyen, Maurice Van Eck, and they were aware they paid $260,000 to Paul Nguyen and not to AWL, Inc.

8. On March 26, 2012, America's Wholesale Lender, Inc. was served with a foreclosure lawsuit filed by Bank of America at its New York Office. Bank of America seeks to foreclose on a mortgage made to America's Wholesale Lender, Inc. In its pleading, and for the purpose of closing the chain of title, B of A alleges that the mortgage was made to America's Wholesale Lender, Inc. but was thereafter assigned to Bank of America. Any such alleged assignment is false and fraudulent, and a fraud upon the court. Based upon this false and fraudulent assignment, B of A now seeks to foreclose on a mortgage that it does not hold a valid claim or interest. Currently, because of the TRO issued by this Court in favor of B of A , AWL, Inc. is restrained from informing that court of B of A's fraud related to this foreclosure action. Accordingly, another homeowner will become a victim of the wide spread and rampant foreclosure fraud committed by Bank of America on a daily basis. Once

2

DECLARATION OF DENNIS J. BELL

1  again, this Court should recognize that Bank of America and Countrywide Home Loans is using the

2  name of my company in a confusing and fraudulent way, and it should be them who are restrained.

3       9. I declare under penalty of perjury under the laws of the State of California that the foregoing

4  is true and correct.

      Executed on March _28_, 2012 at ___NEW YORK___, ~~California~~. *NEW YORK*

5

6

7       By _____

8            Dennis L. Bell, Defendant

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    3
                        DECLARATION OF DENNIS L. BELL

1   again, this Court should recognize that Bank of America and Countrywide Home Loans is using the

2   name of my company in a confusing and fraudulent way, and it should be them who are restrained.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22   9. I declare under penalty of perjury under the laws of the State of California that the foregoing is true

23   and correct.

        Executed on March 2̲8̲, 2012 at ____N̲E̲W̲ ̲Y̲O̲R̲K̲____, ~~California.~~   *NEW YORK*

24

25

26                        By _____
                              Dennis L. Bell, Defendant

27

28

                                    3
                    DECLARATION OF DENNIS L. BELL

# EXHIBIT 5

# EXHIBIT 5

DOCUMENT: 21260531

Pages: 37

Fees.... 123.00
Taxes...
Copies..
AMT PAID 123.00

REGINA ALCOMENDRAS
SANTA CLARA COUNTY RECORDER
Recorded at the request of
Attorney

RDE # 007
7/28/2011
4:08 PM

*RECORDING REQUESTED BY:*

NEWTON LAW GROUP

*UPON BEING RECORDED, SEND TO:*

NEWTON LAW GROUP
1275 S. Winchester Blvd., Suite E
San Jose, CA 95128



# RECORDING COVER SHEET

JUDGMENT

Empire-Exh_00001

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| GARY HARRE, SBN 86938<br>Global Capital Law, A PLC<br>8700 Warner Ave., Suite 200, Fountain Valley, CA 92708<br>TELEPHONE NO.: (714) 907-4182　　FAX NO. *(Optional)*:<br>E-MAIL ADDRESS *(Optional)*:<br>ATTORNEY FOR *(Name)*: Plaintiff | F I L E D<br>JUL 1 2011<br>DAVID H. YAMASAKI<br>Chief Executive Officer/Clerk<br>Superior Court of Santa Clara<br>BY Yvonne Halford DEPUTY |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA
STREET ADDRESS: 191 N. First Street
MAILING ADDRESS: 191 N. First Street
CITY AND ZIP CODE: San Jose, CA 95113
BRANCH NAME: UNLIMITED JUSRISDICTION

| PLAINTIFF: Teri H. Nguyen | |
|---|---|
| DEFENDANT: America's Wholesale Lender et al. | |

| JUDGMENT | | CASE NUMBER: |
|---|---|---|
| ☐ By Clerk　☐ By Default　☐ After Court Trial<br>☑ By Court　☑ On Stipulation　☐ Defendant Did Not Appear at Trial | | 111-CV-202240 |

## JUDGMENT

1. ☐ **BY DEFAULT**
   a. Defendant was properly served with a copy of the summons and complaint.
   b. Defendant failed to answer the complaint or appear and defend the action within the time allowed by law.
   c. Defendant's default was entered by the clerk upon plaintiff's application.
   d. ☐ **Clerk's Judgment** (Code Civ. Proc., § 585(a)). Defendant was sued only on a contract or judgment of a court of this state for the recovery of money.
   e. ☐ **Court Judgment** (Code Civ. Proc., § 585(b)). The court considered
      (1) ☐ plaintiff's testimony and other evidence.
      (2) ☐ plaintiff's written declaration (Code Civ. Proc., § 585(d)).

2. ☑ **ON STIPULATION**
   a. Plaintiff and defendant agreed (stipulated) that a judgment be entered in this case. The court approved the stipulated judgment and
   b. ☑ the signed written stipulation was filed in the case.
   c. ☐ the stipulation was stated in open court　☐ the stipulation was stated on the record.

3. ☐ **AFTER COURT TRIAL.** The jury was waived. The court considered the evidence.
   a. The case was tried on *(date and time)*:
      before *(name of judicial officer)*:
   b. Appearances by:
      ☐ Plaintiff *(name each)*:　　　　　　　　　　　　☐ Plaintiff's attorney *(name each)*:
      (1)　　　　　　　　　　　　　　　　　　　　　　　(1)
      (2)　　　　　　　　　　　　　　　　　　　　　　　(2)
      ☐ Continued on Attachment 3b.

      ☐ Defendant *(name each)*:　　　　　　　　　　　☐ Defendant 's attorney *(name each)*:
      (1)　　　　　　　　　　　　　　　　　　　　　　　(1)
      (2)　　　　　　　　　　　　　　　　　　　　　　　(2)
      ☐ Continued on Attachment 3b.

   c. ☐ Defendant did not appear at trial. Defendant was properly served with notice of trial.

   d. ☐ A statement of decision (Code Civ. Proc., § 632) ☐ was not ☐ was requested.

Form Approved for Optional Use<br>Judicial Council of California<br>JUD-100 [New January 1, 2002]

**JUDGMENT**

Empire-Exh. 00002

Code of Civil Procedure, §§ 585, 664.6

Case: 22-50645　Doc# 50　Filed: 08/23/22　Entered: 08/23/22 22:20:44　Page 51 of 199

| PLAINTIFF: Teri H. Nguyen | CASE NUMBER: |
|---|---|
| DEFENDANT: America's Wholesale Lender et al. | 111-CV-202240 |

| JUDGMENT IS ENTERED AS FOLLOWS BY: | ✔ THE COURT | ☐ THE CLERK |
|---|---|---|

4. ✔ **Stipulated Judgment.** Judgment is entered according to the stipulation of the parties.

5. **Parties.** Judgment is

a. ☐ for plaintiff *(name each)*:

    and against defendant *(names)*:

    ☐ Continued on Attachment 5a.

b. ✔ for defendant *(name each)*:
    America's Wholesale Lender, A New York
    Corporation

c. ☐ for cross-complainant *(name each)*:

    and against cross-defendant *(name each)*:

    ☐ Continued on Attachment 5c.

d. ☐ for cross-defendant *(name each)*:

6. **Amount.**

a. ☐ Defendant named in item 5a above must pay plaintiff on the complaint:

c. ☐ Cross-defendant named in item 5c above must pay cross-complainant on the cross-complaint:

| (1) ☐ | Damages | $ |
|---|---|---|
| (2) ☐ | Prejudgment interest at the annual rate of   % | $ |
| (3) ☐ | Attorney fees | $ |
| (4) ☐ | Costs | $ |
| (5) ☐ | Other *(specify)*: | $ |
| (6) | **TOTAL** | $ |

| (1) ☐ | Damages | $ |
|---|---|---|
| (2) ☐ | Prejudgment interest at the annual rate of   % | $ |
| (3) ☐ | Attorney fees | $ |
| (4) ☐ | Costs | $ |
| (5) ☐ | Other *(specify)*: | $ |
| (6) | **TOTAL** | $ |

b. ✔ Plaintiff to receive nothing from defendant named in item 5b.
    ☐ Defendant named in item 5b to recover costs $
    ☐ and attorney fees $

d. ☐ Cross-complainant to receive nothing from cross-defendant named in item 5d.
    ☐ Cross-defendant named in item 5d to recover costs $
    ☐ and attorney fees $

7. ✔ Other *(specify)*:
    Judicial Finding of Fact in support of Stipulated Judgment as described in the stipulation filed herein.

Date: 6/28/11

    ☒ *Patricia M. Lucas* (signature)
    JUDICIAL OFFICER
    Patricia M. Lucas

Date:     ☐ Clerk, by _____, Deputy

(SEAL)

**CLERK'S CERTIFICATE** *(Optional)*

I certify that this is a true copy of the original judgment on file in the court.

Date: JUL 2 8 2011

DAVID H. YAMASAKI

Clerk, by _____, Deputy

T. TURNER

Page 2 of 2

JUD-100 [New January 1, 2002]      **JUDGMENT**

Empire-Exh_00003

## SETTLEMENT AGREEMENT, STIPULATION FOR ENTRY OF JUDGEMENT AND JUDGMENT.

This Stipulation for Entry of Judgment and Judgment ("Final Judgment") is entered into by Plaintiff, NGUYEN TERI HA ("NGUYEN" or "PLAINTIFF") and Defendant AMERICAS WHOLESALE LENDER, INC., a New York Corporation ("AWL"). For purposes of this Final Judgment, NGUYEN and AWL shall be referred to collectively as "Parties" and individually as "Party". The Parties have stipulated and consented to the entry of this Final Judgment with the following stipulated fact and evidence herein. The Parties also have waived their right to appeal and have agreed to settle the above-captioned matter without further litigation, as set forth below.

### INTRODUCTION

This matter arises from the dispute of a promissory note executed in favor of AWL and secured by a Deed of Trust, which recorded with the Santa Clara County Recorder as instrument number 17404380. Said Deed of Trust purportedly encumbered Plaintiff's real property known as 12329 KOSICH PLACE, SARATOGA, CA 95070.

Plaintiff filed a Complaint against the Defendants in the Santa Clara County Superior Court alleging fraud, slander of title, unfair business practice, wrongful foreclosure and quiet title. Plaintiff sought to recover monetary damages, injunctive relief and quiet title as the result of alleged injuries caused by Defendants and its agents, employees or affiliates.

The Parties engaged in settlement negotiations prior to the filing of this Final Judgment. In those settlement negotiations, Parties are represented by counsels. The Parties have agreed to settle this matter without litigation pursuant to the terms of this Final Judgment.

/./././

/././.

Empire-Exh_00004

Case: 22-50645   Doc# 50   Filed: 08/23/22   Entered: 08/23/22 22:20:44   Page 53 of 199

## SETTLEMENT AGREEMENT AND JUDGMENT
## PURSUANT TO STIPULATED FINDING OF FACT

The Parties, after opportunity for review by their respective counsel, hereby stipulate and consent to the entry of this Final Judgment based on the following finding of facts as set forth below.

### 1. JURISDICTION

1.1.    The Parties stipulate and agree that the Superior Court of California, County of Santa Clara, has subject matter jurisdiction over the matters alleged in this action and personal jurisdiction over the Parties to this Final Judgment.

### 2. STIPULATED AND FINDING OF FACTS

2.1.    Plaintiff is the Borrowers of the promissory note in favor of America's Wholesale Lender made on September 30, 2003, covering the property described as 12329 KOSICH PLACE, SARATOGA, CA 95070.  A true and correct copy of promissory note is attached herein as Exhibit 1.

2.2.    Defendant AMERICA'S WHOLESALE LENDER, INC., New York Corporation, is the Lender of the promissory note.

2.3.    Defendant AMERICA'S WHOLESALE LENDER, INC., New York Corporation, is the beneficiary of the Deed of Trust recorded with the Santa Clara County Recorder on October 08, 2005 as instrument number 17404380.  A true and correct copy of the Deed of Trusts is attached herein as Exhibit 2.

2.4.    Defendant Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation that is acting solely as nominee for AWL, holding no interest in the subject promissory note as attached herein as Exhibit 1 or Deed of Trusts as attached herein as Exhibit 2.

2.5.    Defendant AMERICA'S WHOLESALE LENDER, INC., New York Corporation is the holder of the promissory note and deed of trusts identified herein and is currently in possession of the promissory note.

Empire-Exh_00005

2.6.    Defendant AMERICA'S WHOLESALE LENDER, INC., New York Corporation, as the holder of the promissory note, has not made any endorsement.

2.7.    Defendant AMERICA'S WHOLESALE LENDER, INC., New York Corporation, as beneficiary of the Deed of Trust, has not assigned nor authorized any assignment of the Deed of Trust identified herein.

2.8.    No person, party or entity, including trustee or nominee purporting to act on the behalf of AWL, is authorized to collect payment as identified in the promissory note, to initiate foreclosure or substitution of trustee as identified in the Plaintiff's complaint.

2.9.    Any substitution of trustee, assignment of Deed of Trust, or demand for payment that was not executed by Defendant AWL was not authorized by AWL and is hereby VOID.

3.    **SETTLEMENT AGREEMENT**

3.1.    Pursuant to the Federal Mortgage Relief Act and other applicable reliefs, Parties agree to enter loan modification covering the following real property with physical address of 12329 KOSICH PLACE, SARATOGA, CA 95070 with detail description as described in Exhibit 3.

3.2.    Parties agree to loan modification as follows:

3.2.1. AWL agrees to a pay-off in the amount of $315,000.00.

3.2.2. Plaintiff shall make such lump sum payment to AWL within 30 days from the date of entry of this stipulated judgment.

3.2.3. AWL shall prepare and record a full reconveyance of the Deed of Trusts recorded with the Santa Clara County Recorder as instrument number 17404380. Said Deed of Trust is attached herein as Exhibit 2.

3.3.    Parties agree to pay their own costs in this action.

Empire-Exh_00006

Case: 22-50645    Doc# 50    Filed: 08/23/22    Entered: 08/23/22 22:20:44    Page 55 of 199

3.4.     This settlement agreement is a compromise of this disputed claim and the loan modification agreements in 3.2 shall not be construed as an admission of liability by AWL.

3.5.     All parties shall cooperate in preparation and execution of all necessary documents and to take all action which may be necessary to give full force and effect to the term and intent of this agreement.

3.6.     AWL agrees to dismiss or not to file any related cross-complaint in this action.

3.7.     To the extent that any agent, employee or affiliate of AWL has violated California laws in connection with the loan that is the subject of this Complaint, these person and entity are not party to this agreement and is not released from civil or criminal liability.

**4.     ENFORCEMENT OF FINAL JUDGMENT AND PENALTIES.**

4.1.     In the event that any person or entity, whether purportedly acting on the behalf of AWL or another entity initiate foreclosure, collection, recordation of document claiming any right or interest in, and to, the subject Deed of Trust as identified in Exhibit 2, AWL shall cause such action to be terminated by enforcement of this agreement and/or recording appropriate document as required to negate such action or enforcement at its own expense.

4.2.     Except as provided in this agreement, nothing in this Final Judgment shall limit any rights of Plaintiff to seek any other relief or criminal or civil remedies provided by law against other parties related to the subject loan identified herein.

**5.     MATTERS COVERED BY THIS SETTLEMENT AGREEMENT, FINDING OF FACT AND JUDGMENT.**

5.1.     The Court finds that on stipulation between Parties, all matters are factually accurate as supported by evidence attached herein and conclusively determined that AMERICA'S WHOLESALE LENDER, INC., New York Corporation,

- 3 –

Empire-Exh_00007

is the Lender and beneficial owner of the subject loan and no other party holds any interest in the subject property as described herein.

5.2.    This settlement agreement and Final Judgment is a final and binding resolution and settlement of all "Covered Matters." As used in this Final Judgment, Cover Matters means all claims that have been alleged, or claims that could have been asserted within the scope of the allegations set forth, in the Complaint in this matter, stipulation and finding of facts as established by evidence attached herein.

5.3.    Any claims, violations or causes of action against AWL or its officers that are not alleged in the Complaint, including, but not limited to, any violations of laws are hereby forever waived.

**6.    NOTICE.**

All submissions and notices required by this agreement shall be sent to:

For Plaintiff:

> NGUYEN TERI HA
> 12329 KOSICH PLACE
> SARATOGA, CA 95070

For America's Wholesale Lender, Inc.:

> 875 Avenues of the Americas, Ste 501
> New York, NY 10001

Any Party may change its notice name and address by informing the other party in writing, but no change is effective until it is received. All notices and other communications required or permitted under this agreement that are properly addressed as provided in this paragraph are effective upon delivery if delivered personally or by overnight mail, or are effective five (5) days following deposit in the United States mail, postage prepaid, if delivered by mail.

/./. /

/./. /

/./. /

## 7. APPLICATION OF AGREEMENT AND FINAL JUDGMENT.

This agreement and Final Judgment shall apply to and be binding upon the Plaintiff and upon Americas' Wholesale Lender, Inc., a New York Corporation and its successors and assigns.

## 8. AUTHORITY TO ENTER AGREEMENT AND FINAL JUDGMENT.

Each signatory to this Agreement and Final Judgment certifies that he or she is fully authorized by the party he or she represents to enter into this Agreement and Final Judgment, to execute it on behalf of the party represented and legally to bind that party.

## 9. INTERPRETATION.

This Agreement and Final Judgment was drafted equally by all Parties. The Parties agree that the rule of construction holding that ambiguity is construed against the drafting party shall not apply to the interpretation of this Agreement and Final Judgment.

## 10. COUNTERPART SIGNATURES.

This Agreement and Final Judgment may be executed by the Parties in counterpart.

## 11. INTEGRATION.

This Agreement and Final Judgment constitutes the entire agreement between the Parties and may not be amended or supplemented except as provided for in this agreement. No oral representations have been made or relied upon other than as expressly set forth herein.

## 12. MOFIDICATION.

This Agreement and Final Judgment may be modified only on noticed motion by a Party with approval of the Court, or upon written consent of the Parties and the approval of the Court.

## 13. INCORPORATION OF EXHIBITS.

Each of the Exhibits is incorporated herein by reference.

Empire-Exh_00009

**IT IS SO STIPULATED.**

For the Plaintiff, NGUYEN TERI HA:

DATED: _6/22/2011_                 _____
                                           NGUYEN TERI HA

For the Defendant, AMERICA'S WHOLESALE LENDER, INC.:

DATED: _06/14/2011_               _____
                              By:   Dennis L. Bell
                              Title: President

*(seal: Corporate America's Wholesale Lender Inc. Seal)*

Empire-Exh_00010

Prepared by: FLORENCE AKERS

LOAN #: 041459405

# FIXED/ADJUSTABLE RATE NOTE
### (LIBOR Twelve Month Index – Rate Caps)

THIS NOTE PROVIDES FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

SEPTEMBER 30, 2003                   SARATOGA                   CALIFORNIA
[Date]                                     [City]                                     [State]

12329 KOSICH PLACE, SARATOGA, CA 95070
[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 835,000.00      (this amount is called "Principal"), plus interest, to the order of Lender. Lender is
AMERICA'S WHOLESALE LENDER
I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of      3.250   %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3. PAYMENTS**

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the   first        day of each month beginning on
NOVEMBER 01, 2003    . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on   OCTOBER 01, 2033    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
P.O. Box 10219, Van Nuys, CA 91410-0219
or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 3,633.97      . This amount may change.

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**

(A) Change Dates

The initial fixed interest rate I will pay will change to an adjustable interest rate on the   first        day of
OCTOBER, 2006   , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

CONV
● ARM Fixed Period LIBOR Note
2D661-XX (04/03)(d)

Page 1 of 4

Initials: [handwritten]

Empire-Exh_00011

EXHIBIT 1

(B) The Index

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for twelve month U.S. dollar-denominated deposits in the London market, as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new Index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO & ONE-QUARTER percentage points ( 2.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 5.250 % or less than 2.250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 9.250 %.

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

7. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of FIFTEEN calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

Empire-Exh_00012

EXHIBIT 1

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

(A) Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

Empire-Exh_00013

EXHIBIT 1

Case: 22-50645    Doc# 50    Filed: 08/23/22    Entered: 08/23/22 22:20:44    Page 62 of 199

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
TERI KA NGUYEN                              -Borrower

_____ (Seal)
                                            -Borrower

_____ (Seal)
                                            -Borrower

_____ (Seal)
                                            -Borrower

*[Sign Original Only]*

CONV
● ARM (Fixed Period LIBOR Note
1U656-XX (04/03)

Page 4 of 4

Empire-Exh_00014

EXHIBIT 1

DOCUMENT: 17404380          Pages: 22

Recording Requested By:
D. BRYSON

| | Fees . | 72 00 |
| | Taxes | |
| | Copies | |
| | AMT PAID | 72 00 |

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.

BRENDA DAVIS
SANTA CLARA COUNTY RECORDER
Recorded at the request of
Chicago Title

RDE #   005
10/08/2003
8 00 AM

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
Prepared By:
FLORENCE AKERS

―――――――――――――――― [Space Above This Line For Recording Data] ――――――――――――――――

989821                         00004145940509003
[Escrow/Closing #]                [Doc ID #]

# DEED OF TRUST

MIN 1000157-0003033745-1

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3,
11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in
Section 16.

(A) **"Security Instrument"** means this document, which is dated   SEPTEMBER 30, 2003 , together
with all Riders to this document.
(B) **"Borrower"** is
TERI HA NGUYEN, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT WITH MERS**

Page 1 of 16                                Initials: _____

-6A(CA) (0207)   CHL (09/02)(d)   VMP MORTGAGE FORMS - (800)521-7291        Form 3005 1/01
CONV/VA

*2 3 9 9 1 *

*0 4 1 4 5 9 4 0 5 0 0 0 0 0 1 0 0 6 A *

Borrower's address is
12329 KOSICH PLACE, SARATOGA, CA 95070
Borrower is the trustor under this Security Instrument.
(C) "Lender" is
AMERICA'S WHOLESALE LENDER
Lender is a CORPORATION
organized and existing under the laws of NEW YORK
Lender's address is
P.O. Box 10219, Van Nuys, CA 91410-0219
(D) "Trustee" is
CTC REAL ESTATE SERVICES
400 COUNTRYWIDE WAY, MSN SV-88, SIMI VALLEY, CA 93065 ,
(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated SEPTEMBER 30, 2003 . The Note states that Borrower owes Lender
EIGHT HUNDRED THIRTY FIVE THOUSAND and 00/100

Dollars (U.S. $ 835,000.00     ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than  OCTOBER 01, 2033     .
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii)

VMP -6A(CA) (0207)     CHL (09/02)     Page 2 of 16          Initials: [signature]          Form 3005 1/01

Empire-Exh_00016
EXHIBIT 2

conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

### TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY of SANTA CLARA :

[Type of Recording Jurisdiction]       [Name of Recording Jurisdiction]

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number: 38623072                    which currently has the address of

12329 KOSICH PLACE, SARATOGA ,

[Street/City]

California      95070      ("Property Address"):

[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including,

Initials: _7+1_

VMP®-6A(CA) (0207)      CHL (09/02)      Page 3 of 16      Form 3005 1/01

Empire-Exh_00017

EXHIBIT 2

Case: 22-50645    Doc# 50    Filed: 08/23/22    Entered: 08/23/22 22:20:44    Page 66 of
199

but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

-6A(CA) (0207)    CHL (09/02)    Page 4 of 16    Initials: _7HM_    Form 3005  1/01

Empire-Exh_00018
EXHIBIT 2
Case: 22-50645    Doc# 50    Filed: 08/23/22    Entered: 08/23/22 22:20:44    Page 67 of 199

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

Empire-Exh_00019
EXHIBIT 2
Case: 22-50645    Doc# 50    Filed: 08/23/22    Entered: 08/23/22 22:20:44    Page 68 of
199

DOC ID #: 0000414594050900

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of

Empire-Exh_00020
EXHIBIT 2
Case: 22-50645  Doc# 50  Filed: 08/23/22  Entered: 08/23/22 22:20:44  Page 69 of 199

paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Initials: _THN_

-6A(CA) (0207)    CHL (09/02)    Page 7 of 16    Form 3005 1/01

Empire-Exh_00021

EXHIBIT 2

Case: 22-50645    Doc# 50    Filed: 08/23/22    Entered: 08/23/22 22:20:44    Page 70 of 199

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower

Empire-Exh_00022
EXHIBIT 2

Case: 22-50645    Doc# 50    Filed: 08/23/22    Entered: 08/23/22 22:20:44    Page 71 of
199

shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security

Empire-Exh_00023

EXHIBIT 2

Case: 22-50645    Doc# 50    Filed: 08/23/22    Entered: 08/23/22 22:20:44    Page 72 of 199

Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Empire-Exh_00024

EXHIBIT 2

Case: 22-50645   Doc# 50   Filed: 08/23/22   Entered: 08/23/22 22:20:44   Page 73 of 199

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

Initials: _7HN_

-6A(CA) (0207)    CHL (09/02)    Page 11 of 16    Form 3005 1/01

Empire-Exh_00025

EXHIBIT 2

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in

Empire-Exh_00026

EXHIBIT 2

Case: 22-50645    Doc# 50    Filed: 08/23/22    Entered: 08/23/22 22:20:44    Page 75 of 199

compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

Empire-Exh_00027

EXHIBIT 2

Case: 22-50645   Doc# 50   Filed: 08/23/22   Entered: 08/23/22 22:20:44   Page 76 of 199

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

Empire-Exh_00028
EXHIBIT 2
Case: 22-50645    Doc# 50    Filed: 08/23/22    Entered: 08/23/22 22:20:44    Page 77 of 199

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                          TERI HA NGUYEN                    -Borrower

_____          _____ (Seal)
                                                                           -Borrower

                                          _____ (Seal)
                                                                           -Borrower

                                          _____ (Seal)
                                                                           -Borrower

Empire-Exh_00029
EXHIBIT 2
Case: 22-50645    Doc# 50    Filed: 08/23/22    Entered: 08/23/22 22:20:44    Page 78 of 199

DOC ID #: 00004145940509003

State of California
County of SANTA CLARA  } ss.

On SEPTEMBER 30, 2003 before me, TRISHA HO

TERI HA NGUYEN

personally appeared

, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)

TRISHA HO
Commission # 1281504
Notary Public - California
Santa Clara County
My Comm. Expires Oct 21, 2004

VMP -6A(CA) (0207)      CHL (09/02)      Page 16 of 16      Initials: THN

Form 3005 1/01

Empire-Exh_00030
EXHIBIT 2

Prepared by: FLORENCE AKERS

**AMERICA'S WHOLESALE LENDER**

Branch #: 0000937
2440 W. SHAW AVENUE SUITE #209
FRESNO, CA 93711-3300
Phone: (559)448-1720
Br Fax No.: (559)353-3222

DATE:        09/30/2003
CASE #:
DOC ID #:    00004145940509003
BORROWER: TERI HA NGUYEN
PROPERTY ADDRESS: 12329 KOSICH PLACE
                 SARATOGA, CA 95070

## LEGAL DESCRIPTION EXHIBIT A

FHA/VA/CONV
• Legal Description Exhibit A
1C404-XX (04/03)(d)



* 2 3 9 9 1 *

* 0 4 1 4 5 9 4 0 5 0 0 0 0 0 1 0 0 6 A *

Empire-Exh_00031

EXHIBIT 2

989821

**EXHIBIT "A"**

All that certain Real Property in the City of Saratoga, County of Santa Clara, State of California, described as follows:

All of Lot 10, a shown on that certain Map of Tract No. 8917, which Map was filed for record in the Office of the Recorder of the County of Santa Clara, State of California on June 10, 1997, in Book 688 of Maps, Page(s) 31, 32 and 33.

Excepting therefrom the underground water rights, without the right of surface entry as granted to San Jose Water Company by Quitclaim Deed recorded August 25, 1999 as Instrument No. 14955253 Official Records of Santa Clara County.

Empire-Exh_00032

EXHIBIT 2

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING

P.O.Box 10423
Van Nuys, CA 91410-0423

———————————— [Space Above This Line For Recording Data] ————————————

# FIXED/ADJUSTABLE RATE RIDER
### (LIBOR Twelve Month Index - Rate Caps)

Prepared By:
FLORENCE AKERS

989821
{Escrow/Closing #}

00004145940509003
{Doc ID #}

CONV
● ARM Fixed Period LIBOR Rider
1U652-XX (04/01)(d)

Page 1 of 4

Initials: _THW_





Empire-Exh_00033
EXHIBIT 2

THIS FIXED/ADJUSTABLE RATE RIDER is made this THIRTIETH day of SEPTEMBER, 2003 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Fixed/Adjustable Rate Note (the "Note") to AMERICA'S WHOLESALE LENDER

("Lender") of the same date and covering the property described in the Security Instrument and located at:
12329 KOSICH PLACE, SARATOGA, CA 95070

[Property Address]

**THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial fixed interest rate of 3.250 %. The Note also provides for a change in the initial fixed rate to an adjustable interest rate, as follows:

**4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of OCTOBER, 2006 , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for twelve month U.S. dollar-denominated deposits in the London market, as published in *The Wall Street Journal.* The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO & ONE-QUARTER percentage points ( 2.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

CONV
● ARM Fixed Period LIBOR Rider
1U652-XX (04/01)                    Page 2 of 4                    Initials: J+Iv

Empire-Exh_00034

EXHIBIT 2

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 5.250 % or less than 2.250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 9.250 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

1. Until Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2. When Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument described in Section B1 above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall be amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

Empire-Exh_00035
EXHIBIT 2
Case: 22-50645    Doc# 50    Filed: 08/23/22    Entered: 08/23/22 22:20:44    Page 84 of 199

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

_____ (Seal)
TERI HA NGUYEN                    -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

CONV
● ARM Fixed Period LIBOR Rider
1U652-XX (04/01)                    Page 4 of 4

Empire-Exh_00036
EXHIBIT 2

989821

## EXHIBIT "A"

All that certain Real Property in the City of Saratoga, County of Santa Clara, State of California, described as follows:

All of Lot 10, a shown on that certain Map of Tract No. 8917, which Map was filed for record in the Office of the Recorder of the County of Santa Clara, State of California on June 10, 1997, in Book 688 of Maps, Page(s) 31, 32 and 33.

Excepting therefrom the underground water rights, without the right of surface entry as granted to San Jose Water Company by Quitclaim Deed recorded August 25, 1999 as Instrument No. 14955253 Official Records of Santa Clara County.

Empire-Exh_00037

EXHIBIT 3

# EXHIBIT 6

EXHIBIT 6

DOCUMENT: 21260514

Pages: 1

Fees.... 41.00
Taxes...
Copies
AMT PAID 41.00

REGINA ALCOMENDRAS
SANTA CLARA COUNTY RECORDER
Recorded at the request of
Trustee

RDE # 005
7/28/2011
3:46 PM

Recording Requested By:

When recorded mail document to:

NAME Teri Ha Nguyen

ADDRESS 12329 KOSICH PLACE

CITY SARATOGA, CA 95070
STATE & ZIP

APN NO. 38623072

Above Space for Recorder's Use Only

# SUBSTITUTION OF TRUSTEE AND FULL RECONVEYANCE

Whereas, TERI HA NGUYEN, a married woman as her sole and separate property was the Original

Trustor, CTC Real Estate Services , the original

Trustee, and America's Wholesale Lender, Inc. a New York Corporation ,

Original beneficiary, under that certain Deed of Trust dated 09/30/2003

and recorded 10/8/2003 as Instrument No. 17404380

Book 688 Page 31, 32 and 33 , Official Records of the County of Santa Clara

State of California and

WHEREAS, the undersigned present beneficiary desires to substitute a new Trustee under said Deed of Trust in place and instead of
CTC Real Estate Services .

Now therefore, the undersigned hereby substitutes himself/herself/themselves as Trustee under said Deed of Trust and does hereby reconvey, without warranty, to the person or persons entitled hereto, the Estate now held by him thereunder.
Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular numbers includes the plural.

The undersigned hereby accepts said appointment as trustee under the above deed of trust, and as successor trustee, and pursuant to the request of said owner and holder and in accordance with the provisions of said deed of trust, does hereby RECONVEY WITHOUT WARRANTY, TO THE PERSONS LEGALLY ENTITLED THERETO, all the estate now held by it under said deed of trust.

AMERICAS WHOLESALE LENDER, INC.
_Penn. Gen Presidont_
BENEFICIARY / NEW TRUSTEE
America's Wholesale Lender, Inc.
By: DENNIS BEAL, PRESIDENT

Dated: 6-8-11

STATE OF Kentucky
COUNTY OF McCracken } SS.

ON 6-8-11 before me, STAN WATTS a Notary Public,
personally appeared Dennis Beal who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Kentucky that the foregoing paragraph is true and correct.

**WITNESS my hand and official seal.**

OFFICIAL SEAL
RONALD STANLEY WATTS
NOTARY PUBLIC – KENTUCKY
McCRACKEN COUNTY
My Comm. Expires 07-23-2011

Signature (seal)

# EXHIBIT 7

# EXHIBIT 7

CONFORMED COPY: This document has
not been compared with the original.
SANTA CLARA COUNTY CLERK-RECORDER

**RECORDING REQUESTED BY**

WHEN RECORDED MAIL TO
AND MAIL TAX STATEMENTS TO

Name: Empire Investments, LLC
Adddress: 1231 S. Winchester Bl
#245
San Jose, CA 95128

Doc#: 21313415
9/13/2011      4:22 PM

# GRANT DEED

TITLE ORDER NO.               ESCROW NO.                          APN NO. 386-23-072

THE UNDERSIGNED GRANTOR(s) DECLARE(s)
DOCUMENTARY TRANSFER TAX is $ _____ CITY TAX $ _____

☐ computed on full value of property conveyed, or computed on full value less value of liens or encumbrances remaining at time of sale,
☐ Unincorporated area: ☑ City of Saratoga _____ ,and

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

VINH D. NGUYEN and TERI H. NGUYEN, as Trustees of Nguyen-Ha Living Trust Dated December 10, 2004

hereby GRANT(s) to  EMPIRE INVESTMENTS, LLC, a Wyoming Limited Liability Company

the following described real property in the County of  Santa Clara,          State of California

SEE LEGAL DESCRIPTION ATTACHED HERETO AS EXHIBIT "A"

Dated       August 26, 2011

_____
VINH D. NGUYEN, Trustee

_____
TERI H. NGUYEN, Trustee

STATE OF CALIFORNIA                    }
COUNTY OF Santa Clara                  }

ON August 26, 2011 _____ before me, Gardenia Gunzalez _____
Notary Public, personally appeared Vinh D Nguyen and Teri H Nguyen —

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s)
on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoring paragraph is true and correct.**

Witness my hand and official seal.

Signature _____          (Seal)

GARDENIA GONZALEZ
COMM. #1849161
NOTARY PUBLIC - CALIFORNIA
SANTA CLARA COUNTY
My Comm. Expires May 14, 2013

# EXHIBIT "A- KOSICH PLACE"

## LEGAL DESCRIPTION

All that certain Real Property in the City of Saratoga, County of Santa Clara, State of California, described as follows:

All of Lot 10, a shown on that certain Map of Tract No. 8917, which Map was filed for record in the Office of the Recorder of the County of Santa Clara, State of California on June 10, 1997, in Book 688 of Maps, Page(s) 31, 32 and 33.

Excepting therefrom the underground water rights, without the right of surface entry as granted to San Jose Water Company by Quitclaim Deed recorded August 25, 1999 as Instrument No. 14955253 Official Records of Santa Clara County.

# PRELIMINARY CHANGE OF OWNERSHIP REPORT

| | FOR RECORDER'S USE ONLY |
|---|---|

[To be completed by transferee (buyer) prior to transfer of subject property in accordance with section 480.3 of the Revenue and Taxation Code.] A Preliminary Change of Ownership Report must be filed with each conveyance in the County Recorder's office for the county where the property is located; this particular form may be used in all 58 counties of California.

**THIS REPORT IS NOT A PUBLIC DOCUMENT**

SELLER/TRANSFEROR: *Nguyen-Ha Living Trust dated 12/10/04*
BUYER/TRANSFEREE: *Empire Investments, LLC*
ASSESSOR'S PARCEL NUMBER(S) *386-23-072*
PROPERTY ADDRESS OR LOCATION: *12329 Kosich Pl. Saratoga CA 95070*
MAIL TAX INFORMATION TO: Name *Empire Investments, LLC*
Address *1231 S Winchester Bl. #245 San Jose 95128*

NOTICE: A lien for property taxes applies to your property on January 1 of each year for the taxes owing in the following fiscal year, July 1 through June 30. One-half of these taxes is due November 1, and one-half is due February 1. The first installment becomes delinquent on December 10, and the second installment becomes delinquent on April 10. One tax bill is mailed before November 1 to the owner of record. **If this transfer occurs after January 1 and on or before December 31, you may be responsible for the second installment of taxes due February 1.**

The property which you acquired may be subject to a supplemental assessment in an amount to be determined by the _____ Assessor. For further information on your supplemental roll obligation, please call the _____ Assessor at _____.

## PART I: TRANSFER INFORMATION *(please answer all questions)*

| YES | NO | |
|---|---|---|
| ☐ | ☑ | A. Is this transfer solely between husband and wife (addition of a spouse, death of a spouse, divorce settlement, etc.)? |
| ☐ | ☑ | B. Is this transaction only a correction of the name(s) of the person(s) holding title to the property (for example, a name change upon marriage)? |
| ☐ | ☑ | C. Is this document recorded to create, terminate, or reconvey a lender's interest in the property? |
| ☐ | ☑ | D. Is this transaction recorded only as a requirement for financing purposes or to create, terminate, or reconvey a security interest (e.g., cosigner)? |
| ☐ | ☑ | E. Is this document recorded to substitute a trustee under a deed of trust, mortgage, or other similar document? |
| ☐ | ☑ | F. Did this transfer result in the creation of a joint tenancy in which the seller (transferor) remains as one of the joint tenants? |
| ☐ | ☑ | G. Does this transfer return property to the person who created the joint tenancy (original transferor)? |
| | | H. Is this transfer of property: |
| ☐ | ☑ | 1. to a trust for the benefit of the grantor, or grantor's spouse? |
| ☐ | ☑ | 2. to a trust revocable by the transferor? |
| ☐ | ☑ | 3. to a trust from which the property reverts to the grantor within 12 years? |
| ☐ | ☑ | I. If this property is subject to a lease, is the remaining lease term 35 years or more including written options? |
| ☑ | | *J. Is this a transfer between ___, parent(s) and child(ren)? ☐ or from grandparent(s) to grandchild(ren)? |
| ☐ | ☑ | *K. Is this transaction to replace a principal residence by a person 55 years of age or older? Within the same county? ☐ Yes ☐ No |
| ☐ | ☑ | *L. Is this transaction to replace a principal residence by a person who is severely disabled as defined by Revenue and Taxation Code section 69.5? Within the same county? ☐ Yes ☐ No |

*If you checked yes to J, K or L, you may qualify for a property tax reassessment exclusion, which may result in lower taxes on your property. **If you do not file a claim, your property will be reassessed.**

Please provide any other information that will help the Assessor to understand the nature of the transfer.

*If you have answered "yes" to any of the above questions except J, K or L, please sign and date; otherwise, complete balance of the form.*

## PART II: OTHER TRANSFER INFORMATION

A. Date of transfer if other than recording date *Aug 26, 2011*
B. Type of transfer *(please check appropriate box)*:
☐ Purchase    ☐ Foreclosure    ☐ Gift    ☐ Trade or Exchange    ☐ Merger, Stock, or Partnership Acquisition
☑ Contract of Sale – Date of Contract *Aug 26, 2011*
☐ Inheritance – Date of Death _____    ☐ Other *(please explain)*: _____
☐ Creation of Lease    ☐ Assignment of a Lease    ☐ Termination of a Lease    ☐ Sale/Leaseback
☐ Date lease began _____
☐ Original term in years (including written options) _____
☐ Remaining term in years (including written options) _____
C. Was only a partial interest in the property transferred? ☐ Yes ☑ No
If yes, indicate the percentage transferred _____ %.

*Please answer, to the best of your knowledge, all applicable questions, then sign and date. If a question does not apply, indicate with "N/A."*

## PART III: PURCHASE PRICE AND TERMS OF SALE

A. CASH DOWN PAYMENT OR value of trade or exchange (excluding closing costs)  Amount $ 100,000

B. FIRST DEED OF TRUST @ _____ % Interest for _____ years. Pymts./Mo. = $ _____ (Prin. & Int. only)  Amount $ 509,000
- ☐ FHA( _____ Discount Points)  ☐ Fixed rate  ☐ New loan
- ☐ Conventional  ☐ Variable rate  ☐ Assumed existing loan balance
- ☐ VA ( _____ Discount Points)  ☐ All inclusive D.T. ($ _____ Wrapped)  ☐ Bank or savings & loan
- ☐ Cal-Vet  ☐ Loan carried by seller  ☐ Finance company
- Balloon payment  ☐ Yes  ☐ No  Due Date _____  Amount $ _____

C. SECOND DEED OF TRUST @ _____ % Interest for _____ years. Pymts./Mo. = $ _____ (Prin. & Int. only)  Amount $ 75,000
- ☐ Bank or savings & loan  ☐ Fixed rate  ☐ New loan
- ☐ Loan carried by seller  ☐ Variable rate  ☐ Assumed existing loan balance
- Balloon payment  ☐ Yes  ☐ No  Due Date _____  Amount $ _____

D. OTHER FINANCING: Is other financing involved not covered in (b) or (c) above?  ☐ Yes  ☐ No  Amount $ 215,000
- Type _____  _____ % Interest for _____ years. Pymts./Mo. = $ _____ (Prin. & Int. only)
- ☐ Bank or savings & loan  ☐ Fixed rate  ☐ New loan
- ☐ Loan carried by seller  ☐ Variable rate  ☐ Assumed existing loan balance
- Balloon payment  ☐ Yes  ☐ No  Due Date _____  Amount $ _____

E. WAS AN IMPROVEMENT BOND ASSUMED BY THE BUYER?  ☐ Yes  ☑ No  Outstanding Balance: Amount $ _____

F. TOTAL PURCHASE PRICE (or acquisition price, if traded or exchanged, include real estate commission if paid)
**TOTAL ITEMS A THROUGH E**  | $

G. PROPERTY PURCHASED  ☐ Through a broker  ☑ Direct from seller  ☐ From a family member  ☐ Other (please explain): _____

If purchased through a broker, provide broker's name and phone number: _____

Please explain any special terms, seller concessions, or financing and any other information that would help the Assessor understand the purchase price and terms of sale: _____
_____
_____

## PART IV: PROPERTY INFORMATION

A. TYPE OF PROPERTY TRANSFERRED:
- ☑ Single-family residence  ☐ Agricultural  ☐ Timeshare
- ☐ Multiple-family residence (no. of units: _____ )  ☐ Co-op/Own-your-own  ☐ Manufactured home
- ☐ Commercial/Industrial  ☐ Condominium  ☐ Unimproved lot
- ☐ Other (Description: _____ )

B. IS THIS PROPERTY INTENDED AS YOUR PRINCIPAL RESIDENCE?  ☐ Yes  ☑ No
If yes, enter date of occupancy _____ / _____ , 20 _____ or intended occupancy _____ / _____ , 20 _____
(month) (day) (year) (month) (day) (year)

C. IS PERSONAL PROPERTY INCLUDED IN PURCHASE PRICE (i.e., furniture, farm equipment, machinery, etc.)
(other than a manufactured home subject to local property tax)?  ☐ Yes  ☑ No
If yes, enter the value of the personal property included in the purchase price $ _____ (Attach itemized list of personal property.)

D. IS A MANUFACTURED HOME INCLUDED IN PURCHASE PRICE?  ☐ Yes  ☑ No
If yes, how much of the purchase price is allocated to the manufactured home? $ _____
Is the manufactured home subject to local property tax?  ☐ Yes  ☐ No  What is the decal number? _____

E. DOES THE PROPERTY PRODUCE INCOME?  ☑ Yes  ☐ No  If yes, is the income from:
- ☑ Lease/Rent  ☐ Contract  ☐ Mineral rights  ☐ Other (please explain): _____

F. WHAT WAS THE CONDITION OF THE PROPERTY AT THE TIME OF SALE?
- ☐ Good  ☐ Average  ☐ Fair  ☑ Poor
Please explain the physical condition of the property and provide any other information (such as restrictions, etc.) that would assist the Assessor in determining the value of the property: _____
_____
_____

## CERTIFICATION

*I certify that the foregoing is true, correct and complete to the best of my knowledge and belief.*

SIGNATURE OF NEW OWNER/CORPORATE OFFICER  *Tnguyen*  DATE  09/09/11

PRINTED NAME OF NEW OWNER/CORPORATE OFFICER  DAYTIME PHONE NUMBER  (408) 828-8078

(NOTE: The Assessor may contact you for additional information.)

If a document evidencing a change of ownership is presented to the recorder for recordation without the concurrent filing of a preliminary change of ownership report, the recorder may charge an additional recording fee of twenty dollars ($20).

```
                    Transaction Receipt
FA Financial Center             Card Number    Sep 15,11
010 (00366)Westgate West        ends in 900   10:20AM
Transaction        Amount     Description
Chk. Purchase    $160,000.00     CHK#        7533
                                     ref 012-03 PIC
Please consult a Citibank Associate or your Client Manual
for a description of the Bank's policy concerning placing
a stop payment request on this instrument and the fee
associated with that request.




THUY A STOVALL
               Thank you for banking with Citibank.   citibank®
```



**citibank**®

**OFFICIAL CHECK**

HOLD DOCUMENT UP TO THE LIGHT TO VIEW TRUE WATERMARK   HOLD DOCUMENT UP TO THE LIGHT TO VIEW TRUE WATERMARK

312137533

62-20
311

Citibank, N.A.

FC# 00366 FA# 010          $0.00 ONL PIC          DATE 0 9 / 1 5 / 1 1
012-03 Ck. Ser.#   312137533   * * * * 1 6 0 , 0 0 0 . 0 0 * * * *

PAY   ****ONE HUNDRED SIXTY THOUSAND DOLLARS****

TO
THE   ****TERI HA NGUYEN****
ORDER
OF

NAME OF REMITTER   THUY A STOVALL
ADDRESS

Citibank, N.A. One Penn's Way
New Castle, DE 19720

Drawer: Citibank, N.A.

BY   _Carol Myint_          NP
AUTHORIZED SIGNATURE

⑆312137533⑈ ⑆031100209⑆ 38762924⑈

OFFICIAL CHECK

202333401 NEW 10/07 8710061027

# EXHIBIT 8

# EXHIBIT 8

Recording Requested By:
**Bank of America**
Prepared By: **Diana DeAvila**
**450 E. Boundary St.**
**Chapin, SC 29036**
**888-603-9011**
When recorded mail to:
**CoreLogic**
**450 E. Boundary St.**
**Attn: Release Dept.**
**Chapin, SC 29036**

DocID#  **1404145940510655**
Property Address:
**12329 Kosich Pl**
**Saratoga, CA 95070-3575**
CA0-ADT  15740081          12/12/2011

REGINA ALCOMENDRAS
SANTA CLARA COUNTY RECORDER
Recorded at the request of
Accounting Customer

RDE # 009
12/14/2011
10:22 AM

This space for Recorder's use

MIN #: 1000157-0003033745-1          MERS Phone #:  888-679-6377

# ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is **3300 S.W. 34th Avenue, Suite 101 Ocala, FL 34474** does hereby grant, sell, assign, transfer and convey unto **THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWMBS, INC., CHL MORTGAGE PASS-THROUGH TRUST 2003-56, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2003-56** whose address is **101 BARCLAY ST - 4W, NEW YORK, NY 10286** all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

| | |
|---|---|
| Original Lender: | **AMERICA'S WHOLESALE LENDER** |
| Original Borrower(s): | **TERI HA NGUYEN, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY** |
| Original Trustee: | **CTC REAL ESTATE SERVICES** |
| Date of Deed of Trust: | **9/30/2003** |
| Original Loan Amount: | **$835,000.00** |

Recorded in **Santa Clara County, CA** on: **10/8/2003**, book **N/A**, page **N/A** and instrument number **17404380**

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on
**DEC 12 2011**

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

By: _____

~~Tina LeRaybaud, Assistant Secretary~~

State of **California**
County of **Ventura**

On ___ DEC 12 2011 ___ before me, ___ *Becki E. Cameron, Notary Public* ___ , Notary Public, personally appeared
___ *Tina LeRaybaud* ___
, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity
(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.**

WITNESS my hand and official seal.

BECKI E. CAMERON
COMM. # 1891243
NOTARY PUBLIC-CALIFORNIA
VENTURA COUNTY
My Commission Expires
MAY 28, 2014

Notary Public: ___ *Becki E. Cameron* ___ **(Seal)**
My Commission Expires: ___ *May 28, 2014* ___

# EXHIBIT 9

# EXHIBIT 9

Fill in this information to identify your case and this filing:

| | | | |
|---|---|---|---|
| Debtor 1 | Paul | K | Nguyen |
| | First Name | Middle Name | Last Name |
| Debtor 2 | Kim | T | Nguyen |
| (Spouse, if filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the: Central District of California

Case number  8:17-bk-10520

☐ Check if this is an
amended filing

Official Form 106A/B

# Schedule A/B: Property

12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:    Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In**

1  Do you own or have any legal or equitable interest in any residence, building, land, or similar property?

☑ No. Go to Part 2.

☐ Yes. Where is the property?

**1.1** _____
Street address, if available, or other description

_____

_____

City          State    ZIP Code

_____
County

**What is the property?** Check all that apply.
☐ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other _____

**Who has an interest in the property?** Check one
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number: _____

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| $ | $ |

**Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.**

_____

☐ Check if this is community property
(see instructions)

If you own or have more than one, list here:

**1.2** _____
Street address, if available, or other description

_____

_____

City          State    ZIP Code

_____
County

**What is the property?** Check all that apply.
☐ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other _____

**Who has an interest in the property?** Check one
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number: _____

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| $ | $ |

**Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.**

_____

☐ Check if this is community property
(see instructions)

Debtor 1   Paul          K          Nguyen          Case number *(if known)* 8:17-bk-10520
           First Name   Middle Name   Last Name

---

13.

**What is the property?** Check all that apply.

☐ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other _____

Street address, if available, or other description

_____

City          State    ZIP Code

County

**Who has an interest in the property?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number: _____

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| $_____ | $_____ |

**Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.**

_____

☐ Check if this is community property (see instructions)

2. **Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here.** ..............................................→  $_____

---

## Part 2:  Describe Your Vehicles

Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not? Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

3  **Cars, vans, trucks, tractors, sport utility vehicles, motorcycles**

☐ No
☑ Yes

3.1  Make:  Land Rover
     Model:  Range Rove
     Year:  2007
     Approximate mileage:  145000
     Other information:

**Who has an interest in the property?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☑ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this is community property (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| $ 4,500.00 | $ 4,500.00 |

If you own or have more than one, describe here:

3.2  Make:  BMW
     Model:  535D
     Year:  2014
     Approximate mileage:  50000
     Other information:

**Who has an interest in the property?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☑ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this is community property (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| $ 32,000.00 | $ 32,000.00 |

---

Official Form 106A/B               Schedule A/B: Property               page 2

Debtor 1  __Paul_____ __K_____ __Nguyen_____    Case number (if known) 8:17-bk-10520
          First Name    Middle Name    Last Name

**3.3** Make: _____

Model: _____

Year: _____

Approximate mileage: _____

Other information:

_____

**Who has an interest in the property?** Check one.

☐ Debtor 1 only

☐ Debtor 2 only

☐ Debtor 1 and Debtor 2 only

☐ At least one of the debtors and another

☐ Check if this is community property (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| $_____ | $_____ |

**3.4** Make: _____

Model: _____

Year: _____

Approximate mileage: _____

Other information:

_____

**Who has an interest in the property?** Check one.

☐ Debtor 1 only

☐ Debtor 2 only

☐ Debtor 1 and Debtor 2 only

☐ At least one of the debtors and another

☐ Check if this is community property (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| $_____ | $_____ |

**4** **Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**

*Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

☑ No

☐ Yes

**4.1** Make: _____

Model: _____

Year: _____

Other information:

_____

**Who has an interest in the property?** Check one.

☐ Debtor 1 only

☐ Debtor 2 only

☐ Debtor 1 and Debtor 2 only

☐ At least one of the debtors and another

☐ Check if this is community property (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| $_____ | $_____ |

If you own or have more than one, list here:

**4.2** Make: _____

Model: _____

Year: _____

Other information:

_____

**Who has an interest in the property?** Check one.

☐ Debtor 1 only

☐ Debtor 2 only

☐ Debtor 1 and Debtor 2 only

☐ At least one of the debtors and another

☐ Check if this is community property (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| $_____ | $_____ |

**5** **Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages you have attached for Part 2. Write that number here** ..................................................... ➔

| |
|---|
| $      36,500.00 |

Case: 22-50645   Doc# 50   Filed: 08/23/22   Entered: 08/23/22 22:20:44   Page 102 of 199

Debtor 1    Paul    K    Nguyen    Case number *(if known)* 8:17-bk-10520
First Name    Middle Name    Last Name

## Part 3:    Describe Your Personal and Household Items

Do you own or have any legal or equitable interest in any of the following items?

**Current value of the portion you own?**
Do not deduct secured claims or exemptions

**6    Household goods and furnishings**

*Examples:* Major appliances, furniture, linens, china, kitchenware

☐ No
☑ Yes. Describe......... sofas, beds, kitchenware

$    2,000.00

**7    Electronics**

*Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices including cell phones, cameras, media players, games

☐ No
☑ Yes. Describe......... TV, printer, laptop computer

$    1,000.00

**8    Collectibles of value**

*Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections; other collections, memorabilia, collectibles

☑ No
☐ Yes. Describe.........

$

**9    Equipment for sports and hobbies**

*Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools; musical instruments

☑ No
☐ Yes. Describe.........

$

**10. Firearms**

*Examples:* Pistols, rifles, shotguns, ammunition, and related equipment

☑ No
☐ Yes. Describe.........

$

**11. Clothes**

*Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories

☐ No
☑ Yes. Describe......... everyday clothes and shoes

$    500.00

**12. Jewelry**

*Examples:* Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver

☐ No
☑ Yes. Describe........... wedding rings

$    3,000.00

**13. Non-farm animals**

*Examples:* Dogs, cats, birds, horses

☑ No
☐ Yes. Describe.........

$

**14. Any other personal and household items you did not already list, including any health aids you did not list**

☑ No
☐ Yes. Give specific information. .............

$

**15. Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached for Part 3. Write that number here** ...........  ➔

$    6,500.00

Official Form 106A/B    Schedule A/B: Property    page 4

| Debtor 1 | Paul | K | Nguyen | Case number (if known) 8:17-bk-10520 |
|---|---|---|---|---|
| | First Name | Middle Name | Last Name | |

## Part 4:    Describe Your Financial Assets

**Do you own or have any legal or equitable interest in any of the following?**

**Current value of the portion you own?**
Do not deduct secured claims or exemptions.

### 16 Cash

*Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition

☐ No

☑ Yes .......................................................................................................................................................    Cash: .................    $            200.00

### 17 Deposits of money

*Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar institutions. If you have multiple accounts with the same institution, list each.

☐ No

☑ Yes ....................    Institution name:

| | | | | |
|---|---|---|---|---|
| 17.1 Checking account: | JP Morgan Chase | | $ | 200.00 |
| 17.2 Checking account: | JP Morgan Chase | | $ | 1,500.00 |
| 17.3 Savings account: | JP Morgan Chase | | $ | 65.00 |
| 17.4 Savings account: | | | $ | |
| 17.5 Certificates of deposit: | | | $ | |
| 17.6 Other financial account: | | | $ | |
| 17.7 Other financial account: | | | $ | |
| 17.8 Other financial account: | | | $ | |
| 17.9 Other financial account: | | | $ | |

### 18 Bonds, mutual funds, or publicly traded stocks

*Examples:* Bond funds, investment accounts with brokerage firms, money market accounts

☑ No

☐ Yes ................    Institution or issuer name:

$
$
$

### 19 Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture

☑ No

☐ Yes. Give specific information about them ............ ............    Name of entity:    % of ownership:

_____ _____ % $ _____
_____ _____ % $ _____
_____ _____ % $ _____

Official Form 106A/B    Schedule A/B: Property    page 5

| Debtor 1 | Paul | K | Nguyen | Case number *(if known)* 8:17-bk-10520 |
|---|---|---|---|---|
| | First Name | Middle Name | Last Name | |

**20. Government and corporate bonds and other negotiable and non-negotiable instruments**

*Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
*Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.

☑ No

☐ Yes. Give specific information about them. ........ Issuer name:

_____  $_____

_____  $_____

_____  $_____

**21. Retirement or pension accounts**

*Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans

☑ No

☐ Yes. List each account separately.

| Type of account: | Institution name: | |
|---|---|---|
| 401(k) or similar plan: | _____ | $_____ |
| Pension plan: | _____ | $_____ |
| IRA: | _____ | $_____ |
| Retirement account: | _____ | $_____ |
| Keogh: | _____ | $_____ |
| Additional account: | _____ | $_____ |
| Additional account: | _____ | $_____ |

**22. Security deposits and prepayments**

Your share of all unused deposits you have made so that you may continue service or use from a company

*Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others

☑ No

☐ Yes ..................

| Institution name or individual: | | |
|---|---|---|
| Electric: | _____ | $_____ |
| Gas: | _____ | $_____ |
| Heating oil: | _____ | $_____ |
| Security deposit on rental unit: | _____ | $_____ |
| Prepaid rent: | _____ | $_____ |
| Telephone: | _____ | $_____ |
| Water: | _____ | $_____ |
| Rented furniture: | _____ | $_____ |
| Other: | _____ | $_____ |

**23. Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)

☑ No

☐ Yes ....................... Issuer name and description:

_____  $_____

_____  $_____

_____  $_____

Debtor 1    Paul _____ K _____ Nguyen _____        Case number (if known) 8:17-bk-10520
              First Name    Middle Name    Last Name

24. **Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).

☑ No

☐ Yes ......................... Institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c):

_____    $_____
_____    $_____
_____    $_____

25. **Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**

☑ No

☐ Yes. Give specific
information about them...    [                    ]    $_____

26. **Patents, copyrights, trademarks, trade secrets, and other intellectual property**
*Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements

☑ No

☐ Yes. Give specific
information about them ...    [                    ]    $_____

27. **Licenses, franchises, and other general intangibles**
*Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses

☑ No

☐ Yes. Give specific
information about them.    [                    ]    $_____

**Money or property owed to you?**                    **Current value of the portion you own?**
Do not deduct secured claims or exemptions.

28. **Tax refunds owed to you**

☑ No

☐ Yes. Give specific information
about them, including whether
you already filed the returns            Federal:    $_____
and the tax years. ...................            State      $_____
                                          Local:    $_____

29. **Family support**
*Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement

☑ No

☐ Yes. Give specific information.. ..........
                                          Alimony:              $_____
                                          Maintenance:          $_____
                                          Support:              $_____
                                          Divorce settlement    $_____
                                          Property settlement   $_____

30. **Other amounts someone owes you**
*Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay, workers' compensation,
Social Security benefits; unpaid loans you made to someone else

☑ No

☐ Yes. Give specific information.........    [                    ]    $_____

Official Form 106A/B                  **Schedule A/B: Property**                          page 7

Debtor 1    Paul          K          Nguyen                          Case number (if known) 8:17-bk-10520
            First Name    Middle Name    Last Name

**31 Interests in insurance policies**

Examples: Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance

☑ No

☐ Yes. Name the insurance company
    of each policy and list its value    Company name:                Beneficiary:              Surrender or refund value

                                                                                                 $ _____
                                                                                                 $ _____
                                                                                                 $ _____

**32 Any interest in property that is due you from someone who has died**

If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because someone has died.

☑ No

☐ Yes. Give specific information
                                                                                                 $ _____

**33 Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**

Examples: Accidents, employment disputes, insurance claims, or rights to sue

☑ No

☐ Yes. Describe each claim.
                                                                                                 $ _____

**34 Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**

☑ No

☐ Yes. Describe each claim.
                                                                                                 $ _____

**35 Any financial assets you did not already list**

☐ No
☑ Yes. Give specific information    Escrow account held by Hawaii District Court
                                                                                                 $        525,000.00

**36 Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached for Part 4. Write that number here**    →    $        526,965.00

---

**Part 5:    Describe Any Business-Related Property You Own or Have an Interest In. List any real estate in Part 1.**

**37 Do you own or have any legal or equitable interest in any business-related property?**

☑ No. Go to Part 6.

☐ Yes. Go to line 38.

                                                                                                 **Current value of the portion you own?**
                                                                                                 Do not deduct secured claims or exemptions.

**38 Accounts receivable or commissions you already earned**

☑ No

☐ Yes. Describe
                                                                                                 $ _____

**39 Office equipment, furnishings, and supplies**

Examples: Business-related computers, software, modems, printers, copiers, fax machines, rugs, telephones, desks, chairs, electronic devices

☑ No

☐ Yes. Describe
                                                                                                 $ _____

---

Official Form 106A/B                    **Schedule A/B: Property**                                        page 8

Debtor 1    Paul _____ K _____ Nguyen _____    Case number (if known) 8:17-bk-10520
           First Name    Middle Name    Last Name

40. **Machinery, fixtures, equipment, supplies you use in business, and tools of your trade**

☑ No

☐ Yes. Describe....                                                                      $_____

41. **Inventory**

☑ No

☐ Yes. Describe.....                                                                     $_____

42. **Interests in partnerships or joint ventures**

☑ No

☐ Yes. Describe.....    Name of entity:                          % of ownership:

_____    ____%    $_____

_____    ____%    $_____

_____    ____%    $_____

43. **Customer lists, mailing lists, or other compilations**

☑ No

☐ Yes. Do your lists include personally identifiable information (as defined in 11 U.S.C. § 101(41A))?

☐ No

☐ Yes. Describe....                                                                     $_____

44. **Any business-related property you did not already list**

☑ No

☐ Yes. Give specific
information .........    _____    $_____

_____    $_____

_____    $_____

_____    $_____

_____    $_____

_____    $_____

45. **Add the dollar value of all of your entries from Part 5, including any entries for pages you have attached
for Part 5. Write that number here** ........................................................... ➜    $_____ 0.00

---

**Part 6:    Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In.**
If you own or have an interest in farmland, list it in Part 1.

46. **Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**

☑ No. Go to Part 7.

☐ Yes. Go to line 47.

**Current value of the
portion you own?**
Do not deduct secured claims
or exemptions.

47. **Farm animals**

Examples: Livestock, poultry, farm-raised fish

☐ No

☐ Yes.....                                                                              $_____

Official Form 106A/B                    **Schedule A/B: Property**                    page 9

Debtor 1    Paul     K      Nguyen      Case number *(if known)* 8:17-bk-10520
     First Name    Middle Name    Last Name

**48. Crops—either growing or harvested**

☐ No
☐ Yes. Give specific information. ............

$ _____

**49. Farm and fishing equipment, implements, machinery, fixtures, and tools of trade**

☐ No
☐ Yes ................

$ _____

**50. Farm and fishing supplies, chemicals, and feed**

☐ No
☐ Yes............

$ _____

**51. Any farm- and commercial fishing-related property you did not already list**

☐ No
☐ Yes. Give specific information. ............

$ _____

**52. Add the dollar value of all of your entries from Part 6, including any entries for pages you have attached for Part 6. Write that number here** ..................................................................................... → $ _____

---

**Part 7:**    **Describe All Property You Own or Have an Interest in That You Did Not List Above**

**53. Do you have other property of any kind you did not already list?**
*Examples: Season tickets, country club membership*

☑ No
☐ Yes. Give specific information. ............

$ _____
$ _____
$ _____

**54. Add the dollar value of all of your entries from Part 7. Write that number here** ........................... → $ _____0.00_____

---

**Part 8:**    **List the Totals of Each Part of this Form**

**55. Part 1: Total real estate, line 2** ................................................................................. → $ _____0.00_____

**56. Part 2: Total vehicles, line 5**     $ _____36,500.00_____

**57. Part 3: Total personal and household items, line 15**     $ _____6,500.00_____

**58. Part 4: Total financial assets, line 36**     $ _____526,965.00_____

**59. Part 5: Total business-related property, line 45**     $ _____0.00_____

**60. Part 6: Total farm- and fishing-related property, line 52**     $ _____0.00_____

**61. Part 7: Total other property not listed, line 54**     + $ _____0.00_____

**62. Total personal property. Add lines 56 through 61.** .................... $ _____569,965.00_____ Copy personal property total → + $ _____569,965.00_____

**63. Total of all property on Schedule A/B. Add line 55 + line 62.** .................................................................. $ _____569,965.00_____

Official Form 106A/B          **Schedule A/B: Property**          page **10**

# EXHIBIT 10

# EXHIBIT 10

PETITION NO:

In The

**COURT OF APPEAL
STATE OF CALIFORNIA
SIXTH APPELLATE DISTRICT**
_____

Empire Investments, LLC, et. al,
*Plaintiff and Petitioner,*

v.

Superior Court of Santa Clara County,
*Respondent*

Paul Kim Phong Nguyen,
*Defendant and Real Party in Interest.*
_____

Petition from Orders of Santa Clara County Superior Court
The Honorable Peter Kirwan, 408-882-2310, for order May 25, 2022
The Honorable Carrie Zepeda, 408-882-2300, for order dated July 15, 2022
Case No. 21CV379828
_____

**PETITION FOR WRIT OF MANDATE AND ENFORCEMENT OF
PRELIMINARY INJUNCTION**
_____

Ronald H. Freshman, Esq. (SBN 225136)
LAW OFFICES OF RONAL D H. FRESHMAN
3040 Skycrest Drive
Fallbrook, CA 92028
Telephone: (858) 756-8288
Facsimile: (858) 964-1728
Attorney for Petitioners/Plaintiffs
Attorney for Petitioners/Plaintiffs

1

# CERTIFICATE OF INTERESTED PARTIES

■ There are not interested parties or entities to list in this Certificate per California Rules of Court, Rule 8.208.

☐ The interested parties or entities are listed below:

Name of Interested Person or Entity                Nature of Interest

1.

2.

3.

4.

5.


Date: July 21, 2022


LAW OFFICES OF RONALD H. FRESHMAN

By: ___/s/Ronald H. Freshman___

RONALD H. FRESHMAN
Attorney for Petitioners/Plaintiffs
Empire Investments, LLC; Vinh Nguyen and Teri Ha-Nguyen, trustees of Nguyen-Ha Living Trust Dated 12/10/04

2

# I. IMMEDIATE ENFORCEMENT OF PRELIMINARY INJUNCTION REQUESTED

The Respondent Court has pulled the proverbial "rug" out from under the Petitioners' (also referenced as "Plaintiffs") feet in protecting their rights by failing to comply with code of civil procedure and allowing Real Party in Interest, Paul Nguyen to resume his illegal foreclosure without seeking a formal dissolution of the preliminary injunction and by issuing an order improperly stating, "there is no operative complaint." (PA, V1, Exh. 1 and Exh. 3)

There has been no formal dissolution of the Preliminary Injunction issued on June 8, 2021, nor has there been an automatic dissolution. Inexplicably the Respondent Court refuses to enforce the Preliminary Injunction and Defendant Paul Kim Phong Nguyen[1] (referenced as "Paul") is set to sell the real property at a trustee sale on August 10, 2022. (PA V3, Exh. 18's Exh. 2- Substitution of Trustee at p.560-p.561; Exh. 18's Exh. 4, Notice of Trustee Sale at p.569-p.472)

Under Code of Civil Proc., § 533 a preliminary injunction may be modified or dissolved by motion by a party or the court; **no such notice or motion has ever occurred**. *Professional Engineers v. Department of Transportation*, 15 Cal.4th 543 (Cal. 1997) Inexplicably, the superior court under Judge Zepeda has expanded the sustaining of Paul' Demurrer (because no timely opposition was filed) to state that there is "no operative complaint" and refuses to enforce the Preliminary Injunction because "a" demurrer was sustained against the Second Amended Complaint ignoring the complaint remains operative as to the remaining defendants, as does the preliminary injunction. (PA V1, Exh. 3, at p.23)

More importantly, Petitioners relied upon code of civil procedure for determining their next steps to address the premature dismissal, relying on the fact that under § 533 they

---

[1] The parties share the same last name but have no family relationship; use of their first names is not meant as disrespect.

3

would have an opportunity to oppose any dissolution. By refusing to enforce the Preliminary Injunction the court is dissolving it, without fair notice to Petitioners, which is a deprivation of their constitutional right to fair notice. *Mullane v. Central Hanover Tr. Co.*, 339 U.S. 306 (1950)  Loss of the subject property is irreparable harm justifying an extraordinary relief by petition, as monetary compensation would be inadequate. *Anderson v. Souza*, 38 Cal.2d 825 (Cal. 1952)[Describing irreparable harm]; *See also* Civil Code § 3387 [a person's property is so unique monetary damages cannot adequately compensate for its loss]; *see also Stockton v. Newman* (1948) Cal.App.2d 558, 564 [Property is considered unique and loss of unique property is irreparable harm].  Further, the Petitioners have a $150,000 bond posted with the court.

Petitioners therefore request this Court to issue an order commanding the Respondent Court to enforce the Preliminary Injunction and to order Paul Nguyen and his new trustee Josef Szigeti to cease and desist from conducting the nonjudicial foreclosure. Calif. Rules of Court, Rule 8.116(a) and (b); 8.486(a)(7)(B) and 8.486(7)(C).

The parties have agreed to electronic service, in which this Petition with its exhibits have been served electronically served on Defendant Paul Nguyen as the Real Party in Interest, with courtesy copy to Defendants Parker Foreclosure and Chase Merritt; electronic service on Citee Josef Szigeti, and a hard copy of the petition served on the Judges on July 21, 2022.

Santa Clara Superior Court, Old Courthouse
Judge Carrie Zepeda, Dept. 18
161 N. First Street
San Jose, CA 95113
Tel: (408) 882-2300

Santa Clara Superior Court, Old Courthouse
Judge Peter Kirwan, Dept. 19
161 N. First Street
San Jose, CA 95113
Tel: (408) 882-2310

4

Table of Contents

I. IMMEDIATE ENFORCEMENT OF PRELIMINARY INJUNCTION REQUESTED .... 3

II. INTRODUCTION ............................................................................................... 9

  A. The Underlying Fraudulent Mortgage Scam ................................................ 10

  B. The Scam Perpetrated on Petitioners ........................................................... 12

  C. Fraudulent Scam Discovered ........................................................................ 14

  D. Procedural Errors of Petitioners and Courts ................................................ 15

III. PETITION FOR WRIT OF MANDATE ......................................................... 17

IV. PRAYER .......................................................................................................... 21

V. VERIFICATIONS ............................................................................................. 22

VI. MEMORANDUM OF POINTS AND AUTHORITIES ................................. 23

  A. WRIT REVIEW IS APPROPRIATE ........................................................... 23

  B. Denial of 473(b) Relief Should Be Reversed .............................................. 24

    1) Mandatory Relief ................................................................................... 25

    2) Improper Denial of Discretionary Relief .............................................. 27

  C. Denial of Enforcement of Injunction Should Be Reversed ......................... 28

    1) Unclean Hands Doctrine ........................................................................ 30

    2) Disentitlement ........................................................................................ 31

VII. CONCLUSION ............................................................................................... 32

VIII. RELIEF SOUGHT .......................................................................................... 32

IX. CERTIFICATE OF COMPLIANCE ............................................................... 34

X. PROOF OF SERVICE ...................................................................................... 35

Case: 22-50645    Doc# 50    Filed: 08/23/22    Entered: 08/23/22 22:20:44    Page 115 of
199

## US and State Supreme Courts

Anderson v. Souza, 38 Cal.2d 825 (Cal. 1952) ..................................................... 4

Burden v. Snowden, 2 Cal.4th 556 (Cal. 1992) .................................................. 24

Gee v. Estate of Jewett, 6 Cal.App.5th 477 (Cal. Ct. App. 2016) ..................................... 27

Haviland v. Southern California Edison Company, 172 Cal. 601 (Cal. 1916) ................. 28

Kavanaugh v. West Sonoma County Union High School Dist., 29 Cal.4th 911 (Cal. 2003) ............................................................................................................. 24

MacPherson v. MacPherson, 13 Cal.2d 271 (Cal. 1939) .................................................. 31

McClatchy v. Superior Court, 119 Cal. 413 (Cal. 1897) .................................................. 30

Mullane v. Central Hanover Tr. Co., 339 U.S. 306 (1950) ................................................. 4

People v. Loper, 60 Cal.4th 1155 (Cal. 2015) .................................................................. 23

Powers v. City of Richmond, 10 Cal.4th 85 (Cal. 1995) .................................................. 23

Professional Engineers v. Department of Transportation, 15 Cal.4th 543 (Cal. 1997) ...... 3

Rescue Army v. Municipal Court, 28 Cal.2d 460 (Cal. 1946) ........................................... 23

Robbins v. Superior Court, 38 Cal.3d 199 (Cal. 1985) .................................................... 29

Spector v. Superior Court, 55 Cal.2d 839 (Cal. 1961) .................................................. 23, 30

Younessi v. Woolf, 244 Cal.App.4th 1137 (Cal. Ct. App. 2016) ............................. 24, 27

Zamora v. Clayborn Contracting, 28 Cal.4th 249 (Cal. 2002) ........................................ 28

## Cases

American Credit Indemnity Co. v. Sacks, 213 Cal.App.3d 622 (Cal. Ct. App. 1989) ..... 29

Blain v. Doctor's Co., 222 Cal.App.3d 1048 (Cal. Ct. App. 1990) .................................. 30

Board of Med. Examiners v. Terminal-Hudson Elec, 73 Cal.App.3d 376 (Cal. Ct. App. 1977) ................................................................................................................. 29

Collins v. Superior Court, 145 Cal.App.2d 588 (Cal. Ct. App. 1956) ............................. 30

Dimity v. Dixon, 74 Cal.App. 714 (Cal. Ct. App. 1925) .................................................. 29

East West Bank v. Rio School District, 235 Cal.App.4th 742 (Cal. Ct. App. 2015) ........ 30

Estate of Buchman, 123 Cal.App.2d 546 (Cal. Ct. App. 1954) ........................................ 30

Case: 22-50645   Doc# 50   Filed: 08/23/22   Entered: 08/23/22 22:20:44   Page 116 of 199

Hamilton v. Laine, 57 Cal.App.4th 885 (Cal. Ct. App. 1997) ............................................ 32

Hogya v. Superior Court, 75 Cal.App.3d 122 (Cal. Ct. App. 1977) ................................. 23

Huh v. Wang, 158 Cal.App.4th 1406 (Cal. Ct. App. 2007) ......................................... 24, 25

Jackson v. Kaiser Found. Hosps., Inc., 32 Cal.App.5th 166 (Cal. Ct. App. 2019) ........... 26

Leader v. Health Industries of America, Inc., 89 Cal.App.4th 603 (Cal. Ct. App. 2001) 25, 26

Lee v. Wells Fargo Bank, 88 Cal.App.4th 1187 (Cal. Ct. App. 2001) ............................. 28

Mehr v. Superior Court, 139 Cal.App.3d 1044 (Cal. Ct. App. 1983) ............................... 24

Metropolitan Service Corp. v. Casa de Palms, Ltd., 31 Cal.App.4th 1481 (Cal. Ct. App. 1995) ........................................................................................................................... 24

Milton v. Perceptual Development Corp., 53 Cal.App.4th 861 (Cal. Ct. App. 1997) ...... 24

Minick v. City of Petaluma, 3 Cal.App.5th 15 (Cal. Ct. App. 2016) ............................... 28

Nilsson v. City of Los Angeles, 249 Cal.App.2d 976 (Cal. Ct. App. 1967) .................... 28

Pagnini v. Union Bank, 28 Cal.App.5th 298 (Cal. Ct. App. 2018) ............................ 20, 26

Peltier v. McCloud River R.R. Co., 34 Cal.App.4th 1809 (Cal. Ct. App. 1995) ............. 26

People v. Superior Court (Kaulick), 215 Cal.App.4th 1279 (Cal. Ct. App. 2013) ........... 24

People v. Superior Court (Stein), 239 Cal.App.2d 99, 102 (1965) ................................... 20

Rodrigues v. Superior Court, 127 Cal.App.4th 1027 (Cal. Ct. App. 2005) ...................... 25

SJP Ltd. Partn. v. City of Los Angeles, 136 Cal.App.4th 511 (Cal. Ct. App. 2006) ........ 25

Stockton v. Newman (1948) Cal.App.2d 558, 564 ............................................................ 4

Syngenta v. Helliker, 138 Cal.App.4th 1135 (Cal. Ct. App. 2006) .................................. 24

**Statutes**

Civil  Code § 3387 ............................................................................................................. 4

Civil Code § 3387 .............................................................................................................. 4

Code of Civil Proc., § 1085 ............................................................................................. 20

Code of Civil Proc., § 1086 ................................................................................... 17, 20, 24

Code of Civil Proc., § 473(b) ........................................... 15, 16, 18, 24, 25, 27, 28

Code of Civil Proc., § 533 ...................................................................................... 3, 16, 29

Case: 22-50645    Doc# 50    Filed: 08/23/22    Entered: 08/23/22 22:20:44    Page 117 of 199

**Rules**

Calif. Rules of Court, Rule 486(7)(C) ................................................................4

Calif. Rules of Court, Rule 8.116(a) .................................................................4

Calif. Rules of Court, Rule 8.116(b) .................................................................4

Calif. Rules of Court, Rule 8.486(a)(7)(B) .......................................................4

**Other Authorities**

2 Witkin, California Procedure, Jurisdiction §351, pp. 941-43 (4th ed. 1996 .................20

8

## II. INTRODUCTION

**This is plea to the Court of Appeals to help**. In 2011 the Santa Clara Superior Court system was used to perpetrate a fraud upon the Petitioners when a California Law Firm, Global Capital Law Group, PC, implemented a fraudulent scheme to swindle 1,000's of dollars from Countrywide Home Loans, Inc. and California borrowers, including Petitioners. One of the remaining co-conspirators of this fraudulent scheme remains active in California foreclosing on unsuspecting borrowers demanding payment for Notes and Deeds of Trust that were generated from the fraudulent scheme.

There is compelling evidence Defendant Paul Kim Phong Nguyen (hereinafter "Paul" or "Defendant"), with his co-conspirators Jan Van Eck, and disbarred attorney Gary Harre intentionally conspired to deprived Petitioners of $315,000 in money, and now, having been paid the $315,000, and after refusing to reconvey the Deed of Trust, Paul Nguyen[2] ("Paul") plans to foreclose on the real property known as 12329 Kosich Place, Saratoga, CA 95070 (hereinafter "Subject Property") falsely alleging Petitioners owe over "600,000.00" for principal and interest.

During the litigation, Petitioners secured a Preliminary Injunction ("PI") with a $150,000 bond on June 8, 2021, against Paul Nguyen, Parker Foreclosure Services and Chase Merritt. (PA V1, Exh. 1) At issue in this matter is a demurrer Paul filed as to the Second Amended Complaint, in which Petitioners' attorney inadvertently did not calendar the date to file an opposition to Paul's demurrer, and the demurrer was granted, as to Paul specifically, without leave to amend because it was unopposed; Judge Kirwan[3] presided over the hearing. (PA V2, Exh. 10 (tentative) and Exh. 11 (order) at p.227-p.235) Petitioners sought mandatory relief under § 473(b), or alternatively discretionary relief, which Judge Kirwan denied. (PA V1, Exh. 2) This was arguably, judicial error and/or an abuse of the court's discretion and now, even though the complaint as to Paul, has not been

---

[2] To avoid confusion between the parties, who are not related, Petitioners use the parties first name.

[3] Because there are three different judges involved, Petitioners feel compelled to identify each judge.

Case: 22-50645   Doc# 50   Filed: 08/23/22   Entered: 08/23/22 22:20:44   Page 119 of 199

formally dismissed, nor has the preliminary injunction been formally dissolved, Paul has resumed his illegal and wrongful foreclosure. .(PA V3, Exh. 18's Exh. 2- Substitution of Trustee at p.560-p.561; Exh. 18's Exh. 4, Notice of Trustee Sale at p.569-p.472) Petitioners sought an order, by exparte application, from the court enforcing the preliminary injunction, and holding Paul in contempt, which Judge Zepeda denied on July 15, 2022 on the basis the preliminary injunction would not be enforced because "a" demurrer had been sustained without leave to amend as to the Second Amended Complaint.  (PA V1, Exh. 3)

### A.  The Underlying Fraudulent Mortgage Scam

There are two parts to this case, the first involves the impersonation of Countrywide Home Loans, Inc. ("CHLI") dba America's Wholesale Lender ("AWL") the original lender in this matter.  The co-conspirators Paul Kim Phong Nguyen, Jan Van Eck, Garry Harre and Dennis Bell impersonated AWL in getting borrowers to sue AWL for TILA/RESPA violations, "negotiated" settlements of the lawsuits then pretended money had been advanced to pay off AWL, requiring the borrower to pay the settlement to the conspirators, or take out a new Note and Deed of Trust with the conspirators. (PA V1, Exh. 6 p.40:13-19) At the time of the filing the Second Amended Complaint, Petitioners attorney was investigating this scam.

.CHLI engaged in 1,000's if not millions of loans in which it identified its California dba AWL as a New York Corporation. In 2008, one Dennis Bell incorporated AWL as a New York Corporation ("AWL2") though he had no authority or legal right from CHLI to do so.  Mr. Bell then started settling lawsuits with unsuspecting borrowers, taking their money, and issuing fraudulent conveyances.  (RJN # 1, 2011 Lawsuit by CHLI suing Bell and Van Eck, *see* ¶¶ 26 and 27 detailing the scheme; RJN # 2, 2013 Lawsuit by Bank of New York Mellon ("BNYM") suing over settlements by Paul Nguyen and his co-conspirators of AWL loans held by BNYM, starting at ¶ 27 detailing the scheme.) Dennis Bell has claimed he was called by one Jan Van Eck who told Mr. Bell that he, along with a California law firm, were making settlements on AWL2's behalf, seeking to work with Bell for the conveyances.   To what extent Bell and Van Eck engaged in these transactions is unclear, as according to Bell, he never engaged with Van Eck though Bell is who signed

the fraudulent settlement agreement that was recorded with the court and was used as the basis of the Note at issue in this matter. (RJN # 2 -4, Bell Declarations; Dennis Bell v. Van Eck; Settlement by Global Capital between AWL3 and Petitioner Teri Ha a/k/a Teri Ha-Nguyen)

The "law firm" referenced by Van Eck in his call with Bell was the California Law firm of one Gary Harre, who at the time was a California licensed attorney but since, has been disbarred for other reasons. The "operations manager" of the firm was Paul Kim Phong Nguyen a/k/a Paul K. Nguyen who presented himself as a licensed attorney and partner in the firm, as well as a "member" of the Nevada LLC owned by Gary Harre, listing Paul and one Brian Davies as members. Also involved was one Diane Beall, who work for the law firm, known as Capital Law Group.

The *third* AWL ("AWL3") was set up at the same address as Bell's AWL2, but with suite number 501 (versus Bell's which was 105.) (This address is a mailbox service.) Jan Van Eck had/has control of this mailbox.

Paul Nguyen started soliciting borrowers who had AWL identified on their Notes and Deeds of Trust, to settle their loans for TILA and RESPA violations. To induce borrowers' confidence, Paul presented himself as a "licensed attorney" from New York who owned Chase Merritt Fund I, LLC, a limited liability company with over 80 million in assets and a partner in the California law firm Capital Law Group, with his partner, Gary Harre, the licensed California attorney. The LLC was actually a Nevada LLC set up by Harre and Nguyen to impersonate the Delaware firm, and Paul Nguyen has never been a licensed attorney.

Paul's "sales spill" was he had good working relationship with AWL, and the financial resources with Chase Merritt, to help borrowers settle their loans; and if the borrower did not have the cash out lay, his firm Chase Merritt would advance the funds by taking out a Note and Deed of Trust with the borrower for the settlement payment. Paul would work with the borrower to file a complaint in "pro per" alleging violations of TILA/RESPA, then upon filing, substituted in Gary Harre to handle service and settlement of the loan. Gary, or one of the "members" of Chase Merritt would then serve the complaint

11

on one "Jan Van Eck" a/k/a Maurice Van Eck, Mauritz Van Eck, Herman Van Eck, and George Thomas (hereinafter "Van Eck.") who pretended to be an "officer" of America's Wholesale Lender. Van Eck, without responding to the complaint would immediately offer settlement terms, in which Paul Nguyen would claim he, or the law firm, paid the settlement amount thereby demanding the borrower pay Nguyen or Chase Merritt back, either in payment or by taking out a Note.

### B. The Scam Perpetrated on Petitioners

In this matter, Paul had Teri file a lawsuit in the Santa Clara Superior Court in pro per, then had her substitute in Gary Harre and the Global Capital Law firm. Chase Merritt member Brian Davies then "served" the complaint on Van Eck, who instead of responding to the suit, immediately offered settlement terms. Here, Van Eck offered to settle the lawsuit by a lump sum payment of $315,000 on the $835,000 loan, due to the purported TILA/RESPA violations. (RJN # 5, original DOT with AWL; Exh. 4, Settlement Agreement with AWL3)

Mr. Harre knew that Van Eck was impersonating AWL but intentionally served the complaint and negotiated a "settlement agreement" on Petitioners behalf with Van Eck for the sole intent to defraud Petitioners of the $315,000. Unaware of the scam being perpetrated upon her, upon settlement Teri paid $100,000 towards the settlement amount, then Paul presented a fake "wire transfer" showing Chase Merritt was advancing $215,000 on her behalf to AWL. (PA V1, Exh. 6, p.37:9-14) In return, Teri and her husband, Vinh "Vince", as trustees of the Ha-Nguyen Living Trust, signed the Note and Deed of Trust at issue in this matter. (PA V1, Exh. 6, p.57 (Note); p.59-p.64 (DOT) Mr. Harre filed the settlement agreement with the Court, in which Dennis Bell, of the AWL2 purportedly signed and who purportedly issued the reconveyance. Van Eck sent a letter, using his AWL3 address, claiming AWL had been paid from the law firm's "client trust account." None of the defendants made any payments to the actual real AWL and Van Eck <u>has never worked for the actual AWL or held authority to settle any loan on behalf of Countrywide, AWL, or Bank of America.</u> Nor has Bell or Paul Nguyen. This was all a ruse on paper to deceive the Petitioners.

12

Still unaware of the fraudulent scam, Teri and Vince paid $60,000 on the $215,000 fake "loan" by making payment to Paul's daughter, upon his request. (PA V1, Exh. 6, p.37:20-24 referring to Exh. 6 copy of $60,000 payment at p.79) Also, Paul settled a second loan on their family's behalf in which Teri and Vince, through their LLC Rex Investments, paid Paul $187,070.40. (PA V2, p.38:7-18, referring to Exh. 7 copy of $187,07040 payment at p.81) However, after making the payments, Paul's scam started unraveling as the creditor for the second loan denied any settlement had occurred on the loan and monies were still due. Teri and Vince then started pursuing Paul for a refund of the $187,070.40- to which Paul remained elusive by leaving the country. When they could not serve him, they dismissed a complaint for the refund without prejudice. In 2015 the loan was cleared, which Petitioners now believe was the result of a settlement between the actual AWL, or Countrywide and Bell though at the time, they believed it was the result of their settlement agreement. (PA V1, Exh. 6, p.39:7-8) At no time did Paul Nguyen advance a single penny to any valid, real creditor- he advanced no money *at all.*

Paul returned to the states sometime in 2015, locating in Hawaii. Vince and Teri learned of his return to the states in late 2015 and in January of 2016, Vince flew to Hawaii to confront Paul and demanded the refund of $187,070.40. In a 24-minute phone call (Paul refused to meet Vince in person) **Paul admitted he had spent the funds and could not refund the money**; in lieu of the refund he agreed to apply the refund to the 2011 Note, that had a remaining balance of $155,000 with interest. Still unaware of the AWL scam, Vince agreed and Paul agreed to send a reconveyance. (PA V1, p.40:4-12) Except Paul never did. **Paul once again disappeared**; In Paul reappeared, claiming they never paid him any money, and filed a Notice of Default on February 25. 2021 and his trustee, Parker Foreclosure Services prematurely filed two Notices of Trustee Sale. (PA V2, Exh. 6, p.66-p.67; V2, Exh. 6, p.128-129, p.131-132) Petitioners filed their original lawsuit against Paul Nguyen, Parker Foreclosure Services and Chase Merritt Fund I, LLC as defendants, secured the PI, then hired their current attorney.

Case: 22-50645   Doc# 50   Filed: 08/23/22   Entered: 08/23/22 22:20:44   Page 123 of 199

### C. Fraudulent Scam Discovered

As part of the verification and validation process of the complaint, Mr. Freshman's legal team did an investigation and during the investigation learned about the fraudulent scam Paul, Van Eck and Harre had ran with the AWL3. Mr. Freshman's paralegal recognized Van Eck and knew his claim to work for AWL was false. She brought this to Mr. Freshman's attention at which time he instructed her to investigate the purported "settlement agreement" underlying the Note. Ms. Cromwell discovered the numerous lawsuits that described other California borrowers who had been solicited by Paul and how those borrowers had been instructed to file a lawsuit against AWL, which was then served on Van Eck and "settlements" were reached with an accompanying "Note" for payment of the settlements. The facts were stunningly similar, if not identical, to the settlement Harre and Paul had purportedly "negotiated' for Teri as a basis of the Note Paul is foreclosing upon. In the CHLI lawsuit filed in the Central District of California, the scam ran by the defendants is detailed; in another lawsuit, CHIL specifically alleges none of the Defendants (i.e. Bell, Van Eck Nguyen, Harre) have ever been an officer of CHLI with any authority to act on their behalf. Petitioners had filed a motion for leave to file a Third Amended Complaint to add claims for fraud and conspiracy to commit fraud, as well as and Paul Nguyen's conspirators, Gary Harre and Van Eck. However, it was withdrawn when the SAC demurrer issues arose and has subsequently be filed as a new lawsuit.

In addition, Petitioners found a notice from one Paul Cong Nguyen, an actual licensed attorney, posted in 2011, warning borrowers that Paul Nguyen was impersonating a licensed attorney and engaging in the unlawful practice of law. In his posting, Paul Cong Nguyen told borrowers a complaint had been opened with the California Bar, and the Orange County District Attorney's Office Economics Fraud Division. Petitioners are currently seeking evidence of these statements as part of their discovery process.

This lawsuit is about stopping Paul from foreclosing on their property for the Note that is based on the fraudulent settlement agreement which Petitioners have in fact, paid. Because there has been no formal dismissal or dissolution of the Preliminary Injunction, Petitioners implore this court to stop this procedural nightmare by granting Petitioners

14

relief by enforcing the Preliminary Injunction and reversing the trial court's denial of the 473(b) motion.

### D. Procedural Errors of Petitioners and Courts

Petitioners sued Paul Nguyen, Chase Merritt, and Parker Foreclosures. Paul filed a demurrer to the Second Amended Complaint, in which he sent notice of the hearing for January 20, 2022 on December 22, 2021. (PAV2, Exh. 7) The lead attorney for Petitioners scheduled the hearing but inadvertently failed to schedule the last day to file the opposition or schedule any tasks for his research team to prep and file the opposition. (PA V2, Exh. 12, Freshman Decl., ¶¶ 4-10 at p.245:8-p.245:5) As a result, an opposition was not filed until January 19, 2022, the day before the hearing. The trial court, Judge Kirwan granted the demurrer as unopposed, without leave to amend, specific to Paul. (PA V2, Exh. 10 and 11)

Petitioners then moved for relief under Code of Civil Proc., § 473(b) due to their attorney's inadvertence and mistake. (PA V2, Exh. 12-Petitioners' motion; Exh. 13, Paul Nguyen's Opposition, V2 & V2, Exh. 14, Petitioner's Reply) Judge Kirwan *stayed* the demurrer ruling pending the outcome of the 473(b) motion. (PA V3, Exh. 15) During the pendency of the motion, Paul was making demands for assignment of rents on the tenants of the property, even though there is no default on the Note and any such claim was long past the statute of limitations. In response Petitioners moved to have Paul held in contempt of the PI or alternatively, to have it expanded to prohibit him from harassing the tenants for rental payments. (PA V3, Exh. 16, Petitioners Notice of Motion and Motion for Sanctions and to Modify the Preliminary Injunction; Exh. 17-Paul's Opposition)

Judge Zepeda presided over the hearing and took the matter "off calendar" because according to Judge Zepeda, there was no "operative complaint" and there was a 473 motion in front of Judge Kirwan. (PA V2, Exh. 4-minute order on May 5, 2022) There is an operative complaint because Parker Foreclosure Services and Chase Merritt remain as defendants; further, there was no final judgment as a demurrer ruling is an interlocutory order, not final adjudication.

Under California law a Preliminary Injunction remains valid and in force until *further order of the court* and may be modified or dissolved upon a noticed motion. Code of Civil Proc. § 533; *Professional Engineers v. Department of Transportation*, 15 Cal.4th 543 (Cal. 1997)

Despite that § 533 requires a noticed motion, staring on June 27, 2022, Paul resumed his foreclosure activities by substituting in a new trustee and advertising the property on Stox and Forelosure.com. Upon notice of these activities, Petitioners sent the new trustee, Josef Szigenti, notice of the Preliminary Injunction. He remained undeterred and on July 5, 2022 recorded a new Notice of Trustee Sale and placed an ad with the Saratoga News. In response Petitioners sent both the trustee and Paul notices to cease and desist as they were in violation of the PI. Paul responded that there was no "operative complaint" so the PI was dissolved. (PA V3, Exh.18, Freshman Affidavit of Contempt, at p.585:17-p.586:22)

Then **after being noticed** of his violations, Paul Nguyen **submitted an order** to Judge Zepeda on July 7, 2022, without prior review from the Petitioners to which Judge Zepeda signed the order on July 8, 2022, stating "there is no operative complaint." (PA V2, Exh. 5- July 8, 2022 order)

Petitioners then filed an emergency exparte application requesting the court enforce the Preliminary Injunction and hold Paul and citee Josef Szigenti in contempt. (PA V 3 and 4, Exh. 18) Petitioners also filed a separate motion for Judge Zepeda to reconsider the July 8, 2022 order, because Judge Kirwan specifically and explicitly states the demurrer is for Paul Nguyen and makes no mention of the remaining defendants, Chase Merritt, and Parker Foreclosure Services such that the complaint remains against the remaining defendants.

Judge Zepeda, who did not issue the preliminary injunction and has no history with the complaint, demurrer or 473(b) motion, denied the exparte application, stating that the court will not enforce a preliminary injunction when "a" demurrer to the Second Amendment has been sustained without leave to amend." (PA V1, Exh. 3 July 15, 2022 order) Respectfully, this was not "a" demurrer, Judge Kirwan was explicit and specific he was ruling on Paul Nguyen's demurrer with no mention of the remaining defendants.

16

*Dimity v. Dixon*, 74 Cal.App. 714 (Cal. Ct. App. 1925).[ Each judgment, even when defendants are joined, are separately appealable judgments as a judgment *cannot be interpreted to include others not mentioned.* ]

Procedurally under the law, the preliminary injunction is <u>not dissolved</u> and the court has a duty to enforce the preliminary injunction until such time it is dissolved. Ironically, Petitioners cannot get relief for their attorney's procedural error, but Paul is allowed to move forward without following procedures for dissolving the Preliminary Injunction. This is a manifest injustice that will allow a con artist to wrongfully take title to Plaintiff's real property.

Petitioners seek a petition from this court pursuant to Code of Civil Proc., § 1086, as there is no  plain, speedy, and adequate remedy, in the ordinary course of law to prevent the irreparable harm Petitioners will incur if Paul's actions are not stopped as he plans to conduct the trustee sale on August 10, 2022. Petitioners herein request that this court enforce the PI, reverse the 473(b)-motion order denying relief, and reverse the denial of the exparte application for enforcement of the PI and hold Paul and the new trustee in contempt of the June 8, 2021 court order.

Herein Petitioners are referenced as "Petitioners" or "Petitioners" and Paul is referenced as "Defendant" or "Respondent" while the trial courts are referred to as Respondent Court, identifying the judge presiding over the order at issue.

### III.    PETITION FOR WRIT OF MANDATE

In support of the requested Writ of Mandate, Petitioners, by their verified petition, allege as follows:

1)      Petitioners paid off the $215,000 dollar Note with a payment of $60,000 on August 22, 2011, and $187,070.40 payment that was to be applied to the note as of January 24, 2016. (PA V1, Exh. 6, p.37:20-24 referring to Exh. 6 copy of $60,000 payment at p.79; PA V2, p.38:7-18, referring to Exh. 7 copy of $187,07040 payment at p.81)

2)      On February 25, 2021 Paul Nguyen filed Notice of Default falsely alleging that the Note had not been paid.  His trustee then prematurely filed two notices for the trustee sale.   (PA V1 1, p.66-p.67; p.128-129; p.131-132)

17

3) Petitioners filed a complaint and after showing the court the likelihood of succeeding on their claims, secured the Preliminary Injunction on June 8, 2021 by court order and posting $150,000 bond. (PA V1, Exh. 1)

4) Paul Nguyen filed demurrer to the First Amended Complaint, in which Petitioners responded asking the court for leave to file a Second Amended Complaint.

5) Petitioners filed their Second Amended Complaint on August 21, 2021. (PA V1 and V2, Exh. 6)

6) Paul filed a demurrer to the Second Amended Complaint on September 17, 2021, and on December 22, 2021 he sent notice the hearing date was set for January 20, 2022. (PA V2, Exh. 7- Demurrer and Motion to Strike; Exh. 8-Notice of hearing dates)

7) Petitioners' attorney's staff was out on the Christmas holiday when Mr. Freshman received the email; he calendared the hearing date but inadvertently did not file the last day to file the opposition or schedule any tasks to complete the opposition. (PA V2, Exh. 12, Freshman Decl., ¶¶ 4-10 at p.245:8-p.245:5)

8) As a consequence, when Petitioners attorney was given notice from his litigation system of the hearing for the 20th, he realized no opposition had been filed. Mr. Freshman and his team hurriedly put together an opposition and filed it on January 19, 2022.

9) On January 20, 2022 Judge Kirwan adopted the tentative granting the demurrer without leave to amend, as to Paul Nguyen, for reason the demurrer was unopposed. (PA V2, Exh. 10 and Exh. 11)

10) Petitioners filed a motion for relief under Code of Civil Proc., § 473(b), which the court took under submission. (PA V2, Exh. 12- Motion; Exh. 13-Opposition; Exh. 14-Reply)

11) Petitioners moved for a stay of the demurrer ruling, which Judge Kirwan granted on February 10, 2022. (PA V3, Exh. 15)

12) Paul started harassing the tenants of the property by demanding they make their rental payments to him. Petitioners filed an exparte motion to hold Paul in contempt of the PI for harassing the tenants of the property, demanding rental payments, or

18

alternatively, to expand the preliminary injunction to include prohibiting harassment of the tenants. (PA V3, Exh. 16-Notice of Motion and Motion to Show Cause or to Expand Preliminary Injunction; Exh. 17- Oppn.)

13) Judge Zepeda presided over the hearing and took it off calendar because there was "no operative complaint" and there was a 473(b) motion before Judge Kirwan. (PA V1, Exh.3-May minute order; Exh. 4 July 8, 2022 Order.)

14) On June 27, 2022 Paul substituted out Parker Foreclosure Services as the trustee and substituted in Josef Szigeti. (PA V3, p.560)

15) Mr. Szigeti posted ads for the trustee sale on Stox and Foreclosure.com. (PA V3, p.649-655)

16) On June 29, 2022 Petitioners attorney notified Mr. Szigeti of the preliminary injunction. (PA V3, p.585:25-28 referencing Fisher Decl. of sending notification at p.675-p.680)

17) On July 5, 2022 Mr. Szigeti recorded a Notice of Trustee sale, setting the hearing date for August 10, 2022, and placed an ad with the Saratoga News. (PA V3, p.569-572) Of note, the address of notices does not include Empire Investments, or the correct addresses for Petitioners.

18) Petitioners' attorney notified Paul of his violation of the preliminary injunction, with a second notice to Mr. Szigeti on July 6, 2022. (PA V3, p.586:15-18 citing to Fisher Decl. with letter at p.690-696, see also p.672:25-27)

19) Paul responded, as did Mr. Szigeti, stating there was no operative complaint and therefore, no preliminary injunction refusing to cease their activities. (PA V3, p.596:15-22, referencing Freshman Exh. 1 of Paul's response at p.591-p.596; and the citee' response at p. 598-p.605)

20) Plaintiff filed an exparte asking the court to enforce the preliminary injunction and to hold Paul and Mr. Szigeti in contempt. (PA V3, Exh. 18)

21) The court denied the application stating it would not enforce a preliminary injunction for Second Amended Complaint in which "a" demurrer had been sustained without leave to amend. (PA V1, Exh. 3)

19

22)	Petitioners herein represent they face imminent harm, and have no other adequate remedy at law, as the complaint as to Paul is not scheduled for a formal dismissal until August 22, 2022 and the sale will take place on August 10, 2022.

23)	Further Paul has no financial resources to return the money if he is allowed to go forward with the sale, as he was unable to refund the $187,070.40; he now seeks to take over   $466,126.82  if the sale occurs.

24)	 By this petition, petitioner seeks an order of this Court reversing the denial of the 473(b) motion, reversing the denial of the request to enforce the PI and for an order instructing the trial court to issue an order to show cause as to why Paul Nguyen and Josef Szigeti should not be held in contempt.

25)	Petitioners have been harmed by the Respondent Court's denial of mandatory relief, or alternatively, by the Respondent Court's abuse of its discretion to allow discretionary relief to ensure the matter is heard on the merits rather than a prejudicial default.

26)	Petitioners have no plain, speedy or adequate remedy in the ordinary course of the law as a regular appeal will not stop the sale that is scheduled for August 10, 2022. Petitioners will be irreparably harmed by being improperly dispossessed of the title to the property before a formal appeal can take place.

27)	 Mandate pursuant to Code of Civil Proc., § 1085 is the appropriate remedy for failure of the Superior Court to set aside the default judgment.   See, e.g., *People v. Superior Court (Stein)*, 239 Cal.App.2d 99, 102 (1965),2 Witkin, California Procedure, Jurisdiction §351, pp. 941-43 (4th ed. 1996); see also *Pagnini v. Union Bank*, 28 Cal.App.5th 298 (Cal. Ct. App. 2018)[Sustaining of an unopposed demurrer equivalent to default judgment.]

28)	Code of Civil Proc., § 1086  states "The writ must be issued in all cases where there is not a plain, speedy, and adequate remedy, in the ordinary course of law. It must be issued upon the verified petition of the party beneficially Interested. Petitioners have shown they will be irreparably injured and harmed by being denied relief, or opportunity to appeal before the sale takes place.

Case: 22-50645   Doc# 50   Filed: 08/23/22   Entered: 08/23/22 22:20:44   Page 130 of 199

29)     All actions complained of in this petition occurred within the territorial jurisdiction of the Respondent court.

30)     On July 21, 2022 Petitioners electronically served Paul Nguyen and Josef Szigeti with a copy of this Writ of Mandate and its supporting exhibits; and personally, served a copy to Judge Kirwan and Judge Zepeda a copy of the petition.

31)     On July 21, 2022 Petitioners filed this petition for Writ of Mandate.

## IV.    PRAYER

WHEREFORE petitioners pray that:

1.  An immediate order stating the Preliminary Injunction remains in full force and demand all foreclosure activities cease.

2.  A Writ of Mandate issue reversing the denial of 473(b) relief, or alternatively commanding Judge Kirwan to explain why relief should not be granted.

3.  A Writ commanding the Respondent Court to grant the exparte application enforcing the PI and issue an Order to Show Cause as to why Paul Nguyen and Josef Szigeti should not be held in contempt, or alternatively commanding Judge Zepeda to explain why the PI should not be enforced or an OSC should not issue.

4.   Petitioner be granted such other and further relief as this Court deems just.


Date:  July 21, 2022


LAW OFFICES OF RONALD H. FRESHMAN

By:  __/s/Ronald H. Freshman__
       RONALD H. FRESHMAN
       Attorney for Petitioners/Plaintiffs
       Empire Investments, LLC; Vinh Nguyen and Teri Ha-Nguyen, trustees of Nguyen-Ha Living Trust Dated 12/10/04

Case: 22-50645   Doc# 50   Filed: 08/23/22   Entered: 08/23/22 22:20:44   Page 131 of 199

## V. VERIFICATIONS

I, Ronald H. Freshman, attorney for Petitioners /Plaintiffs, declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this verification was executed on July 21, 2022

_____

I, TERI HA-NGUYEN, Petitioner /Plaintiff, as trustee of the Nguyen-Ha Livening Trust declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this verification was executed on July 21, 2022

_____

I, VINH NGUYEN, Petitioner /Plaintiff, as trustee of the Nguyen-Ha Livening Trust, declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this verification was executed on July 21, 2022   .

_____

I, TERI HA-NGUYEN, Petitioner /Plaintiff, as authorized representative for Empire Investments, LLC, declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this verification was executed on July 18, 2022   .

_____

Manager
Empire Investments, LLC

22

## VI.    MEMORANDUM OF POINTS AND AUTHORITIES

## A.  WRIT REVIEW IS APPROPRIATE

[I]t must be determined in each case, not only on the basis of precedent but from an examination of all the facts, whether there is an adequate remedy in the ordinary course of law." *Rescue Army v. Municipal Court*, 28 Cal.2d 460 (Cal. 1946) (Rescue Army).)

Absent extraordinary circumstances, an appeal typically constitutes an adequate remedy at law. *People v. Loper*, 60 Cal.4th 1155 (Cal. 2015); *Powers v. City of Richmond*, 10 Cal.4th 85 (Cal. 1995)   Even where an appeal is available, "the Supreme Court has repeatedly recognized the intervention of an appellate court [by way of writ review] may be required to consider instances of a grave nature or of significant legal impact, or to review questions of first impression and general importance to the bench and bar where general guidelines can be laid down for future cases. In such cases, the statutory requirement of inadequacy of appellate remedy may have been relaxed in favor of immediate review of a question of statewide importance so that lower decisions in other cases will be uniform." *Hogya v. Superior Court*, 75 Cal.App.3d 122 (Cal. Ct. App. 1977); accord, *Rescue Army*, *supra* at p.466, 467;

Additionally, while "[a] remedy is not inadequate merely because more time would be consumed by pursuing it through the ordinary course of law than would be required in the use of the extraordinary writ" (Rescue Army, at p. 466), <u>courts have utilized writ review where the facts and circumstances of a case require prompt resolution.</u> *Rescue Army*, at p. 467 (Emphasis added)

In this matter, Defendant has a propensity to 'disappear" and be elusive in being served, with the biggest concern here that he will take $ 3,000.000 from the trustee sale and disappear or, spend the money and be without financial resources to return the funds to Plaintiffs when they prove his fraudulent scam.   While there has been no formal dissolution of the preliminary injunction, the fact that the court refused to enforce the injunction it is dissolving it, making writ review appropriate. *Spector v. Superior Court*, 55 Cal.2d 839 (Cal. 1961)

23

While "a writ of mandate ordinarily cannot compel the exercise of discretion in a particular manner, a writ of mandate can compel a particular act if the failure to act in that manner was a clear abuse of discretion. *Syngenta v. Helliker*, 138 Cal.App.4th 1135 (Cal. Ct. App. 2006) Under Code of Civil Proc., § 473(b) **relief based on attorney fault is mandatory.** *Younessi v. Woolf*, 244 Cal.App.4th 1137 (Cal. Ct. App. 2016); *Milton v. Perceptual Development Corp.*, 53 Cal.App.4th 861 (Cal. Ct. App. 1997) [§ 473 mandates relief if caused by attorney error.]; *Metropolitan Service Corp. v. Casa de Palms, Ltd.*, 31 Cal.App.4th 1481 (Cal. Ct. App. 1995)[Mandatory provision does not require neglect to be excusable nor showing of due diligence when filed short of the six month time limit.]

The relief sought was not a matter of judicial discretion but a fundamental rule of procedure laid down by courts of last resort, followed under the doctrine of stare decisis, and binding upon all courts. *Mehr v. Superior Court*, 139 Cal.App.3d 1044 (Cal. Ct. App. 1983)

Mandamus is appropriate where the issue presents" '" 'a clear, present . . . ministerial duty on the part of [the court]. *People v. Superior Court (Kaulick)*, 215 Cal.App.4th 1279 (Cal. Ct. App. 2013) A ministerial act is an act that a public officer is required to perform in a prescribed manner in obedience to the mandate of legal authority and without regard to his own judgment or opinion concerning such act's propriety or impropriety, when a given state of facts exists.'" *Kavanaugh v. West Sonoma County Union High School Dist.*, 29 Cal.4th 911 (Cal. 2003)

Pursuant to Code of Civil Proc., § 1086 a Writ of Mandate must issue as an appeal is not an adequate remedy for the improper denial of Petitioners relief under § 473(b) and refusal to enforce the preliminary injunction. Where a pure question of law is at issue, as here, the appellate court reviews the issue de novo. *Burden v. Snowden*, 2 Cal.4th 556 (Cal. 1992)

**B. Denial of 473(b) Relief Should Be Reversed**

Code of Civil Proc., § 473(b) empowers a court to grant relief in appropriate cases for attorney error. The statue contains both mandatory and discretionary provisions. *Huh v. Wang*, 158 Cal.App.4th 1406 (Cal. Ct. App. 2007) If the prerequisites for the application

24

of the mandatory relief provision of section 473, subdivision (b) exist, the trial court does not have discretion to refuse relief." *SJP Ltd. Partn. v. City of Los Angeles*, 136 Cal.App.4th 511 (Cal. Ct. App. 2006)  The legislature expanded § 473 from only defaults to include dismissal. *Id.*

The prerequisites were met in that the motion was filed within the six-month statutory period as it was filed on January 27, 2022 which was 3 days after the January 24, 2022 order; the attorney filed a declaration under penalty of perjury, stating the Petitioners had every intent of opposing the demurrer but for the attorney's inadvertence and mistake from not calendaring the opposition due date resulting in no timely opposition being filed. Defendant Paul Nguyen opposed the motion including objection to the declaration but did not object to ¶ 10 of the declaration in which Mr. Freshman acknowledged his inadvertence and mistake.  (PA V2, Exh. 11, Demurrer Order dated January 24, 2022; V2, Exh. 12, filed January 27, 2022.)

At issue in this matter, is whether a sustaining of demurrer, without leave to amend because <u>no opposition was filed</u>, is covered by §473(b) for mandatory relief or alternatively, if it did not qualify for mandatory relief, then discretionary relief.

### 1) **Mandatory Relief**

The purpose of the mandatory relief provision was "`"`to relieve the innocent client of the burden of the attorney's fault, to impose the burden on the erring attorney, and to avoid precipitating more litigation in the form of malpractice suits.' [Citations.]" [Citation.]'" *Leader v. Health Industries of America*, Inc., 89 Cal.App.4th 603 (Cal. Ct. App. 2001) "Relief is mandatory when a complying affidavit is filed, even if the attorney's neglect was inexcusable." *Rodrigues v. Superior Court*, 127 Cal.App.4th 1027 (Cal. Ct. App. 2005)

In this matter the Respondent Court, relying on this court's holding in *Huh v. Wang*, 158 Cal.App.4th 1406 (Cal. Ct. App. 2007) (*Huh*) held that a sustaining of demurrer *because no opposition* was filed  did not qualify under § 473(b) because it is not a default or "dismissal." (PA V1, Exh. 2, p.15:25-p.17:7)  This reasoning by the trial court arguably fails to appreciate the reason the California Legislature expanded 473 was because the State

25

Bar's conclusion "that it is illogical and arbitrary to allow mandatory relief for defendants when a default judgment has been entered against them due to defense counsel's mistakes and to not provide comparable relief to Petitioners whose cases are dismissed for the same reason." *Pagnini v. Union Bank*, 28 Cal.App.5th 298 (Cal. Ct. App. 2018) at p.303, 304.

In *Huh,* the plaintiff sought relief by requesting the court set aside the judgment issued after a motion for summary judgment. This is not the matter here. As this court explained when examining "dismissals" a dismissal is defined as "`the withdrawal of an application for judicial relief by the party seeking such relief, or the removal of the application by a court.'" *Id.* at p.1416. Failure to oppose a summary judgment would not be a dismissal because it is an adjudication of the merits, rather than the removal of the plaintiff's application for relief. This matter is distinguishable because this was not a motion for summary judgment but rather the dismissal was entered when the plaintiff's attorney failed to oppose the dismissal motion.

The reviewing court in *Leader v. Health Industries of America, Inc*., 89 Cal.App.4th 603 (Cal. Ct. App. 2001) held the mandatory provision was not applicable because the demurrer was sustained with leave to amend after the trial court had <u>received an opposition and considered the opposition.</u> In *Leader* the plaintiff <u>did</u> oppose the motion but failed to filed an amended complaint. This matter is distinguishable because no opposition was considered by the court, as the Respondent Court sustained the demurrer because *no opposition was filed.* (PA V2, Exh. 10 and Exh. 11)

In *Peltier v. McCloud River R.R. Co*., 34 Cal.App.4th 1809 (Cal. Ct. App. 1995) the reviewing court clarified that when the Legislature incorporated dismissals into § 473, it intended to include failure to oppose a dismissal motion (i.e. acknowledging a demurrer is a dismissal motion), which is the procedural equivalent to a default. *Id.* *See also See Pagnini v. Union Bank*, 28 Cal.App.5th 298 (Cal. Ct. App. 2018) (*Pagnini*) [Relief from failure to oppose demurrer mandatory]; *Jackson v. Kaiser Found. Hosps., Inc*., 32 Cal.App.5th 166 (Cal. Ct. App. 2019) [Statute intended to include *dismissals.*]

In *Pagnini supra at* p.303, 304*,* the appellant sought mandatory relief when the attorney failed to oppose the demurrer and the court held a demurrer is in fact, a dismissal

motion. The reviewing court recognized that other courts have declined to give mandatory relief in other situations (like setting aside a judgment on a motion for summary judgement or failure to amend) but because a demurrer is effectively a dismissal motion, it falls under the mandatory relief provision of 473(b.)  This is because a dismissal may be entered where a plaintiff fails to appear in opposition to a dismissal motion, and relief is afforded where that failure to appear is the fault of counsel. The relief afforded to a dismissed plaintiff by our reading of the statute is therefore comparable to the relief afforded a defaulting defendant. [Citations] This interpretation is consistent with the statute's policy to put plaintiffs whose cases are dismissed for counsel's failure to respond to the dismissal motion on the same footing as defendants who have defaulted because of counsel's failure to respond. *Id*.

The purposes of the mandatory relief provision is to **promote the determination of actions on their merits**, to relieve innocent clients of the burden of the attorneys' fault, to impose the burden on the erring attorney, and to avoid the precipitation of additional litigation in the form of malpractice suits." *Gee v. Estate of Jewett*, 6 Cal.App.5th 477 (Cal. Ct. App. 2016) In this matter the Respondent Court held because this court denied relief under *Huh* for a motion for summary judgment, it could not grant mandatory relief for the demurrer.

 Petitioners hold it was judicial error for the Respondent Court to deny Petitioners relief.  The prerequisites for the application  of the mandatory provision of [Section 473(b)] exist, the trial court does not have discretion to refuse relief.  *Younessi v. Woolf*, 244 Cal.App.4th 1137 (Cal. Ct. App. 2016) [Relief under this provision is mandatory if the conditions are fulfilled.]

### 2)  Improper Denial of Discretionary Relief

Even if this court finds that unopposed demurrers are not   not covered by the mandatory relief provision, the Respondent Court, respectfully, abused its discretion by denying discretionary relief.   As our Supreme Court has clearly stated, "the discretionary relief provision of section 473, subdivision (b) applies to any judgment, dismissal, order, or other proceeding.'" *Zamora v. Clayborn Contracting*, 28 Cal.4th 249

27

(Cal. 2002) Thus, in contrast to the mandatory provision in section 473(b), "discretionary relief under the statute is not limited to defaults, default judgments, and dismissals." *Minick v. City of Petaluma*, 3 Cal.App.5th 15 (Cal. Ct. App. 2016) [discretionary relief available from any type of judgment.] Accordingly, there is no reason the discretionary relief provision of Code of Civil Proc. § 473(b) would not be available or why it would be denied.

The California Supreme Court, in *Haviland v. Southern California Edison Company*, 172 Cal. 601 (Cal. 1916) found, "It will hardly be claimed that the inadvertent entry of a wrong date in the book or journal in which defendant's attorneys kept a record of the proceedings to be taken by them could not fairly have been held by the trial court to furnish sufficient ground for relief under the remedial provisions of section 473. Calendar errors by attorneys, or their staff, under appropriate circumstances, are excusable. *Nilsson v. City of Los Angeles*, 249 Cal.App.2d 976 (Cal. Ct. App. 1967) The discretionary provisions of § 473 have been in place since the 1800's because the courts decided very early on the failure of counsel to meet a procedural deadline is proper subject for § 473 relief. *Lee v. Wells Fargo Bank*, 88 Cal.App.4th 1187 (Cal. Ct. App. 2001)

In this matter, Petitioners counsel explained in his declaration the hearing date notice came in during a time that his staff was off for the Christmas holidays and that while he entered the hearing date he inadvertently did not calendar the due date for the opposition or tasks for preparing the opposition. (PA V1, Exh. 2, p.16:8-17) This was not intentional and Petitioners absolutely wanted the demurrer opposed. If the spirit of the law is to be followed, then Petitioners should have been granted relief to ensure that the merits of the action could be adjudicated.

### C. Denial of Enforcement of Injunction Should Be Reversed

There is no dispute there has been no formal dissolution of the Preliminary Injunction, the question is must a party enjoined from taking acts pursuant to the Preliminary Injunction, refrain from taking those acts prior to the formal dissolution? And must the court enforce the injunction until it is actually dissolved?

28

Code of Civil Proc., § 533 states, in pertinent part, that in any action, the court **may on notice** modify or dissolve an injunction.  Although the court has broad discretion, it "must exercise that discretion 'in favor of the party most likely to be injured.'" *Robbins v. Superior Court*, 38 Cal.3d 199 (Cal. 1985)  The ultimate goal is to minimize the harm which an erroneous interim decision may cause.  *American Credit Indemnity Co. v. Sacks,* 213 Cal.App.3d 622 (Cal. Ct. App. 1989)

The June 8, 2021 Preliminary Injunction was issued against Paul Nguyen, Parker Foreclosure Services and Chase Merritt Fund I, LLC.  (PA V1, Exh. 1) The demurrer was sustained as to *Paul Nguyen;* no other defendants are mentioned and no formal entry of dismissal has been granted or entered into the record. (PA V2, Exh. 10 and Exh. 11) Each judgment, even when defendants are joined, are separately appealable judgments as a judgment *cannot be interpreted to include others not mentioned. Dimity v. Dixon*, 74 Cal.App. 714 (Cal. Ct. App. 1925).

In pertinent part, § 533 empowers a trial court to "modify or dissolve an injunction . . . upon a showing that there has been a material change in the facts upon which the injunction . . . was granted, that the law upon which the injunction . . . was granted has changed, or that the ends of justice would be served by the . . . dissolution of the injunction . . ."Code of Civil Proc., § 533.  An injunction may be dissolved **by motion** by a party, or by the court, **on its own motion**. *Board of Med. Examiners v. Terminal-Hudson Elec*, 73 Cal.App.3d 376 (Cal. Ct. App. 1977) Key being, dissolution of preliminary injunction is by *motion.*

In this matter the preliminary injunction has not been dissolved nor has any party or the court moved to dissolve the injunction; the court has simply decided, without giving Petitioners their due process right to notice, it won't enforce the injunction which is equivalent to dissolving the preliminary injunction without notice to the Petitioners.  (PA V1, Exh. 3)  This has deprived Petitioners from relying on well settled code of procedures for dissolution of the injunction, and deprived Petitioners from asserting their equitable defenses against dissolution, most specifically in arguing that Paul has unclean hands, and is barred by the disentitlement doctrine.  Here the court while requiring Petitioners to

29

adhere to code of civil procedure, are arguably giving the con artist a pass to the detriment and harm of Petitioners.

At the May 5, 2022 hearing the trial court, Judge Zepeda, took the matter off calendar, refusing counsel any oral arguments, then issued an order stating there was no "operative complaint." (PA V1, Exh. 4) When asked to enforce the preliminary injunction, it was denied based on Judge Zepeda's misapprehension there is no operative complaint and failure to recognize the injunction must be formally dissolved. Respectfully, the Supreme Court held, "…a hearing does not depend upon the will, caprice or discretion of the trial judge who is to decide upon the issues. An order or judgment without such an opportunity is lacking in all the attributes of a judicial determination" citing to *McClatchy v. Superior Court*, 119 Cal. 413 (Cal. 1897); *Collins v. Superior Court*, 145 Cal.App.2d 588 (Cal. Ct. App. 1956); *Estate of Buchman*, 123 Cal.App.2d 546 (Cal. Ct. App. 1954) by the court in *Spector v. Superior Court*, *supra* at p.844. When Paul was notified that he was in contempt of the preliminary injunction, the very next day he requested a formal order of the May 5, 2022 minute order, which Judge Zepeda signed on July 8, 2022 *after* his violations had started. (PA V1, Exh. 5)

### 1) Unclean Hands Doctrine

Specifically, Paul's demurrer was granted based on attorney error, not for the merits of the case and his demands for the debt, which was the result of a fraudulent scheme, are without merit as the debt was paid in full. The formal "dismissal" is scheduled for August 22, 2022 at which time Plaintiff have the right to argue against dismissal. Further a motion for dissolution would give Petitioners their opportunity to argue against the dissolution while they appeal the premature dismissal of their claims. The Respondent Court has pulled the proverbial "rug" out from under the Petitioners feet by refusing to follow code of civil procedure on dissolution of the Preliminary Injunction.

"The defense of unclean hands arises from the maxim: "He who comes into Equity must come with clean hands."" *East West Bank v. Rio School District*, 235 Cal.App.4th 742 (Cal. Ct. App. 2015) citing to *Blain v. Doctor's Co.*, 222 Cal.App.3d 1048 (Cal. Ct. App. 1990) Whether the doctrine bars relief in any particular case "depends on [(1)]

30

analogous case law, [(2)] the nature of the misconduct, and [(3)] the relationship of the misconduct to the claimed injuries." *Blain supra* p. 1060. In this matter, Paul, who presented himself as licensed attorney working with a California licensed attorney, intentionally and specifically served the complaint on a person they knew to be impersonating the real AWL, in order that all three could profit from defrauding Petitioners. Then after being *paid for the fraudulent Note,* 10 years later Paul seeks to foreclose on the property falsely alleging he was never paid so he can continue the fraudulent scheme.

### 2) Disentitlement

Under the disentitlement doctrine, "[a] party to an action cannot, with right or reason, ask the aid and assistance of a court in hearing his demands while he stands in an attitude of contempt to legal orders and processes of the courts . . . ." *MacPherson v. MacPherson*, 13 Cal.2d 271 (Cal. 1939) Here, *after violating the Preliminary Injunction* by substituting a new trustee (replacing Parker Foreclosure Services), and recording new Notice of Trustee Sale on July 5, 2022, Paul rushed to the court for an order that there is "no operative complaint" which was signed on July 8, 2022- which was signed after his acts violating the Preliminary Injunction.

The court, in its tentative ruling on May 5, 2022 and while the demurrer ruling on the January 24, 2022 was stayed, denied Petitioners motion to have the Preliminary Injunction modified, improperly stated there was no "operative complaint." This was a tentative ruling not a formal order dissolving the injunction or dismissing the case. Respectively, the Respondent Court, Judge Zepeda, failed to recognize that Judge Kirwan had specifically identified the demurrer as "Paul Nguyen's demurrer" with no mention of the remaining defendants and failed to recognize that the ruling granting the demurrer without leave to amended was *stayed.* There were no oral arguments as the court took the matter "off calendar."

Paul, latching onto the tentative stating there is no "operative complaint" resumed his foreclosure activities without seeking a dissolution of the order and **when noticed that he was acting in contempt of the court**, submitted an order to the court (without notice

31

to Petitioners or allowing Petitioners an opportunity to review the order) which Judge Zepeda signed on July 8, 2022. Nor can the court make an order now for then- in other words, it would be highly prejudicial and improper for the court to attempt to back date the effectiveness of the order, especially given it deprives Petitioners of their constitutional right to notice of dissolution of the preliminary injunction. *Hamilton v. Laine*, 57 Cal.App.4th 885 (Cal. Ct. App. 1997)

As a result of this July 8, 2022 order, Petitioners have moved for a reconsideration of the order, because there is in fact an operative complaint; while it may not be as to Paul, it is as to Parker Foreclosure Services and Chase Merritt, as is the preliminary injunction.

Regardless, Paul Nguyen is acting contravention of the preliminary injunction and has no right to seek the court's assistance while he defies the June 8, 2021 order.

## VII.    CONCLUSION

Fraud is not easy to detect; this has been an arduous process given the acts for the most part took place in 2011 and 2012. Paul Nguyen's act have cost Petitioners 1,000s of dollars, and the ongoing discovery and investigation show that he is a master con artist with no problem taking people's money.

The denial of the 473(b) relief was judicial error; the refusal to enforce the preliminary injunction is judicial error. Paul will sell the house, which he is now claiming the "debt" has risen to $ 466,126.82 – so he is seeking $881,000   windfall for his fraudulent mortgage scam. Petitioners need this court's assistance in stopping this fraudulent foreclosure.

## VIII.    RELIEF SOUGHT

1.  Immediate enforcement of the Preliminary Injunction by ordering the cancellation of the Notice of Trustee Sale and commanding Paul Nguyen and citee Josef Szigeti to cease and desist from any further foreclosure activities.

2.  Issue an order reversing the May 25, 2022 order denying Petitioner relief under § 473(b) or order to show cause as to why it should not be reversed.

32

3. Issue an order reversing the July 15, 2022 order denying Petitioners exparte application to enforce the Preliminary Injunction or order to show cause why it should not be reversed.

4. For all costs and attorney fees.

5. For any and all relief as this court sees fit.

Date: July 21, 2022

LAW OFFICES OF RONALD H. FRESHMAN

By: /s/Ronald H. Freshman

RONALD H. FRESHMAN
Attorney for Petitioners/Plaintiffs
Empire Investments, LLC; Vinh Nguyen and Teri Ha-Nguyen, trustees of Nguyen-Ha Living Trust Dated 12/10/04

33

## IX. CERTIFICATE OF COMPLIANCE

I hereby certify that this brief has been prepared using proportionately one and half spaced, 13-point Times New Roman typeface. According to the "Word Count" feature in my Microsoft Word for Windows software, this brief contains 8,658 words up to and including the signature lines that follow the brief's conclusion. I declare under penalty of perjury that this Certificate of Compliance is true and correct and that this declaration was executed on July 21, 2022.

Date: July 21, 2022

LAW OFFICES OF RONALD H. FRESHMAN

By: __/s/Ronald H. Freshman

RONALD H. FRESHMAN
Attorney for Petitioners/Plaintiffs
Empire Investments, LLC; Vinh Nguyen and Teri Ha-Nguyen, trustees of Nguyen-Ha Living Trust Dated 12/10/04

34

## X.    PROOF OF SERVICE

I am employed in the County of San Diego, State of California.  I am over the age of 18 and not a party to the within action; my business address is 3040 Skycrest Drive, Fallbrook California.   On the date indicated below, I caused to be served the within **PETITION FOR WRIT OF MANDATE, IMMEDIATE RELIEF AND MEMORANDUM OF POINTS AND AUTHORITIES; VERIFICATIONS, APPENDIX 1 THROUGH 4; MOTION FOR REQUEST FOR JUDICIAL NOTICE** on the interested parties in said action by:

[X] **ELECTRONIC SERVICE** Based on a court order, an agreement of the parties to accept service by electronic transmission and/or pursuant to CRC 2.251(a)(2)(B), I caused the below-referenced document(s) to be sent to the person(s) at the electronic address(es) listed above.

| | | |
|---|---|---|
| **Paul Kim Phong Nguyen** | **PARKER FORECLOSURE SERVICES, LLC** | **Josef Szigeti** |
| p2011nguyen@gmail.com | 73 N. Joanne Avenue | josefszigeti@gmail.com |
| 9353 Bolsa Ave, #F8 | Ventura, CA 93003 | Douglas Elliman Real Estate |
| Westminster, CA 92683 | Telephone: (805) 641-9292 | 12 Corporate Plaza, Suite 250 |
| Tel: (657) 254-7579 | Info@parkerforeclosure.com | Newport Beach, CA 92660 |
| *Defendant in Pro Per/ Real Party in Interest* | *Agent for Service of Process:* | Tel: (949) 981-3310 |
| | *Hermond Lee Blossomgame* | Citee |

.

[X] **BY OVERNIGHT DELIVERY** – I deposited such envelope for collection and delivery by GLS Overnight with delivery fees paid or provided for in accordance with ordinary business practices. I am "readily familiar" with the Firm's practice of collection and processing packages for overnight delivery.  They are deposited with a facility regularly maintained by GLS Overnight for receipt on the same day in the ordinary course of business to the above address.

**CHASE MERRITT FUND I, LLC**
65 N. Dos Caminos Avenue
Ventura, CA 93003
*Defendant*

By personal service-

| | |
|---|---|
| Hon. Carrie Zepeda | Hon. Peter H. Kirwan |
| Department 18 | Department 19 |
| Santa Clara Superior Court | Santa Clara Superior Court |
| 161 North First Street | 161 North First Street |
| San Jose, CA 95113 | San Jose, CA 95113 |
| Tel: (408) 882-2300 | Tel: (408) 882-2310 |
| ***Petition only*** | ***Petition only*** |

Date:  July 21, 2022

LAW OFFICES OF RONALD H. FRESHMAN

By: ___/s/Ronald H. Freshman_____
    RONALD H. FRESHMAN
    Attorney for Petitioners/Plaintiffs
    Empire Investments, LLC; Vinh Nguyen and Teri Ha-Nguyen, trustees of Nguyen-Ha Living Trust Dated 12/10/04

# EXHIBIT 11

# EXHIBIT 11

PAUL KIM PHONG NGUYEN
9353 Bolsa Ave #F8
Westminster, CA 92683
Telephone: (657) 254-7579

Defendant In Pro Per

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF SANTA CLARA

Empire Investments, LLC; Teri Nguyen and
Vinh Nguyen as Trustees of Nguyen-Ha Living
Trust Dated 12/10/04;

       Plaintiffs,

       vs.

Paul Kim Phong Nguyen; Chase Merritt Fund I,
LLC; Parker Foreclosure Services, LLC; And
Does 1 Through Does 10, Inclusive,

       Defendants

Paul Kim Phong Nguyen, an individual

       Cross-Complainant

       vs.

Empire Investments, LLC; Teri Nguyen And
Vinh Nguyen As Trustees Of Nguyen-Ha
Living Trust Dated 12/10/04, And Does 1
Through Does 25, Inclusive.

       Cross-Defendants

Case No.: 21CV379828

**VERIFIED SECOND AMENDED CROSS-COMPLAINT BY PAUL NGUYEN.
[IN COMPLIANCE WITH DEMURRER COURT ORDER 5/31/2022].**

Come now Cross-Complainant Paul Kim Phong Nguyen, an individual, cross-complaint against EMPIRE INVESTMENTS, LLC, a Wyoming Limited Liability Company doing business in California EMPIRE INVESTMENTS TEAM, LLC; TERI NGUYEN and VINH NGUYEN AS TRUSTEES OF NGUYEN-HA LIVING TRUST DATED 12/10/04, and DOES 1 through DOES 25, inclusive, allege as follows:

## PARTIES

1.     Cross-Complainant Paul Kim Phong Nguyen ("PAUL") is, and at all time relevant herein is an individual residing in California.

2.     Cross-Defendant EMPIRE INVESTMENTS LLC is, and at all time relevant herein is a Wyoming limited liability Company registered to do business in California as EMPIRE INVESTMENTS TEAM LLC (hereinafter "EMPIRE").

3.     Cross-Defendant TERI NGUYEN ("TERI") is, and at all time relevant herein is an individual residing in California acting as a Co-Trustee of Nguyen-Ha Living Trust Dated 12/10/2004 ("LIVING TRUST").

4.     Cross-Defendant VINH NGUYEN ("VINH") also known as VINCE NGUYEN ("VINCE") is, and at all time relevant herein is an individual residing in California, and attorney of record in this action, and also acting as Co-Trustee of Nguyen-Ha Living Trust Dated 12/10/2004 ("LIVING TRUST").

5.     DOES 1 through 25 are sued in such a capacity as their identities are currently unknown to Cross-Complainant who are informed and believe that said cross-defendants have engaged in unlawful acts alleged herein and have caused Cross-Complainant harm.

6.     Cross-Complainant are informed and believe and thereon allege that at all times herein mentioned, each Cross-Defendant was the agent, partner, and/or employee of each and

every of one of the other Cross-Defendants, and was acting within the course and scope of such Cross-Defendants' authority, and each Cross-Defendant ratified, authorized, and approved of the acts of each other Cross-Defendant. Cross-Complainants are informed and believe and thereon allege that at all times referenced herein, Cross-Defendants were acting in concert and did aid and abet the others with the knowledge of unlawfulness of their actions.

### JURISDICTION AND VENUE

7.    Subject matter jurisdiction is proper in this court in that the total amount of damages and specific performance sought in this action is within the jurisdictional limit of the Superior Court.

8.    Venue is proper because the subject property in controversy is in County of Santa Clara, and said compulsory Complaint was filed by Plaintiff in Santa Clara County.

### FACT COMMON TO ALL CAUSE OF ACTION

9.    EMPIRE is the owner a real property located at 12329 Kosich Place in Saratoga, California ("SUBJECT PROPERTY") by way of Grant Deed since 08/26/2011.

10.    Teri Nguyen ("TERI"), as the former owner of the "SUBJECT PROPERTY" took out a loan with America's Wholesale Lender (AWL) that secured by a Deed of Trust (DOT) against the property on 09/30/2003.

11.    On 8/27/2009, TERI sued Mortgage Electronic Registration System (MERS), Countrywide Home Loans (CHL), America's Wholesale Lender (AWL) and Reconstruct Company, N.A. (RECON) in Santa Clara Superior Court, Case No. 2009-1-CV-150842.

12.    Such lawsuit challenged the above mentioned entities standing to foreclose the SUBJECT PROPERTY.

13.    TERI subsequently amended her Complaint and removed AWL as defendant. She

dismissed the state court case without prejudice after defendants removed it to federal court.

14.  In 2011, TERI filed a new lawsuit against MERS and AWL in Santa Clara Superior

Court, Case No. 2011-1-CV-202240.

15.  On 07/01/2011, a stipulated judgment was entered in this Court.  AWL agreed to a pay-

off amount of $315,000 to be paid within 30 days from the date of entry of judgment.  True and

correct copy of the stipulated judgment is attached herein as **Exhibit "A".**

16.  TERI transferred by way of grant deed to a living trust known as Nguyen-Ha Living

Trust Dated 12/10/2004 with TERI and VINH acted as trustees.

17.  The TRUST asked Defendant PAUL for a $315,000 loan to pay the stipulated judgement

which consisted of $100,000 to be paid back within 30 days and $215,000 in form of

promissory note secured by DOT against the subject PROPERTY.  True and correct copy of the

"NOTE" and "DOT" is attached herein as **Exhibit "B"** and **"C"**.

18.  AWL recorded a full reconveyance with Santa Clara County recorder on 7/28/2011 as

instrument number 21260514.  True and correct copy is attached herein as **Exhibit "D"**.

19.  On 08/22/2011, TERI made a check payment of $60,000.00 toward the $100,000 short-

term loan.  The remaining balance of $40,000 has not been paid to date and is past due.

20.  On 05/23/2011, Defendants VINH formed an entity named Empire Investments LLC in

Wyoming and continue to act as EMPIRE's agent and manager as of today.

21.  Justin Vu Nguyen ("JUSTIN") is the son of TERI and VINH and is was designated as

Member Manager of the LLC.

22.  On 9/29/2009, First Century Plaza LLC ("FCP") sued Sorrento Pavillion LLC ("SP"),

Vinh Nguyen, Teri Nguyen in Santa Clara Superior court, case No. 2009-1-CV-153711.

23.     On 1/6/2011, the Court heard FCP's Motion for Summary Judgment against TERI and VINH and took the motion under submission.

24.     On 09/01/2011, The Court granted judgment against VINH and TERI in the amount of $880,634.77 along with costs of suit.

25.     VINH and TERI appealed the judgment which was denied by the appellate court on 3/26/2013.

26.     In anticipated the pending judgment in favor of FCP in the amount of $880,634.77, on August 26, 2011, TERI and VINH recorded a grant deed purportedly transfer ownership of the subject property to EMPIRE while still has full control and possession of the PROPERTY.

27.     Justin Vu Nguyen ("JUSTIN") is TERI and VINH's son and is the Manager and Member of EMPIRE.

28.     In 2011 and 2012, JUSTIN had no income and was a full time student.

29.     Anh Stovall is JUSTIN's sister and claimed JUSTIN as her dependent in Federal and California taxes.

30.     VINH and TERI did not notify PAUL of the transfer of ownership of the SUBJECT property to EMPIRE.

31.     PAUL has no knowledge of the transfer of ownership of the SUBJECT property to EMPIRE and never agreed to EMPIRE assuming the outstanding loan of TERI and VINH.

32.     PAUL did not learn of the transfer of ownership to EMPIRE until March 2021 from the Trustee Sale Guarantee ("TSG") title report issued by title company as part of foreclosure of the PROPERTY.

33.     In October 2012, VINH acted as EMPIRE's attorney, brought a lawsuit against PAUL for failure to complete loan settlement in the Santa Clara Superior Court, Case No. 112CV234295.

34. EMPIRE never served PAUL with the lawsuit and dismissed the case in January 2013.

35. Ross Stovall ("STOVAL") is TERI's son and VINH's stepson.

36. STOVALL purchased a property located at 17751 Bruce Ave, Monte Sereno, CA (BRUCE) on or about 07/12/2005.

37. On or about 06/01/2007, STOVALL took out a mortgage loan with First Financial Lender (FFL) secured by Deed of Trust (DOT). FFL was a California corporation and TERI was its president and sole shareholder of the corporation. VINH was the corporation Chief Financial Officer.

38. On 12/14/2011, STOVALL sold the BRUCE property to Rex Investment Group LLC (REX) for $1,020,000. REX assumed the loans and paid STOVALL $5,000 for his equity. REX was a Nevada LLC and VINH was its Manager.

39. On 07/21/2011, TERI acted in the capacity of President of FFL assigned its interest in the DOT (ADOT) to Chase Merritt Fund I, LLC ("CMFI").

40. On 03/08/2012, REX sold the property to Jean Chen (CHEN). VINH executed the Grant Deed as REX manager transferring ownership of BRUCE property to CHEN .

41. REX entered into a payoff agreement with CMFI (REX-CMFI Agreement) as holder of DOT secured by BRUCE property. CMFI recorded a full reconveyance of DOT for BRUCE property.

42. The REX-CMFI Agreement was memorialized in writing and acknowledged by parties on 05/21/2011. True and correct copy is attached herein as **Exhibit "E"**.

43. CMFI agreed to a pay-off amount of $186,070.40 from the proceed of sale of the BRUCE property with the following term and condition: A total amount of $826,979.55 was documented HUD-1. REX and CMFI agreed to set aside $82,697.96 for litigation. Should

$826,979.55 would be spent or settled in litigation, CMFI agreed to pay the $186,070.40 it received back to REX. VINH, acted in the capacity of LLC Manager issued a payment in the amount of $186,070.40 to CMFI.

44. On 10/19/2017, The Bank of New York Mellon (BONY) filed a lawsuit in Santa Clara Superior Court against STOVALL, FFL, CMFI, REX, CHEN and Citibank claiming interest in the DOT encumbered BRUCE property.

45. On 01/21/2021, BONY dismissed its action with prejudice.

46. Defendant PAUL repeatedly demanded payment of the subject loan and Plaintiffs failed to make such payment. A Notice of Default ("NOD") was recorded on 02/25/2021 which followed by Notice of Trustee Sales ("NOTS") recorded on 05/12/2021 and 05/14/2021.

47. EMPIRE, as title holder of the SUBJECT PROPERTY, rents the property to others with VINH and TERI purported act as "PROPERTY MANAGERS".

48. On 05/16/2021, PAUL sent tenants occupying the SUBJECT PROPERTY a "Demand on Tenant to Pay Rent to Party Other than Landlord" pursuant to the absolute assignment provision of the recorded DOT. Plaintiffs instructed their tenant to withhold rent payment.

49. EMPIRE fails to turn-over the rent as instructed by PAUL and TERI and VINH continue to obstruct PAUL's ability to exercise the DOT assignment of rent by instructing tenant to make payment to them.

50. On information and belief, EMPIRE did not pay for the purchase of KOSICH property.

51. VINH and TERI as trustee of LIVING TRUST did not make monthly payment pursuant to the "NOTE". Upon maturity of said NOTE on July 28, 2012, VINH and TERI as trustee of LIVING TRUST did not make payment in full as required.

52.     Cross-Defendants did not notify Cross-Complainant of the transfer of title to EMPIRE and Cross-Complainant did not consent to such transfer.

53.     EMPIRE collected rent from tenant occupying the SUBJECT PROPERTY despite such rent has been assigned to PAUL.

54.     Section 4 of DOT stated:

> "**Fire, Flood and Other Hazard Insurance**. Borrower shall insure all improvements on the Property; whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall he held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.
>
> **In the event of loss**. Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in Paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in Paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto."

55.     Section 16 of DOT provided:

> "**Assignment of Rents**: Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs'; each tenant of the Property to pay the rents to Lender or Lenders agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an **absolute assignment** and not an assignment for additional security only.

> If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant."

56. On or about June 12, 2020, a fire occurred adjacent to KOSICH property causing damages to KOSICH property. On or about December 21, 2020, Cross-Defendant EMPIRE filed a lawsuit in Santa Clara Superior Court seeking compensation for damages caused by such fire. The case Empire Investments LLC vs. Art Mar, case No. 20CV375104 is pending before this Court.

57. On or about 02/25/2021, Cross-Complainant through its agent recorded a Notice of Default ("NOD") with Santa Clara County recorder with Instrument No. 24846754. A true and correct copy is attached herewith as **Exhibit "F"**.

58. On 05/02/2021, Cross-Complainant made a demand to pay rent to Cross-Complaint instead of landlord pursuant to *California Civil Code* section 2938. A true and correct copy is attached herewith as **Exhibit "G"**.

59. Cross-Complainant failed to have rent payment to be made directly to Cross-Complainant pursuant to *California Civil Code* section 2938.

BANKRUPTCY

60. On or about January 12, 2017, PAUL filed an application for bankruptcy protection in California central district.

61. On January 30, 2017, the case was dismissed for failure to file schedule and statement.

62. On February 27, 2017, PAUL and his wife refiled for bankruptcy protection in California central district.

63. In June 2017, the case was dismissed for failure to comply after conversion to chapter 7.

### FIRST CAUSE OF ACTION
### BREACH OF CONTRACT
(Against All Defendants and DOES 1-25, inclusive)

64. Cross-Complainant incorporates by reference paragraphs 1 through 63 of this cross-complaint as though fully set forth herein.

65. Cross-Defendants failed to maintain insurance policy for KOSICH property that include loss payable in favor to cross-complainant pursuant to Section 4 of DOT.

66. Cross-defendants did not notify cross-complainant of loss due to fire occurred on or about June 12, 2020 pursuant to Section 4 of DOT.

67. Cross-defendants breach the DOT in failing to authorize and to direct insurance company to make payment for such loss directly to cross-complainant as required in section 4 of DOT.

68. Assignment of rent as stated in section 16 of DOT is an absolute assignment. VINH and TERI purportedly grant deed the SUBJECT PROPERTY to EMPIRE which included assignment of rent that they no longer had.

69. Upon recording of notice of default, and demand made by cross-complainant, cross-defendants failed to direct tenant to pay rent to cross-complaint and turn-over collected rent from tenant. All rent collected to date by cross-defendants as trustee is the benefit of cross-complainant.

70. Cross-Defendants TERI and VINH failed to notify Cross-Plaintiff of the purported sale of the secured PROPERTY to EMPIRE to deprive Cross-Plaintiff the ability to accelerate the loan pursuant to Section 8(b) of the DOT.

71. By its acts and omissions, cross-defendants are in breach of the deed of trust.

72.   As a direct and proximate result of cross-defendants' breach of the DOT, cross-complainant suffered damages that includes rent benefits.

73.   Cross-complainant is entitled to an award of compensatory damages as well as cost of suit and attorney's fees incurred herein.

### SECOND CAUSE OF ACTION
### SPECIFIC PERFORMANCE
(Against All Defendants and DOES 1-25, inclusive)

74.   Cross-Complainant incorporates by reference paragraphs 1 through 73 of this cross-complaint as though fully set forth herein.

75.   Cross-complainant and cross-defendants entered a specifically enforceable deed of trust that is sufficiently certain in its terms.

76.   Cross-defendants has breached the terms of DOT by failing to maintain insurance against losses for KOSICH and naming cross-complainant to have loss payable in favor to cross-complainant.

77.   Assignment of rent as stated in section 16 of DOT is an absolute assignment.  Upon recording of notice of default, and demand made by cross-complainant, cross-defendants failed to direct tenant to pay rent to cross-complaint and turn-over collected rent from tenant.  All rent collected to date by cross-defendants as trustee is the benefit of cross-complainant.

78.   Cross-defendants continued and wrongful retention of rent payment would constitute unjust enrichment.

### THIRD CAUSE OF ACTION
### Set Aside Fraudulent Transfer under Common Law
(Against All Defendants and DOES 1-25, inclusive)

79.   Cross-Complainant incorporates by reference paragraphs 1 through 78 of this cross-complaint as though fully set forth herein.

80.     At all times mentioned herein, Cross-Plaintiff is and have been the beneficiary of the DOT executed by cross-defendants TERI and VINH.

81.     In addition, FCP is and have been the holder of a judgment as alleged herein against TERI and VINH.

82.     Cross-plaintiff is informed and believe, and on that basis allege, that the combined claims exceeds the net worth of TERI and VINH and they became insolvent.

83.     The transmutation of the ownership of the judgment debtors' ownership interest in their individual capacities as trustees of "Nguyen-Ha Living Trust Dated 12/10/04" to Empire Investments LLC.

84.     Express limitation on the right of creditors, such as Cross-plaintiff, to realize an economic or membership interest by way of foreclosure and the express exclusion of fiduciary duties to all creditor.

85.     Exclusion from all rights and benefits to a creditor who succeeds to an interest under the agreement.

86.     Cross-plaintiff is informed and believe, and on that basis allege, that cross-defendants TERI and VINH and DOES 1 through 25 carried out this conversion and transfer of the subject property with actual intent to hinder, delay, or defraud cross-plaintiffs and judgment creditors. This conduct was a violation of common law and statute

87.     Cross-plaintiff is informed and believe, and on that basis allege, cross-defendants TERI and VINH relinquishment of ownership of the subject property to a fictitiously created limited liability company impair cross-plaintiff's right as TERI and VINH received nominal or no consideration.  Cross-plaintiff is further informed and believe, and on that basis allege, that at the time the transfer was made, the value of their interest was approximately $900,000 and cross-

defendants TERI and VINH did not receive reasonably equivalent value in the purported sale of the subject PROPERTY to EMPIRE. TERI and VINH orchestrated with their children, and DOES 1 through 25 the dispossession of ownership of the subject PROPERTY and creditor rights at the time that TERI and VINH had an affirmative responsibility and special duty cross-plaintiff and their judgment creditor under common to protect and preserve the value of their assets as *res* held in constructive trust due to their insolvency and to refrain from action intended to impair or destroy the rights of cross-plaintiff and other creditors to realize on said assets.

88.     The transfer bear several of "Badges of Fraud" that demonstrate the existence of actual fraudulent intent on the part of the transferor, and in this case, active and affirmative participation and knowledge of the transferee, including the following:

      a.   transfer to an insider:  EMPIRE was organized by VINH and TERI.  JUSTIN is their son and has been acting as Member Manager of EMPIRE.

      b.   retention of possession and control by transferor:  VINH and TERI named themselves as property manager for EMPIRE having full control and possession of the SUBJECT PROPERTY as well as collection and disposing of rent they collected.

      c.   the timing of the transfer relative to entry of the judgment:  FCP sued VINH and TERI.  A summary judgment motion by FCP was heard in Santa Clara Superior Court in 01/2011.  In anticipation of the summary judgment motion entered in 09/2011, VINH and TERI organized EMPIRE and grant deed the only real property in their name in 08/2011.

      d.   the transfer involved substantially all of the transferor's assets:  In 2011, the SUBJECT PROPERTY is the only real property asset in the name of VINH and

TERI.  After the purported transfer of asset to EMPIRE, there was no asset held
by VINH or TERI.

e.  Thus, VINH and TERI as judgment debtors were insolvent or rendered so by the
transfer.

89.  Cross-plaintiff is informed and believe and, on that basis allege, that TERI and VINH
interest in the subject PROPERTY was re-vested in the Wyoming LLC, rights were relinquished
and impaired with knowledge that cross-defendants TERI and VINH intended to hinder, delay,
or defraud the collection cross-plaintiff's loan and judgment against TERI and VINH.  The
transfer and relinquishment occurred within days before FCP judgment against them.

## PRAYER FOR RELIEF

a.  For general and special damages in the amount according to proof;

b.  For order compelling cross-defendants to specifically perform under the deed of trust;

c.  For order compelling cross-defendants to turn over rent;

d.  The transfer of ownership by grant deed from TERI and VINH to EMPIRE be annulled,
declared void and otherwise avoided as to cross-plaintiff and to extent necessary set aside
in accordance with California Civil Code and all other applicable law;

e.  That the separate legal identity of Empire Investments LLC be set aside and disregarded
as to cross-defendants, such that its assets shall be made available to satisfy cross-
plaintiff claims against cross-defendants.

f.  For an order awarding cross-complainant costs and attorneys' fees incurred in this action;

g.  For such other and further relief as the Court may deem proper.

Dated: June 24, 2022

_____

By: Paul Kim Phong Nguyen
Cross-Complainant in Pro Per

**VERIFICATION**

I, Paul Kim Phong Nguyen, am the Cross-Complainant in the above-entitled action.  I

have read the foregoing complaint and know the contents thereof. The same is true of my own

knowledge, except as to those matters which are therein alleged on information and belief, and as

to those matters, I believe it to be true.

I declare under penalty of perjury under the laws of the State of California that the

foregoing is true and correct.

Executed June 24, 2022, in Los Angeles, California.



Paul Nguyen

# EXHIBIT A

JUD-100

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| GARY HARRE, SBN 86938<br>Global Capital Law, A PLC<br>8700 Warner Ave., Suite 200, Fountain Valley, CA 92708<br>TELEPHONE NO.: (714) 907-4182    FAX NO. *(Optional):*<br>E-MAIL ADDRESS *(Optional):*<br>ATTORNEY FOR *(Name):* Plaintiff | FILED<br>JUL 1 2011<br>DAVID H. YAMASAKI<br>Clerk of the Court<br>Superior Court of Santa Clara<br>BY Yvonne Halford DEPUTY |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA
STREET ADDRESS: 191 N. First Street
MAILING ADDRESS: 191 N. First Street
CITY AND ZIP CODE: San Jose, CA 95113
BRANCH NAME: UNLIMTED JUSRISDICTION

PLAINTIFF: Teri H. Nguyen

DEFENDANT: America's Wholesale Lender et al.

| JUDGMENT | CASE NUMBER |
|---|---|
| ☐ By Clerk      ☐ By Default      ☐ After Court Trial<br>☑ By Court      ☑ On Stipulation      ☐ Defendant Did Not<br>                                              Appear at Trial | 111-CV-202240 |

**JUDGMENT**

1. ☐ **BY DEFAULT**
   a. Defendant was properly served with a copy of the summons and complaint.
   b. Defendant failed to answer the complaint or appear and defend the action within the time allowed by law.
   c. Defendant's default was entered by the clerk upon plaintiff's application.
   d. ☐ **Clerk's Judgment** (Code Civ. Proc., § 585(a)).  Defendant was sued only on a contract or judgment of a court of this state for the recovery of money.
   e. ☐ **Court Judgment** (Code Civ. Proc., § 585(b)).  The court considered
      (1) ☐ plaintiff's testimony and other evidence.
      (2) ☐ plaintiff's written declaration (Code Civ. Proc., § 585(d)).

2. ☑ **ON STIPULATION**
   a. Plaintiff and defendant agreed (stipulated) that a judgment be entered in this case.  The court approved the stipulated judgment and
   b. ☑ the signed written stipulation was filed in the case.
   c. ☐ the stipulation was stated in open court   ☐ the stipulation was stated on the record.

3. ☐ **AFTER COURT TRIAL.**  The jury was waived.  The court considered the evidence.
   a. The case was tried on *(date and time):*
      before *(name of judicial officer):*
   b. Appearances by:

   ☐ Plaintiff *(name each):*                              ☐ Plaintiff's attorney *(name each):*
      (1)                                                           (1)
      (2)                                                           (2)
      ☐ Continued on Attachment 3b

   ☐ Defendant *(name each):*                            ☐ Defendant 's attorney *(name each):*
      (1)                                                           (1)
      (2)                                                           (2)
      ☐ Continued on Attachment 3b.

   c. ☐ Defendant did not appear at trial.  Defendant was properly served with notice of trial.

   d. ☐ A statement of decision  (Code Civ. Proc., § 632)  ☐ was not  ☐ was   requested.

Page 1 of 2

| Form Approved for Optional Use<br>Judicial Council of California<br>JUD-100 [New January 1, 2002] | **JUDGMENT** | Code of Civil Procedure, §§ 585, 664 6 |

| PLAINTIFF: Teri H. Nguyen | CASE NUMBER |
|---|---|
| DEFENDANT: America's Wholesale Lender et al. | 111-CV-202240 |

**JUDGMENT IS ENTERED AS FOLLOWS BY:** ☑ THE COURT   ☐ THE CLERK

4. ☑ **Stipulated Judgment.** Judgment is entered according to the stipulation of the parties.

5. **Parties.** Judgment is

   a. ☐ for plaintiff (name each):               c. ☐ for cross-complainant (name each):

      and against defendant (names):          and against cross-defendant (name each):

      ☐ Continued on Attachment 5a.          ☐ Continued on Attachment 5c.

   b. ☑ for defendant (name each):            d. ☐ for cross-defendant (name each):

     America's Wholesale Lender, A New York Corporation

6 **Amount.**

   a. ☐ Defendant named in item 5a above must pay plaintiff on the complaint:

   c ☐ Cross-defendant named in item 5c above must pay cross-complainant on the cross-complaint.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| (1) | ☐ Damages | $ | | (1) | ☐ Damages | $ | |
| (2) | ☐ Prejudgment interest at the annual rate of  % | $ | | (2) | ☐ Prejudgment interest at the annual rate of  % | $ | |
| (3) | ☐ Attorney fees | $ | | (3) | ☐ Attorney fees | $ | |
| (4) | ☐ Costs | $ | | (4) | ☐ Costs | $ | |
| (5) | ☐ Other (specify): | $ | | (5) | ☐ Other (specify): | $ | |
| (6) | TOTAL | $ | | (6) | TOTAL | $ | |

   b. ☑ Plaintiff to receive nothing from defendant named in item 5b.
      ☐ Defendant named in item 5b to recover costs $
         ☐ and attorney fees $

   d. ☐ Cross-complainant to receive nothing from cross-defendant named in item 5d.
      ☐ Cross-defendant named in item 5d to recover costs $
         ☐ and attorney fees $

7. ☑ Other (specify):
    Judicial Finding of Fact in support of Stipulated Judgment as described in the stipulation filed herein.

Date: 6/28/11       ☒ _Patricia M. Lucas_
                  JUDICIAL OFFICER
                  Patricia M. Lucas

Date:         ☐ Clerk, by _____, Deputy

---

(SEAL)        **CLERK'S CERTIFICATE (Optional)**

I certify that this is a true copy of the original judgment on file in the court.

Date: JUL 2 8 2011     DAVID H. YAMASAKI

        Clerk, by _____, Deputy
           T. TURNER

                          Page 2 of 2

JUD-100 [New January 1, 2002]         **JUDGMENT**

1

2

## SETTLEMENT AGREEMENT, STIPULATION FOR
## ENTRY OF JUDGEMENT AND JUDGMENT.

3      This Stipulation for Entry of Judgment and Judgment ("Final Judgment")

4  is entered into by Plaintiff, NGUYEN TERI HA ("NGUYEN" or "PLAINTIFF") and

5  Defendant AMERICAS WHOLESALE LENDER, INC., a New York Corporation

6  ("AWL").  For purposes of this Final Judgment, NGUYEN and AWL shall be

7  referred to collectively as "Parties" and individually as "Party".  The Parties have

8  stipulated and consented to the entry of this Final Judgment with the following

9  stipulated fact and evidence herein.  The Parties also have waived their right to

10  appeal and have agreed to settle the above-captioned matter without further

11  litigation, as set forth below.

12                    **INTRODUCTION**

13      This matter arises from the dispute of a promissory note executed in favor

14  of AWL and secured by a Deed of Trust, which recorded with the Santa Clara

15  County Recorder as instrument number 17404380.  Said Deed of Trust

16  purportedly encumbered Plaintiff's real property known as 12329 KOSICH

17  PLACE, SARATOGA, CA 95070.

18      Plaintiff filed a Complaint against the Defendants in the Santa Clara

19  County Superior Court alleging fraud, slander of title, unfair business practice,

20  wrongful foreclosure and quiet title.  Plaintiff sought to recover monetary

21  damages, injunctive relief and quiet title as the result of alleged injuries caused

22  by Defendants and its agents, employees or affiliates.

23      The Parties engaged in settlement negotiations prior to the filing of this

24  Final Judgment.  In those settlement negotiations, Parties are represented by

25  counsels.  The Parties have agreed to settle this matter without litigation

26  pursuant to the terms of this Final Judgment.

27  /./.

28  /./.

---

SETTLEMENT AGREEMENT, STIPULATION FOR ENTRY OF JUDGEMENT AND JUDGMENT

## SETTLEMENT AGREEMENT AND JUDGMENT
## PURSUANT TO STIPULATED FINDING OF FACT

The Parties, after opportunity for review by their respective counsel, hereby stipulate and consent to the entry of this Final Judgment based on the following finding of facts as set forth below.

**1.  JURISDICTION**

1.1.    The Parties stipulate and agree that the Superior Court of California, County of Santa Clara, has subject matter jurisdiction over the matters alleged in this action and personal jurisdiction over the Parties to this Final Judgment.

**2.  STIPULATED AND FINDING OF FACTS**

2.1.    Plaintiff is the Borrowers of the promissory note in favor of America's Wholesale Lender made on September 30, 2003, covering the property described as 12329 KOSICH PLACE, SARATOGA, CA 95070.  A true and correct copy of promissory note is attached herein as Exhibit 1.

2.2.    Defendant AMERICA'S WHOLESALE LENDER, INC., New York Corporation, is the Lender of the promissory note.

2.3.    Defendant AMERICA'S WHOLESALE LENDER, INC., New York Corporation, is the beneficiary of the Deed of Trust recorded with the Santa Clara County Recorder on October 08, 2005 as instrument number 17404380.  A true and correct copy of the Deed of Trusts is attached herein as Exhibit 2.

2.4.    Defendant Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation that is acting solely as nominee for AWL, holding no interest in the subject promissory note as attached herein as Exhibit 1 or Deed of Trusts as attached herein as Exhibit 2.

2.5.    Defendant AMERICA'S WHOLESALE LENDER, INC., New York Corporation is the holder of the promissory note and deed of trusts identified herein and is currently in possession of the promissory note.

- 1 -

SETTLEMENT AGREEMENT, STIPULATION FOR ENTRY OF JUDGEMENT AND JUDGMENT.

2.6.   Defendant AMERICA'S WHOLESALE LENDER, INC., New York Corporation, as the holder of the promissory note, has not made any endorsement.

2.7.   Defendant AMERICA'S WHOLESALE LENDER, INC., New York Corporation, as beneficiary of the Deed of Trust, has not assigned nor authorized any assignment of the Deed of Trust identified herein.

2.8.   No person, party or entity, including trustee or nominee purporting to act on the behalf of AWL, is authorized to collect payment as identified in the promissory note, to initiate foreclosure or substitution of trustee as identified in the Plaintiff's complaint.

2.9.   Any substitution of trustee, assignment of Deed of Trust, or demand for payment that was not executed by Defendant AWL was not authorized by AWL and is hereby VOID.

**3.   SETTLEMENT AGREEMENT**

3.1.   Pursuant to the Federal Mortgage Relief Act and other applicable reliefs, Parties agree to enter loan modification covering the following real property with physical address of 12329 KOSICH PLACE, SARATOGA, CA 95070 with detail description as described in Exhibit 3.

3.2.   Parties agree to loan modification as follows:

3.2.1. AWL agrees to a pay-off in the amount of $315,000.00.

3.2.2. Plaintiff shall make such lump sum payment to AWL within 30 days from the date of entry of this stipulated judgment.

3.2.3. AWL shall prepare and record a full reconveyance of the Deed of Trusts recorded with the Santa Clara County Recorder as instrument number 17404380.  Said Deed of Trust is attached herein as Exhibit 2.

3.3.   Parties agree to pay their own costs in this action.

- 2 -

SETTLEMENT AGREEMENT, STIPULATION FOR ENTRY OF JUDGEMENT AND JUDGMENT.

3.4.     This settlement agreement is a compromise of this disputed claim and the loan modification agreements in 3.2 shall not be construed as an admission of liability by AWL.

3.5.     All parties shall cooperate in preparation and execution of all necessary documents and to take all action which may be necessary to give full force and effect to the term and intent of this agreement.

3.6.     AWL agrees to dismiss or not to file any related cross-complaint in this action.

3.7.     To the extent that any agent, employee or affiliate of AWL has violated California laws in connection with the loan that is the subject of this Complaint, these person and entity are not party to this agreement and is not released from civil or criminal liability.

**4.    ENFORCEMENT OF FINAL JUDGMENT AND PENALTIES.**

4.1.   In the event that any person or entity, whether purportedly acting on the behalf of AWL or another entity initiate foreclosure, collection, recordation of document claiming any right or interest in, and to, the subject Deed of Trust as identified in Exhibit 2, AWL shall cause such action to be terminated by enforcement of this agreement and/or recording appropriate document as required to negate such action or enforcement at its own expense.

4.2.   Except as provided in this agreement, nothing in this Final Judgment shall limit any rights of Plaintiff to seek any other relief or criminal or civil remedies provided by law against other parties related to the subject loan identified herein.

**5.    MATTERS COVERED BY THIS SETTLEMENT AGREEMENT, FINDING OF FACT AND JUDGMENT.**

5.1.   The Court finds that on stipulation between Parties, all matters are factually accurate as supported by evidence attached herein and conclusively determined that AMERICA'S WHOLESALE LENDER, INC., New York Corporation,

– 3 –

SETTLEMENT AGREEMENT, STIPULATION FOR ENTRY OF JUDGEMENT AND JUDGMENT.

is the Lender and beneficial owner of the subject loan and no other party holds

any interest in the subject property as described herein.

5.2.  This settlement agreement and Final Judgment is a final and binding

resolution and settlement of all "Covered Matters."  As used in this Final

Judgment, Cover Matters means all claims that have been alleged, or claims that

could have been asserted within the scope of the allegations set forth, in the

Complaint in this matter, stipulation and finding of facts as established by

evidence attached herein.

5.3.  Any claims, violations or causes of action against AWL or its officers

that are not alleged in the Complaint, including, but not limited to, any violations

of laws are hereby forever waived.

**6.  NOTICE.**

All submissions and notices required by this agreement shall be sent to:

For Plaintiff:

> NGUYEN TERI HA
> 12329 KOSICH PLACE
> SARATOGA, CA 95070

For America's Wholesale Lender, Inc.:

> 875 Avenues of the Americas, Ste 501
> New York, NY 10001.

Any Party may change its notice name and address by informing the other

party in writing, but no change is effective until it is received.  All notices and

other communications required or permitted under this agreement that are

properly addressed as provided in this paragraph are effective upon delivery if

delivered personally or by overnight mail, or are effective five (5) days following

deposit in the United States mail, postage prepaid, if delivered by mail.

/./.

/./.

/./.

- 4 –

SETTLEMENT AGREEMENT, STIPULATION FOR ENTRY OF JUDGEMENT AND JUDGMENT.

**7. APPLICATION OF AGREEMENT AND FINAL JUDGMENT.**

This agreement and Final Judgment shall apply to and be binding upon the Plaintiff and upon Americas' Wholesale Lender, Inc., a New York Corporation and its successors and assigns.

**8. AUTHORITY TO ENTER AGREEMENT AND FINAL JUDGMENT.**

Each signatory to this Agreement and Final Judgment certifies that he or she is fully authorized by the party he or she represents to enter into this Agreement and Final Judgment, to execute it on behalf of the party represented and legally to bind that party.

**9. INTERPRETATION.**

This Agreement and Final Judgment was drafted equally by all Parties. The Parties agree that the rule of construction holding that ambiguity is construed against the drafting party shall not apply to the interpretation of this Agreement and Final Judgment.

**10. COUNTERPART SIGNATURES.**

This Agreement and Final Judgment may be executed by the Parties in counterpart.

**11. INTEGRATION.**

This Agreement and Final Judgment constitutes the entire agreement between the Parties and may not be amended or supplemented except as provided for in this agreement.  No oral representations have been made or relied upon other than as expressly set forth herein.

**12. MOFIDICATION.**

This Agreement and Final Judgment may be modified only on noticed motion by a Party with approval of the Court, or upon written consent of the Parties and the approval of the Court.

**13. INCORPORATION OF EXHIBITS.**

Each of the Exhibits is incorporated herein by reference.

- 5 –

SETTLEMENT AGREEMENT, STIPULATION FOR ENTRY OF JUDGEMENT AND JUDGMENT.

1
2   **IT IS SO STIPULATED.**
3   For the Plaintiff, NGUYEN TERI HA:
4
5   DATED: 6/22/2011 _____
6                                    NGUYEN TERI HA
7
    For the Defendant, AMERICA'S WHOLESALE LENDER, INC.:
8
9
10  DATED: 06/14/2011 _____
11
12                                    By:   Dennis L. Bell
                                      Title: President
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- 6 –

SETTLEMENT AGREEMENT, STIPULATION FOR ENTRY OF JUDGEMENT AND JUDGMENT.

# EXHIBIT B

Escrow No. _____          Title Order No. _____

## INSTALLMENT NOTE - INTEREST INCLUDED
### (Balloon Payment)

$ 215,000.00 _____     San Jose _____, California  July 28, _____, 2011

FOR VALUE RECEIVED, we, or either of us, promise to pay in lawful money of the United States of America, to
Paul K. Nguyen _____
_____
_____

or order, at place designated by payee, the principal sum of $215,000.00 _____
two-hund red-fifteen-thousand s -------------------------------------------------------------- _____ dollars,
with interest in like lawful money from August 28, _____, 2011 _ at 7.00 _____ per cent
per annum on the amounts of principal sum remaining unpaid from time to time.
Principal and interest payable in _____ installments of _____
interest only
or more each, on the 28th _____ day of each and every month _____ beginning on the
28th _____ day of August _____, 2011 and continuing until July 28, 2012 _____
at which time the entire unpaid balance of principal and interest hereunder shall be due and payable.

Each payment shall be credited first on interest then due and the remainder of principal; and interest shall thereupon
cease upon the principal so credited.  Should default be made in payment of any installment of principal or interest
when due the whole sum of principal and interest shall become immediately due at the option of the holder of this
note.  If action be instituted on this note I promise to pay such sum as the Court may fix as attorney's fees.  This
note is secured by a Deed of Trust in which the maker of this note is referred to as "Trustor".

**THE FOLLOWING PARAGRAPH IS ONLY APPLICABLE ON ONE TO FOUR RESIDENTIAL UNITS:**
This note is subject to Section 2966 of the Civil Code, which provides that the holder of this note shall give written
notice to the Trustor, or his successor in interest, of prescribed information at least 90 and not more than 150 days
before any balloon payment is due.

NGUYEN-HA Living Trust Dated December 10, 2004

_____          _____
TERI H. NGUYEN, Trustee                    VINH D. NGUYEN, Trustee

### DO NOT DESTROY THIS NOTE
*When paid, this note, with Deed of Trust securing same, must be surrendered to Trustee for cancellation before
reconveyance will be made.*

FD-30C (Rev. 4/94)          INSTALLMENT NOTE - INTEREST INCLUDED (BALLOON PAYMENT)

# EXHIBIT C

**RECORDING REQUESTED BY**

WHEN RECORDED MAIL TO

NAME PAUL. K. NGUYEN

ADDRESS 8700 Warner Ave., Suite 200

CITY Fountain Valley

STATE&ZIP CA 92708

Title Order No.      Escrow No.

CONFORMED COPY: This document has not been compared with the original.
SANTA CLARA COUNTY CLERK-RECORDER

Doc#: 21291910
8/25/2011    3:13 PM

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## DEED OF TRUST

STATE OF CALIFORNIA

FHA CASE NO.

Loan Number:

This DEED OF TRUST ("Security Instrument") is made on this 28th      day of July 2011

The trustor is: VINH D. NGUYEN and TERI H. NGUYEN, Trustees of Nguyen-Ha Living Trust Dated December 10, 2004. ("Borrower").

The trustee is: Old Republic Title Company                              ("Trustee").

The beneficiary is Paul K. Nguyen
which is organized and existing under the laws of THE STATE OF CALIFORNIA and whose address is ("Lender").
Borrower owes Lender the principal sum of Dollars(U.S. $215,000.00                         ).

This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on July 28, 2012
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications; the payment of all other sums, with interest, advanced under paragraph 6 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in Santa Clara                                    County, California:
which has the address of 12329 Kosich Place, Saratoga, CA 95070

More particularly described as: APN: 386-23-072

All that certain Real Property in the City of Saratoga, County of Santa Clara, State of California, described as follows:

All of Lot 10, a shown on that certain Map of Tract No. 8917, which Map was filed for record in the Office of the Recorder of the County of Santa Clara, State of California on June 10, 1997, in Book 688 of Maps, Page(s) 31, 32 and 33.

Excepting therefrom the underground water rights, without the right of surface entry as granted to San Jose water Company by Quitclaim Deed recorded August 25, 1999 as Instrument No. 14955253 Official Records of Santa Clara county.

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water rights and stock and all fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by his Security Instrument. All of the foregoing is referred to in this Security'" Instrument as the "Property".

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

1.      **Payment of Principal, Interest and Late Charge**. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2.      **Monthly payments of Taxes, Insurance and Other Charges** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under Paragraph 4. In any year which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either (i) a sum for the annual mortgage insurance premium to be paid by Lender to the

Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA") , except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA Lender shall deal with the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make the shortage or deficiency as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security instrument If Borrower renders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3.      **Application of Payments** All payments under Paragraphs I and 2 shall be applied by Lender as follows:

FIRST, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

SECOND, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

THIRD, to interest due under the Note;

FOURTH, to amortization of the principal of the Note;

FIFTH, to late charges due under the Note.

4.      **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall he held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss. Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in Paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in Paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of tide to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5.      **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application;** Leaseholds Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless the Secretary determines this requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lenders of any extenuating circumstances Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee tide shall not be merged unless Lender agrees to the merger in writing.

6.      **Charges to Borrower and Protection of lender's Rights In the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph Z Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

2

Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

7.     **Condemnation,** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in Paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in Paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

8.     **Fees.** Lender may collect fees and charges authorized by the Secretary.

9.     ==Grounds for Acceleration of Debt.==
(a)     **Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i)     Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or
(ii)     Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b)     ==Sale Without Credit Approval.== Lender shall, if permitted by applicable law and with the prior approval of the Secretary, require immediate payment in full of all the sums secured by this Security Instrument if:

(i)     All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent) by the Borrower, and
(ii )The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.
(c)     ==No Waiver.== If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events
(d)     **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.
(e)     **Mortgage Not Insured.** Borrower agrees that should this Security Instrument and the note secured thereby not be eligible for insurance under the National Housing Act within 60 days
from the date hereof, Lender may, at its option and notwithstanding anything in Paragraph 9, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the note secured thereby, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary

10.     **Reinstatement** Borrower has a right to be reinstated if Lender has required immediate payment in fill because of Borrower's failure to pay an amount due under the Note 'or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude the foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11.     **Borrower Not Released; Forbearance by lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.
12.     **Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of Paragraph 9.b. Borrower's covenants and agreements shall be, joint and several. Any Borrower who signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's, interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13.    Notices** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14.    Governing Law; Severability**. This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the :Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15.    Borrower's Copy**. Borrower shall be given one conformed copy of this Security Instrument.

**16.    Assignment of Rents** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs'; each tenant of the Property to pay the rents to Lender or Lenders agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 16.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in fill.


NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17.    Foreclosure Procedure**. If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

**If lender invokes the power of sale, lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of lender's election to cause die Property to be sold, Trustee shall cause this notice to be recorded in each county in which any part of the Property is located, lender or Trustee shall mail copies of the notice as prescribed by' applicable law to Borrower and to the other persons prescribed by' applicable law.**
**Trustee shall give public notice of sale to the persons and in the manner prescribed by' applicable law. After the time required by' applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines Trustee may postpone sale of all or any parcel of the Property by' public announcement at the time and place of any previously scheduled sale. lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima lade evidence of the truth of the statements made therein. Trustee shall apply the proceeds, of the sale in the foil owing order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by' this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**18.    Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty and without charge to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs.

19.    **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the folic of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein by and applicable law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

Case: 22-50645    Doc# 50    Filed: 08/23/22    Entered: 08/23/22 22:20:44    Page 180 of 199

**20.    Request for Notices.** Borrower requests that copies of the notices of default and sale be sent to Borrower's address which is the Property Address.

**21.    Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument. the convenants of each such rider shall be incorporated into and shall amend and supplement the and agreements of this Security Instrument as if the rider(s) were in a part of this Security Instrument. [Check applicable boxes)].

_____ Condominium Rider _____ Graduated Payment Rider _____ Growing Equity Rider

_____ Planned Unit Development Rider          Other [Specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in pages 1 through 6 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witness:                                                    Witness:

_____ (Seal)    _____ (Seal)
TERI H. NGUYEN, Trustee    Borrower  VINH D. NGUYEN, Trustee    Borrower

_____ (Seal)    _____ (Seal)
                            Borrower                              Borrower

_____ (Seal)    _____ (Seal)
                            Borrower                              Borrower

STATE OF CALIFORNIA
COUNTY OF _____ *Santa Clara* } SS

On _*August 4th 2011*_ before me,
_*Nichelle Russien*_
a Notary Public in and for said County and State, personally
appeared _*Teri H. Nguyen and*_
_*Vinh D. Nguyen*_
who proved to me on the basis of satisfactory evidence to be the
person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the
State of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal

Signature _*Nichelle Russien*_

NICHELLE RUSSIEN
Commission # 1806499
Notary Public - California
Santa Clara County
My Comm. Expires JUL 14, 2012

FOR NOTARY SEAL OR STAMP

**REQUEST FOR RECONVEYANCE**

TO TRUSTEE:

The undersigned is the holder of the note or notes secured by this Deed of Trust. Said note or notes, together with all other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel said note or notes and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.

Dated: _____ ___

5

# EXHIBIT D

DOCUMENT: 21260514

Recording Requested By:

When recorded mail document to:
NAME  Teri Ha Nguyen

ADDRESS  12329 KOSICH PLACE

CITY
STATE & ZIP  SARATOGA, CA 95070

APN NO. 38623072

Pages: 1

Fees....  41.00
Taxes...
Copies
AMT PAID  41.00

REGINA ALCOMENDRAS
SANTA CLARA COUNTY RECORDER
Recorded at the request of
Trustee

RDE #  005
7/28/2011
3:46 PM

Above Space for Recorder's Use Only

# SUBSTITUTION OF TRUSTEE AND FULL RECONVEYANCE

Whereas, TERI HA NGUYEN, a married woman as her sole and separate property     was the Original

Trustor, CTC Real Estate Services                                          , the original

Trustee, and America's Wholesale Lender, Inc. a New York Corporation                          ,

Original beneficiary, under that certain Deed of Trust dated____   09/30/2003

and recorded___ 10/8/2003_____as Instrument No.____   17404380

Book____ 688_____Page__31, 32 and 33__, Official Records of the County of _Santa Clara

_____State of California and

WHEREAS, the undersigned present beneficiary desires to substitute a new Trustee under said Deed of Trust in place and instead of

CTC Real Estate Services                                                    .

Now therefore, the undersigned hereby substitutes himself/herself/themselves as Trustee under said Deed of Trust and does hereby reconvey, without warranty, to the person or persons legally entitled hereto, the Estate now held by him thereunder. Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular numbers includes the plural.

The undersigned hereby accepts said appointment as trustee under the above deed of trust, and as successor trustee, and pursuant to the request of said owner and holder and in accordance with the provisions of said deed of trust, does hereby RECONVEY WITHOUT WARRANTY, TO THE PERSONS LEGALLY ENTITLED THERETO, all the estate now held by it under said deed of trust.

AMERICAS WHOLESALE LENDER, INC.
_____
BENEFICIARY / NEW TRUSTEE
America's Wholesale Lender, Inc.
By: DENNIS BELL, PRESIDENT

Dated: 6-8-11

STATE OF Kentucky
COUNTY OF McCracken     } SS.

ON  6-8-11    before me,  STAN WATTS    a Notary Public,
personally appeared  Dean's Bell    who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of  Kentucky    that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

OFFICIAL SEAL
RONALD STANLEY WATTS
NOTARY PUBLIC - KENTUCKY
McCRACKEN COUNTY
My Comm. Expires 07-23-2011

Signature _____ (seal)

# EXHIBIT E



# RE: BRUCE AVE - REVISED COMPUTATION

2 messages

**vince nguyen** <vincen1948@gmail.com>                    Mon, May 21, 2012 at 12:59 PM
To: Paul Wynn <mnapaul1@gmail.com>
Cc: Teri Ha <terih@gounison.com>


Hi Paul:


Per HUD-1:                $826,979.55

Minus:

10% for Legal Fund:        82,697.96

_____

Balance:                $744,281.59


Settlement between Rex Management Group LLC with Chase Merritt Fund I, LLC:

$744,281.59 X 25% = $186,070.40


Chase Merritt has agreed that if circumstance arises in which the whole amount as per HUD-1 proceed will have to be spent/settled in litigation, CMFI will pay back up to the above-mentioned settlement amount.


Please acknowledge this message.  A cashier's check in the amount mentioned will be mailed to CMFI.

Thank you, Paul.

**vince nguyen**

(408) 828-8078

Email: vincen1948@gmail.com

---

**Paul Wynn** <mnapaul1@gmail.com>                    Mon, May 21, 2012 at 1:02 PM
To: vince nguyen <vincen1948@gmail.com>

Acknowledged

[Quoted text hidden]

# EXHIBIT F

**This document was electronically submitted to Santa Clara County for recording**

# 24846754

Regina Alcomendras
Santa Clara County - Clerk-Recorder
02/25/2021 08:30 AM

Titles: 1    Pages: 2
Fees: $103.00
Tax: $0
Total: $103.00

**WFG National-Default Services**

**RECORDING REQUESTED BY**

*same as below*

**AND WHEN RECORDED MAIL TO**

Parker Foreclosure Services, LLC
PO Box 2940
Ventura, CA  93002-2940
386-23-072

Space above this line for recorder's use only

Trustee Sale No. 2104   Loan No.   Title Order No. 1812745CAD

# NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST
## IMPORTANT NOTICE

IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION, and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is $362,026.96 as of 02/24/2021 and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage.  If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing.  In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay.  You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made.  However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in this paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of property by paying the entire amount demanded by your creditor.

1

Trustee Sale No. 2104   Loan No.   Title Order No.

To find out the amount you must pay, to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact: Parker Foreclosure Services, LLC, PO Box 2940, Ventura, CA 93002, 805 641-9292, FAX 805 666-1452

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.

Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.   NOTICE IS HEREBY GIVEN THAT: Parker Foreclosure Services, LLC is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated 08/25/2011, executed by Vinh D. Nguyen and Teri H. Nguyen, as Trustees of the Nguyen-Ha Living Trust Dated December 10, 2004, as trustor, to secure obligations in favor of Paul K. Nguyen, as Beneficiary Recorded on 08/25/2011 as Document #21291910 of official records in the Office of the Recorder of Santa Clara County, California, as more fully described on said Deed of Trust.  Including the note(s) for the sum of $215,000.00 that the beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by the beneficiary; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of: THE INSTALLMENT(S) OF INTEREST AND/OR PRINCIPAL AND INTEREST WHICH HAS/HAVE BECOME DUE AND ALL SUBSEQUENT INSTALLMENTS, TOGETHER WITH ALL LATE CHARGES, ADVANCES TO SENIOR LIENS, INTEREST, INSURANCE, TAXES, ASSESSMENTS AND LEGAL FEES PLUS TRUSTEE'S FEES AND COSTS. WRITTEN EVIDENCE THAT TAXES AND ALL SENIOR ENCUMBRANCES ARE CURRENT MUST BE PROVIDED.   ANY DELINQUENT TAXES AND/OR INSURANCE PREMIUMS TO BE ADVANCED BY THE BENEFICIARY AFTER THE RECORDING OF THE NOTICE OF DEFAULT.     PLUS FAILURE TO PAY REAL ESTATE TAXES AND/OR PAYMENTS TO PRIOR LIEN HOLDERS AS REPORTED DELINQUENT. THE UNPAID PRINCIPAL BALANCE OF $215,000.00 PLUS ACCRUED INTEREST WHICH BECAME DUE ON 07/28/2012. THE INSTALLMENT OF INTEREST WHICH BECAME DUE 08/28/2011 AND ALL SUBSEQUENT INSTALLMENTS, TOGETHER WITH ALL LATE CHARGES.

That by reason thereof, the present beneficiary under such Deed of Trust, has executed and delivered to said Trustee, a written Declaration and Demand for Sale, and has deposited with said duly appointed Trustee, such Deed of Trust and all documents evidencing the obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

DATE: 02/24/2021

Parker Foreclosure Services, LLC

Hermond L. Blossomgame, President

2

# Declaration of Mailing

Trustee's Sale No. 2104

I, Hermond L. Blossomgame , declare:
That I am an officer, agent, or employee of Parker Foreclosure Services, LLC
whose business address is PO Box 2940, Ventura, CA 93002-2940
I am over the age of eighteen years; On 03/03/2021 by Certified mail, enclosed in a sealed envelope with postage
fully prepaid, I deposited in the United States Post Office at Ventura
notices, a true and correct copy of which is hereunto attached and made part hereof, addressed to the following:

Date: 03/03/2021
Mailing: **10 Day Mailing**
Page: 1

| Number of Article | Name of Addressee, Street, and Post Office Address | Cert. Fee | R.R. Fee |
|---|---|---|---|
| 70183090000132749206 | Teri H. Nguyen 12329 Kosich Place Saratoga, CA 95070 | $3.35 | $2.75 |
| 70183090000132749213 | Vinh D. Nguyen 12329 Kosich Place Saratoga, CA 95070 | $3.35 | $2.75 |
| | | $6.70 | $5.50 |

| Number of Pieces by Sender | Number of Pieces Received | Postmaster (Name) Receiving Employee | Mail By (Name) Sending Employee |
|---|---|---|---|
| 2 | | | |

I certify (or Declare) under penalty of perjury under the laws of the State of CA that the foregoing is true and correct

(Date)  (Declarant)

# Declaration of Mailing

Trustee's Sale No. 2104

Date: **03/26/2021**

Mailing: **1 Month Mailing**

Page: **1**

I,     Hermond L. Blossomgame     , declare:

That I am an officer, agent, or employee of     Parker Foreclosure Services, LLC

whose business address is     PO Box 2940, Ventura, CA 93002-2940

I am over the age of eighteen years; On   03/26/2021   by Certified    mail, enclosed in a sealed envelope with postage fully prepaid, I deposited in the United States Post Office at     Ventura

notices, a true and correct copy of which is hereunto attached and made part hereof, addresed to the following:

| Number of Article | Name of Addressee, Street, and Post Office Address | Cert. Fee | R.R. Fee |
|---|---|---|---|
| 70183090000132749220 | Empire Investments, LLC, a Wyoming Limited Liability Co<br>12329 Kosich Place<br>SARATOGA, CA 95070--357 | $3.35 | $2.75 |
| 70183090000132749237 | First Century Plaza, LLC<br>150 Pelican Way<br>SAN RAFAEL, CA 94901- | $3.35 | $2.75 |
| 70183090000132749244 | First Century Plaza, LLC<br>c/o Jeremy Sugerman, Esq.<br>222 Kearny Street, Suite 650<br>SAN FRANCISCO, CA 94108- | $3.35 | $2.75 |
| | | $10.05 | $8.25 |

| Number of Pieces by Sender | Number of Pieces Received | Postmaster (Name) Receiving Employee | Mail By (Name) Sending Employee |
|---|---|---|---|
| 3 | | | |

I certify (or Declare) under penalty of perjury under the laws of the State of   CA that the foregoing is true and correct

_____ (Date)       _____ (Declarant)

# EXHIBIT G

# DEMAND ON TENANT TO PAY RENT TO PARTY OTHER THAN LANDLORD

(California Civil Code §2938)

---

DATE: _____ May 2nd _____, 20 21 ___, at _____ Ventura _____, California.

To Tenant: _____ Vinh D. Nguyen aka Vince D. Nguyen, Teri Ha Nguyen and DOES 1-10 _____
(Name of Tenant)

Property Occupied by Tenant _____ 12329 Kosich Place. Saratoga. CA 95070 _____
(Address)

Landlord _____ Empire Investments LLC, a Wyoming LLC dba Empire Investment Team LLC _____
(Name of Landlord)

Secured Party _____ Paul K. Nguyen _____
(Name of Secured Party)

Address _____ P.O. Box 2940, Ventura CA 93002 _____
(Address for Payment of Rent to Secured Party and for Further Information)

1. The secured party named above is the assignee of leases, rents, issues, and profits under a document entitled
_____ Deed of Trust _____, dated _____ 07/28/2011 _____, and

   1.1 recorded on _____ 08/25/2011 _____, as Instrument No. _____ 21291910 _____, in the Official Records of
   _____ Santa Clara _____ County, California.

   1.2 You may request a copy of such assignment from the secured party at _____ P.O. Box 2940, Ventura CA 93002 _____.

2. THIS NOTICE AFFECTS YOUR LEASE OR RENTAL AGREEMENT RIGHTS AND OBLIGATIONS. YOU ARE THEREFORE ADVISED TO CONSULT AN ATTORNEY CONCERNING THOSE RIGHTS AND OBLIGATIONS IF YOU HAVE ANY QUESTIONS REGARDING YOUR RIGHTS AND OBLIGATIONS UNDER THIS NOTICE.

3. IN ACCORDANCE WITH SUBDIVISION (C) OF SECTION 2938 OF THE CIVIL CODE, YOU ARE HEREBY DIRECTED TO PAY TO THE SECURED PARTY, _____ Paul K. Nguyen _____
   AT _____ P.O. Box 2940, Ventura CA 93002 _____,
   ALL RENTS UNDER YOUR LEASE OR OTHER RENTAL AGREEMENT WITH THE LANDLORD OR PREDECESSOR IN INTEREST OF LANDLORD, FOR THE OCCUPANCY OF THE PROPERTY AT _____
   _____ 12329 Kosich Place. Saratoga. CA 95070 _____.
   WHICH ARE PAST DUE AND PAYABLE ON THE DATE YOU RECEIVE THIS DEMAND, AND ALL RENTS COMING DUE UNDER THE LEASE OR OTHER RENTAL AGREEMENT FOLLOWING THE DATE YOU RECEIVE THIS DEMAND UNLESS YOU HAVE ALREADY PAID THIS RENT TO THE LANDLORD IN GOOD FAITH AND IN A MANNER NOT INCONSISTENT WITH THE AGREEMENT BETWEEN YOU AND THE LANDLORD.

   3.1 IN THIS CASE, THIS DEMAND NOTICE SHALL REQUIRE YOU TO PAY TO THE SECURED PARTY,
   _____ Paul K. Nguyen _____
   ALL RENTS THAT COME DUE FOLLOWING THE DATE OF THE PAYMENT TO THE LANDLORD.

4. IF YOU PAY THE RENT TO THE UNDERSIGNED SECURED PARTY _____ Paul K. Nguyen _____,
   IN ACCORDANCE WITH THIS NOTICE, YOU DO NOT HAVE TO PAY THE RENT TO THE LANDLORD. YOU WILL NOT BE SUBJECT TO DAMAGES OR OBLIGATED TO PAY RENT TO THE SECURED PARTY IF YOU HAVE PREVIOUSLY RECEIVED A DEMAND OF THIS TYPE FROM A DIFFERENT SECURED PARTY.

5. FOR NONRESIDENTIAL TENANTS: IF YOU PAY ANY RENT TO THE LANDLORD THAT BY THE TERMS OF THIS DEMAND YOU ARE REQUIRED TO PAY TO THE SECURED PARTY, YOU MAY BE SUBJECT TO DAMAGES INCURRED BY THE SECURED PARTY BY REASON OF YOUR FAILURE TO COMPLY WITH THIS DEMAND, AND YOU MAY NOT BE DISCHARGED FROM YOUR OBLIGATION TO PAY SUCH RENT TO THE SECURED PARTY. YOU WILL NOT BE SUBJECT TO SUCH DAMAGES OR OBLIGATED TO PAY SUCH RENT TO THE SECURED PARTY IF YOU HAVE PREVIOUSLY RECEIVED A DEMAND OF THIS TYPE FROM A DIFFERENT ASSIGNEE.

6. Your obligation to pay rent under this demand shall continue until you receive either:

   6.1 A written notice from a court directing you to pay the rent in a manner provided therein; or

   6.2 A written notice from the secured party named above cancelling this demand.

7. The undersigned hereby certifies, under penalty of perjury, that the undersigned is an authorized officer or agent of the secured party and that the secured party is the assignee, or the current successor to the assignee, under an assignment of leases, rents, issues, or profits executed by the landlord, or a predecessor of interest, that is being enforced pursuant to and in accordance with Section 2938 of the Civil Code.

Executed at: _____Ventura_____, California,

this _____2nd_____ day of _____May_____, 20 21.

Name: _____Paul K. Nguyen_____

Mailing List

Vinh D. Nguyen aka Vince D. Nguyen 12329 Kosich Place
Saratoga. CA 95070

Teri H. Nguyen aka Teri Ha
12329 Kosich Place
Saratoga. CA 95070

Empire Investments LLC, a Wyoming LLC dba
Empire Investments Team LLC in California
Attention: Vince Nguyen
1302 Lincoln Ave., Suite 204
San Jose, CA 95125

ATTORNEY OR PARTY WITHOUT ATTORNEY:   STATE BAR NO:

NAME:  PAUL KIM PHONG NGUYEN

FIRM NAME:

STREET ADDRESS:  9353 Bolsa Ave #F8

CITY:  Westminster   STATE:  CA   ZIP CODE:  92683

TELEPHONE NO.:  (657) 254-7579   FAX NO.:

E-MAIL ADDRESS:  p2011nguyen@gmail.com

ATTORNEY FOR (name):  In Pro Per

**FOR COURT USE ONLY**

SUPERIOR COURT OF CALIFORNIA, COUNTY OF   Santa Clara

STREET ADDRESS:  191 N 1st St

MAILING ADDRESS:

CITY AND ZIP CODE:  San Jose, CA 95113

BRANCH NAME:  Downtown Superior Court (DTS)

PLAINTIFF/PETITIONER: Empire Investment LLC et.al.

DEFENDANT/RESPONDENT: Paul Kim Phong Nguyen et.al

CASE NUMBER:
21CV379828

JUDICIAL OFFICER:

DEPARTMENT:

## PROOF OF ELECTRONIC SERVICE

1. I am at least 18 years old.

    a. My residence or business address is *(specify):*
       PO Box 2940
       Ventura, CA 93002

    b. My electronic service address is *(specify):*
       AENGUYENER@GMAIL.COM

2. I electronically served the following documents: SECOND AMENDED CROSS-COMPLAINT

    ☐  The documents served are listed in an attachment. *(Form POS-050(D)/EFS-050(D) may be used for this purpose.)*

3. I electronically served the documents listed in 2 as follows:

    a. Name of person served:  Ronald H. Freshman  and Vince D. Nguyen

       On behalf of *(name or names of parties represented, if person served is an attorney):*
       Empire Investments, LLC; Teri Nguyen And Vinh Nguyen As Trustees Of Nguyen-Ha Living Trust Dated 12/10/04

    b. Electronic service address of person served *:*
       rhf@freshmanlaw.com and vincen@newtonlawgroup.com

    c. On *(date):* 06/26/2022

       ☐  The documents listed in item 2 were served electronically on the persons and in the manner described in an attachment.
       *(Form POS-050(P)/EFS-050(P) may be used for this purpose.)*

Date:  06/26/2022

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Allan E. Nguyen
_____
(TYPE OR PRINT NAME OF DECLARANT)

_____
(SIGNATURE OF DECLARANT)

Page 1 of 1

Form Approved for Optional Use
Judicial Council of California
POS-050/EFS-050 [Rev. February 1, 2017]

**PROOF OF ELECTRONIC SERVICE**
**(Proof of Service/Electronic Filing and Service)**

Cal. Rules of Court, rule 2.251
www.courts.ca.gov

EXHIBIT 12

EXHIBIT 12



Sign in

12329 Kosich Pl Sarat

For Sale | Price

Saratoga CA Real Estate &

**No matching results**

Try changing your search.

Similar results nearby

Results within 1 miles

Open: Sun, 2-5pm



$2,198,000

4 bds  2 ba  1,883 sqft  - House for sale
1488 Sunland Ct, San Jose, CA 95130



2 days on Zillow



$1,828,000

3 bds  3 ba  1,751 sqft  - House for sale
2020 Heath...



1 of 34

6 bd | 4 ba | 3,666 sqft

12329 Kosich Pl, Saratoga, CA
95070

**Off market** | Zestimate®:
**$3,644,800** | Rent Zestimate®:
**$6,613**

Est. refi payment: $19,626/mo
$ **Refinance your loan**

Home value    Owner tools    Home

**Get pre-approved
for a loan**

Zillow Home
Loans can help
you get pre-
approved with
competitive rates
and no hidden





Case: 22-50645    Doc# 50    Filed: 08/23/22    Entered: 08/23/22 22:20:44    Page 197 of

# EXHIBIT 13

# EXHIBIT 13

 Feed

Feed  **Overview**  Property Details  Sale & Tax History  Public Facts  Schools



OFF MARKET

Street View

**12329 Kosich Pl,** Saratoga, CA 95070



**$3,950,422**
Redfin Estimate

**5**
Beds

**4**
Baths

**3,666**
Sq Ft

**Off Market**

## About This Home

12329 Kosich Pl is a 3,666 square foot house on a 0.29 acre lot with 5 bedrooms and 4 bathrooms. This home is currently off market. Based on Redfin's Saratoga data, we estimate the home's value is $3,950,422.

Source: Public Records

## edfin Estimate for 12329 Kosich Pl

Edit Home Facts to improve accuracy.

Create an Owner Estimate

**$3,950,422**
See estimate history

Track This Estimate